IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL; DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | 2:16-cv-01096-JRG-RSP |
| v. ) | |
| ) | |
| HTC CORPORATION ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

# HTC CORPORATION'S SECTION 1404 MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

Jerry R. Selinger
State Bar No. 18008250
Trampas A. Kurth
State Bar No. 24055807
PATTERSON & SHERIDAN, LLP
1700 Pacific Ave., Suite 2650
Dallas, Texas 75201
(214) 272-0957 (Telephone)
(713) 623-4846 (Facsimile)
jselinger@pattersonsheridan.com

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

    A. The Nature of This Case ...............................................................................................2

    B. The Location of the Witnesses and Evidence ..............................................................3
        1. The Majority of Relevant Party-Related Witnesses and Documents are Located in or Close to the Northern District of California ..........................3
        2. Critical Third-Party Witnesses and Documents are Located in or Close to the Northern District of California ........................................................4
        3. The Plaintiff, the Named Inventors, and the Alleged Invention Have No Connection to the Eastern District of Texas .........................................7

III. APPLICABLE LAW .............................................................................................................7

IV. ARGUMENT ........................................................................................................................8

    A. This Case Could Have Been Brought in the Northern District of California ..........8

    B. The Private Factors Favor Transfer to the Northern District of California .............9
        1. The Location of Evidence In and Near California Favors Transfer ............9
        2. Availability of Compulsory Process in California Favors Transfer ..........10
        3. Cost of Attendance for the Parties and Witnesses Favors Transfer...........11
        4. No Practical Problems Favor this District Over the Northern District of California ................................................................................13

    C. The Public Interest Factors Favor Transfer to the Northern District of California ......................................................................................................................13
        1. Court Congestion Does Not Weigh Against Transfer ...............................13
        2. The Northern District of California Has a Substantial Connection To and Local Interest in the Adjudication of this Case ............................14
        3. Other Factors are Neutral...........................................................................15

V. CONCLUSION....................................................................................................................15


# TABLE OF AUTHORITIES

**Page**

## Cases

*Ei-Land Corp. v Simpson Strong-Tie Co., Inc.*,
  2010 WL 3859783 (E.D. Tex. Sept. 30, 2010) .................................................................. 14

*Fujitsu Ltd. V. Tellabs, Inc.*,
  639 F. Supp. 2d 761 (E.D. Tex. 2009) ............................................................................. 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .............................................................................. 8, 9, 11

*GeoTag, Inc. v. Aromatique, Inc., et al.*,
  2:10-cv-00570, Dkt. 585 (Jan. 14, 2013) .......................................................................... 10

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ..................................................................................... 9, 10

*Odom v Microsoft Corp.*,
  596 F. Supp. 2d 995 (E.D. Tex. 2009) ............................................................................. 14

*Touchscreen Gestures, LLC v HTC Corp., et al.*,
  6:12-cv-00261-MHS, Dkt. 17 (Mar. 27, 2013) ................................................................ 15

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .................................................................................. 7, 8, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................ 7-12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .......................................................................................... 8

*Wireless Recognition Techs LLC v. A9.com, Inc.*,
  2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................................................................... 12

## Statutes and Regulations

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 11

Fed. R. Civ. P. 45 ...................................................................................................................... 11

28 U.S.C. § 1391(c) ...........................................................................................................8

28 U.S.C. § 1400..............................................................................................................8

28 U.S.C. § 1400 (b) ........................................................................................................8

28 U.S.C. § 1404.................................................................................................1,7, 8, 15

28 U.S.C. § 1404(a) .........................................................................................................7

35 U.S.C. § 102(b) ...........................................................................................................4

**I.      INTRODUCTION**

Pursuant to 28 U.S.C. § 1404, defendant HTC Corporation moves to transfer this case to the Northern District of California because critical third-party witnesses are subject to compulsory process there and it is significantly more convenient for the parties and expected non-party witnesses. In addition, an HTC Corporation subsidiary, HTC America Innovation, Inc. has a facility in the Northern District of California and another subsidiary, HTC America, Inc., is headquartered in Seattle, Washington. HTC America, Inc. imported, marketed and sold the accused handsets into the United States, and its witnesses and documents are located in Seattle. Plaintiff, Mr. Salazar, a co-inventor of the asserted patent, lives in Lompoc California. In addition, Plaintiff's former company, Innovative Intelcom Industries ("Intelcom"), was located in Lompoc California. Intelcom no longer exists, but discovery and trial testimony of former Intelcom witnesses also will be needed to resolve this case. At least one of them also lives in Lompoc California.

The critical third-party witnesses who are located in the Northern District of California and/or in California include three companies with facilities in the Northern District of California which possess critical software documents and knowledgeable witnesses. Two of the three companies, Peel Technologies, Inc. ("Peel") and Google, have their headquarters in the Northern District of California, and the third, Qualcomm, is headquartered in San Diego, but has facilities in the Northern District of California. These third parties, and individuals working for them in the Northern District of California, have knowledge about the software underlying the functionality (or lack thereof) at issue in this case.

Given that the center of gravity of the accused activity is the Northern District of California, and given the absence of relevant witnesses or evidence in the Eastern District of

Texas, the public and private factors relevant to venue transfer strongly weigh in favor of transfer to the Northern District of California. Accordingly, Defendant's motion should be granted.

## II. BACKGROUND

### A. The Nature of This Case

Mr. Salazar filed this case on October 5, 2016 and accuses HTC Corporation of infringing U.S. Patent No. 5,802,467 ("the '467 patent")[1] by "making, offering for sale or use, and/or selling, distributing, promoting or providing for use by others … smartphone products including but not limited to HTC One M7, HTC One M8 and HTC One M9 that embody wireless communications, control and sensing systems for communicating with external devices, including televisions and other devices." First Am. Complt, Dkt. No. 17, ¶ 13. Mr. Salazar asserts that "the accused HTC One smartphones are Android or Windows based phones and include microprocessors, memory devices, user interfaces, and infra-red frequency transceivers, among other components and features." *Id.* ¶ 14.

The only defendant, HTC Corporation, is a Taiwanese corporation with its headquarters in New Taipei City, Taiwan. One HTC Corporation subsidiary, HTC America Innovation, Inc., has a facility in San Francisco, California. HTC Corporation also is the parent corporation to HTC America, Inc. ("HTC America"), a Washington state corporation headquartered in Seattle. While the '467 Patent was extant, HTC America imported, marketed and sold in the United States the One M7, One M8 and One M9 handsets made abroad by HTC Corporation. Gietzen Decl., ¶¶ 2-4.[2]

---

[1] A true and correct copy of the '467 Patent is attached as Exhibit 1 to the Selinger Declaration.

[2] The Declaration of Sherrie Gietzen is Exhibit A to this motion. The declaration of Teng Shan Wei is Exhibit B to this motion. The Declaration of Jerry R. Selinger is Exhibit C to this motion.

### B. The Location of the Witnesses and Evidence

#### 1. The Majority of Relevant Party-Related Witnesses and Documents are Located in or Close to the Northern District of California

The West Coast, and especially the Northern District of California, is the center of gravity of the accused activity. U.S.-based witnesses with knowledge about the accused features and products, together with relevant technical documents, are located in the Northern District of California, California, and Washington State. None are located in the Eastern District of Texas.

U.S.-based employees of HTC Corporation and/or HTC America with relevant knowledge of the accused products are located in California or Washington State. Gietzen Decl. ¶¶3-4, 7-8.

HTC America's most knowledgeable witnesses and documents concerning the relevant issues are located in Seattle, Washington. HTC Corporation's operations in the United States are managed by and coordinated through HTC America's headquarters in Seattle, Washington. *Id*. Ms. Gietzen is a foreseeable witness at trial. The documents relating to the design, manufacture and operation of HTC-branded handsets of HTC Corporation and HTC America, (collectively "HTC") are primarily located in Taiwan and Washington State. HTC's records relating to corporate finance, marketing, market analysis and forecasts are primarily located in Taiwan and Washington State. *Id*. ¶¶3, 6, 11. HTC does not have any witnesses with relevant factual knowledge of the accused HTC handsets, the '467 Patent, or prior art who work or reside in the Eastern District of Texas. *Id*. ¶¶3, 6, 10. HTC does not maintain any documents relevant to this action in the Eastern District of Texas. *Id*. ¶ 6. Most of HTC's engineers, including those who worked on the hardware and software design, development, integration and

manufacturability of the One M7, One M8 and One M9 handsets, work and live in Taiwan. *Id*. ¶7. No HTC engineers live or work in the Eastern District of Texas. *Id*.

Mr. Salazar is one of the two named co-inventors on the expired '467 Patent. He lives in Lompoc, California. First Am. Compl., ¶ 2. The second inventor lives in Spain. The co-inventors assigned the patent to Innovative Intelcom Industries of Lompoc, California, ("Intelcom") which allegedly made and sold products marked with the number of the '467 Patent. First Am. Complt, ¶ 11. Intelcom apparently reassigned the patent to Mr. Salazar when Intelcom closed down. Mr. Salazar contends that the claimed subject matter was conceived and reduced to practice in 1993, although the patent application was not filed until 1995. Former employees of Intelcom, and any surviving documents, will be needed to testify about relevant business activity more than one year prior to the filing of the application, 35 U.S.C. § 102(b), as well as relevant information about conception and reduction to practice of the claimed invention. According to Salazar's Initial Disclosures, at least one such person, Robert L. Meyers, continues to live in Lompoc California, and HTC Corporation anticipates that discovery will identify additional individuals living in California with relevant knowledge.[3]

### 2. Critical Third-Party Witnesses and Documents are Located in or Close to the Northern District of California

As indicated in the Introduction, *supra*, witnesses and documents of at least three third-party companies critical to the claims and defenses in this case are located in the Northern District of California. First, Peel Technologies, Inc. ("Peel") is the source of command

---

[3] The '467 Patent listed the co-inventor as living in Spain. However, Intelcom filed a second patent application which lists a third individual, Robert L. Meyers. That application listed him as living in Lompoc California. Salazar's Initial Disclosures dated April 24, 2017 identify Mr. Meyers as a person having relevant knowledge and confirm that Mr. Meyers continues to live in Lompoc, California. Selinger Decl., Ex. 13.

sets for the functionality for remotely controlling any of multiple appliances, each having different command code sets.

For context, the '467 Patent explains that in the prior art "a handset that is capable of communicating with substantially all major brands of various devices … requires a substantially large memory to store all the command code sets with various sets of signals." '467 Patent, 7:55-60. The '467 Patent solves this alleged "problem" by using a microprocessor 30 to retrieve data from a memory device "configured to store a finite set of parameters that may be used to recreate and generate signals corresponding to a desired command code set. These parameters take substantially less memory space than if the entire signal were to be stored." '467 Patent, 8:24-30. In this way, the patent stores in memory data corresponding to all desired command code sets but in a way that requires substantially less memory than if all of the command code sets were stored. '467 Patent, 8:10-21.

Each asserted independent claim recites, *inter alia*, a microprocessor configured "to generate communication protocols" for each type of external device and a memory configured to store "parameter sets" the microprocessor uses to recreate any desired command code set. '467 Patent, claims 1, 10, 34. The Amended Complaint asserts that accused HTC handsets "embody wireless communications, control and sensing systems for communicating with external devices, including televisions and other devices." First Am. Compl., ¶ 13.

The accused HTC handsets are not preloaded with command code sets needed for communicating with televisions or other appliances. Wei Declaration, ¶3. Instead, HTC One M7, One M8 and One M9 products access a network service maintained or provided by Peel, which stores at least hundreds of command code sets of substantially all major brands of various


devices on its servers. *Id.*, ¶ 4.[4] Peel did not provide HTC with the source code for Peel's Smart Remote app or Peel's network service. *Id.*, ¶ 5. This is the context for why Peel's documents and witnesses are critical.

Peel is located at 321 Castro Street, Mountain View, California. Discovery of Peel documents including source code and trial testimony of Peel witnesses will be needed to resolve this case. Wei Decl., ¶¶ 2-5, Selinger Decl., Ex. 6, at 2 *et seq*.[5] Officers of Peel with relevant knowledge include Balamurugan Krisnan, President and Chief Product Officer, Vineet Gupta, Vice President, Strategic Alliance & Distribution, and Thiru Arunachalum, CEO. Selinger Decl., Exs. 2, 11.

Plaintiff has asserted infringement based on Google's Android Operating System. First Am. Compl., ¶14. Google is headquartered in Mountain View, California in the Northern District of California, Selinger Decl., Ex. 3. Google maintains proprietary documents and source code relevant to the Android Operating System in that District and likely Google witnesses work in that District. In particular, Francesco Nerieri, who works for Google in Mountain View, California, is expected to have relevant knowledge. *Id.*, Ex. 11 (listing Mr. Nerieri).

Plaintiff also has asserted infringement based on Microsoft's Windows Operating System. First Am. Compl., ¶14. Microsoft is headquartered in Redmond, Washington, Selinger

---

[4] It is public knowledge that Peel provides this functionality. *See* http://blog.htc.com/2015/04/sense-tv-going-away-need-know/ ("Sense TV was powered by the Peel Smart Remote ….)

[5] Plaintiff's Infringement contentions are based "[o]n information and belief and to be confirmed by review of HTC's source code." *See, e.g.*, Selinger Decl., Ex. 6 at 2. Third-party proprietary source code, not HTC source code, will provide critical evidence showing HTC's accused handsets do not have the claimed structure and functionality.

Decl., Ex. 4. Microsoft does not voluntarily share documents and source code relevant to the Windows Operating System.

Plaintiff has asserted in his Infringement Contentions that Qualcomm chips in HTC's accused handsets implement functions relevant to the accused features. Selinger Decl., Ex. 6. Qualcomm is headquartered in San Diego, California, but has facilities in the Northern District of California. Selinger Decl., ¶10 and Ex. 5.

### 3. The Plaintiff, the Named Inventors, and the Alleged Invention Have No Connection to the Eastern District of Texas

Although Mr. Salazar filed this action in the Eastern District of Texas, he has no connection with this District. He lives in Lompoc, California. First Am. Compl., ¶2. Intelcom was located in Lompoc, California. '467 Patent at page 1. His former co-worker, Robert Meyers, lives in Lompoc, California. Thus, all of Plaintiff's relevant documentary evidence is located outside of the Eastern District of Texas.

## III. APPLICABLE LAW

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses" and "in the interest of justice," a court may transfer a civil action to any judicial district "where it might have been brought." 28 U.S.C. § 1404; *see In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). In the Fifth Circuit, the "threshold" determination for the district court under Section 1404(a) is whether the claims could have been brought in the proposed transferee district. *In re Volkswagen AG* 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). After such determination, the district court must consider the convenience of the

parties and witnesses in both forums, balancing several private and public interest factors. *Id.*; *see also In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009).[6]

The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The public interest factors consist of "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id.*

## IV. ARGUMENT

### A. This Case Could Have Been Brought in the Northern District of California

Pursuant to 28 U.S.C. § 1400, a patent infringement action may be brought in the district where the defendant resides. 28 U.S.C. § 1400(b). For purposes of venue, a corporation is deemed to reside in any district where it is subject to personal jurisdiction at the time the suit is filed. 28 U.S.C. § 1391(c). Mr. Salazar's suit against HTC Corporation could have been brought in the Northern District of California because HTC Corporation has extensive contacts with that district. It has a subsidiary with facilities in the Northern District of California, and the accused One M7, One M8 and One M9 handsets were offered for sale, sold and/or used in that district. Gietzen Decl., ¶¶4-5.

---

[6] The plaintiff's choice of venue is not a distinct factor in the § 1404 analysis. *In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008) (granting petition for writ of mandamus where district court denied motion to transfer and incorrectly afforded the plaintiff's chosen venue "considerable deference.")

### B. The Private Factors Favor Transfer to the Northern District of California

### 1. The Location of Evidence In and Near California Favors Transfer

The first private-interest factor is the relative ease of access to sources of proof, which takes into consideration the location of documents and physical evidence. *See Volkswagen II,* 545 F.3d at 316. Here, critical third-party evidence is located in the Northern District of California, where Peel and Google are headquartered. Selinger Decl., ¶¶ 5-8 & Exs. 2, 3, 11, 12. In addition, plaintiff and his expected third-party aligned witnesses, *i.e.*, former Intelcom employees with knowledge about the work relating to the '467 Patent, are located in California. One has been identified as living in Lompoc, California. Selinger Decl., Ex. 7. Any surviving Intelcom documents relating to the '467 Patent are most likely located in California. Qualcomm witnesses and documents are located in the Northern District of California or San Diego, California, and Microsoft documents relevant to its Windows Operating System are located in Washington State. Selinger Decl., ¶¶10-11 & Exs. 4, 5.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345; *In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1199 (Fed. Cir. 2009) (citing *Genentech*, 566 F.3d at 1345). For example, the location of an alleged infringer's research and development-related documents and evidence is an important factor to consider. *See Nintendo*, 589 F.3d at 1199. Here, the majority of documents in the U.S. related to the accused handsets are located in the Northern District of California and Washington State. Gietzen Decl. ¶6. In contrast, no relevant documents are maintained in the Eastern District of Texas. *Id*.

Accordingly, this factor weighs heavily in favor of transfer to the Northern District of California. *See Nintendo*, 589 F.3d at 1199-1200 ("Because most evidence resides in Washington [the proposed transferee venue] or Japan with none in Texas, the district court erred in not weighing this factor heavily in favor of transfer.").

### 2. Availability of Compulsory Process in California Favors Transfer

The second private-interest factor is the Court's ability to compel non-party witnesses to attend trial. *See Volkswagen II*, 545 F.3d at 316. "[T]ransfer is heavily favored when the majority of non-party witnesses reside in the transferee forum." *GeoTag, Inc. v. Aromatique, Inc., et al.*, 2:10-cv-00570, Dkt. No. 585 at 6 (Jan. 14, 2013).[7]

As discussed above, non-party witnesses critical to the claims and defenses in this case reside in and are subject to compulsory process only in the Northern District of California. Specifically, third-party Peel Technologies, Inc. will provide critical documentary evidence and testimony to the effect that Peel is the source of any specific command code set for remotely controlling any of multiple appliances, each having different command code sets. Third-party Peel, not HTC's accused handsets, maintains command code sets of substantially all major brands of various devices on its servers. Wei Decl., ¶¶3-4. Peel did not provide HTC with the source code for Peel's Smart Remote app or Peel's network service. *Id*., ¶ 5. The Peel source code and testimony of Peel employees will be a critical part of the trial testimony regarding HTC Corporation's non-infringement. These include Balamurugan Krisnan, President and Chief Product Officer, Vineet Gupta, Vice President, Strategic Alliance & Distribution, and Thiru Arunachalum, CEO. Selinger Decl., Exs. 2, 11. These executives will be subject to compulsory process in the Northern District of California, but not in the Eastern District of Texas.

---

[7] The case is Selinger Decl., Ex. 9.

Google, which developed the Android Operating System that runs on accused handsets, is headquartered in the Northern District of California. Selinger Decl., Ex. 3. Mr. Salazar alleges that the operation of Google's Android Operating System is relevant to the claims in this case. *See* First Am. Compl., D.I. 17, ¶14. Mr. Nerieri is a Google employee with relevant knowledge who works in the Northern District of California. He will be subject to compulsory process in the Northern District of California, but not in the Eastern District of Texas. Selinger Decl., Exs. 11, 12.

As noted above, Plaintiff also identifies Qualcomm chips in its infringement contentions. Peel, Google and Qualcomm employees cannot be compelled to testify at trial in the Eastern District of Texas even under Fed. R. Civ. P. 30(b)(6) and 45. None of those three companies is a party to this case. Peel, Google and Qualcomm personnel are, however, subject to compulsory process in the Northern District of California.

If this case remains in Texas, HTC Corporation cannot compel any of these companies or identified-to-date individuals to testify at trial with critical information on the issue of non-infringement. On the other hand, HTC Corporation can compel those witnesses to appear at trial in the Northern District of California. Accordingly, this factor heavily favors transfer to the Northern District of California. *See, e.g., Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.")

### 3. Cost of Attendance for the Parties and Witnesses Favors Transfer

The cost of attendance for and convenience of the witnesses "is probably the single most important factor in transfer analysis." *Id.* at 1343. In assessing this factor, the Court in *Volkswagen II* instructed that "[w]hen the distance between an existing venue for trial of a matter

and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 545 F.3d at 317. Although courts must consider the convenience of both party and third-party witnesses in the transfer analysis, the convenience of third-party witnesses is afforded greater weight. *Wireless Recognition Techs, LLC v. A9.com, Inc.*, No. 2:10-cv-364-JRG, 2012 WL 506669, at *5 (E.D. Tex. Feb. 15, 2012).

Based on HTC Corporation's current understanding of Mr. Salazar's allegations, relevant third-party witnesses, including Peel, Google and Qualcomm employees work and reside in the Northern District of California.  Marshall, Texas is over 1,400 miles from the Northern District of California, Selinger Decl., ¶12.  Travel to Marshall from there would impose a significant inconvenience for third-party Peel, Google and Qualcomm witnesses.  Travel from Microsoft's headquarters in Redmond Washington also would impose a significant inconvenience on Microsoft witnesses. Selinger Decl., Ex. 8 (comparing travel times).

Turning to party-related witnesses, the majority of HTC Corporation's U.S.-based employees having relevant knowledge work and/or reside in California or Washington State.  It is much more convenient for them, and for any HTC America witnesses based in Seattle, to appear at trial in the Northern District of California rather than in the Eastern District of Texas.  They will have a shorter travel time if this case is transferred to the Northern District of California. The courthouse in San Francisco, California is 811 miles from HTC America's Seattle office, while the courthouse in Marshall, Texas is more than 2,000 miles from the Seattle office. Gietzen Decl. ¶¶3-4, 6, 8-10.  There are non-stop flights between Seattle and San Francisco, while travel to Marshall entails either two flights or a flight to DFW and a three-hour drive. *Id*., ¶ 9; Selinger Decl., Ex. 8.  Most of the HTC Corporation engineers with relevant knowledge

12

work and live in Taiwan.  Gietzen Decl., ¶7.  For these witnesses, travel to Marshall would be similarly more inconvenient. *Id*., ¶¶9-10.

Finally, Mr. Salazar and Mr. Meyers live in Lompoc, California.  Lompoc is 291 miles from San Francisco.  Lompoc is 24 miles from Santa Maria airport and 55 miles from Santa Barbara airport.   Santa Barbara has short non-stop flights to San Francisco.  Santa Maria airport has flights to Los Angeles airport, which has short direct flights to San Francisco.  Selinger Decl., ¶13 & Ex. 8.

By contrast, no identified witnesses are located in Texas.  Selinger Decl., Exs. 7, 11.  Accordingly, this factor weighs strongly in favor of transfer.

### 4.  No Practical Problems Favor this District Over the Northern District of California

The last private-interest factor is neutral. "Practical problems include those that are rationally based on judicial economy." *Fujitsu Ltd. v. Tellabs, Inc*., 639 F. Supp. 2d 761, 768 (E.D. Tex. 2009).  There are no cases that are related to the instant lawsuit.  This Court has not construed any claims of the '467 Patent, nor has this Court yet invested any substantial resources in managing this case. The case is at an early stage of discovery.

## C.    The Public Interest Factors Favor Transfer to the Northern District of California

### 1.  Court Congestion Does Not Weigh Against Transfer

For the 12-month period ending September 30, 2016, the median time to trial for civil cases in the Northern District of California was 24.8 months and 22.5 months in the Eastern District of Texas. *See* Federal Judicial Business Report for Fiscal Year Ending September 30,

2016, Table C-5.[8]  The most recent quarterly Federal Court Management Statistics – Profiles (for the 12 month period ending December 31, 2016) shows the median time to trial for civil cases in the Northern District of California to be 31.2 months and in the Eastern District of Texas to be 19.4 months.  *See* pp. 35 & 66.[9]  While data for 12-month periods vary, given that the '467 Patent expired prior to the filing of this lawsuit, there is less urgency than if plaintiff could obtain a permanent injunction, so this factor is neutral.

### 2. The Northern District of California Has a Substantial Connection to and Local Interest in the Adjudication of this Case

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. Although accused handsets were sold in Texas, "[i]nterests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests." *Ei-Land Corp. v. Simpson Strong-Tie Co., Inc*., No. 2:09–cv–337–CE, 2010 WL 3859783, at * 5 (E.D. Tex. Sept. 30, 2010).  There is no unique local connection to the Eastern District of Texas.

By contrast, the Northern District of California has a very strong interest in this case because it is the center of gravity of the accused activity.  Party and third-party facilities and witnesses are centered there.  *See Odom v. Microsoft Corp*., 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (explaining that "where a forum has identifiable connections to the events giving rise to the suit, this factor may support litigating the case in that forum.").  Indeed, this litigation calls into question the work and business of Peel Technology, Inc. which has its executives and

---

[8] http://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2016.pdf

[9] http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2016.pdf

employees in the Northern District of California. *See Touchscreen Gestures, LLC v. HTC Corp. et al.*, Case No. 6:12-cv-00261-MHS, Dkt. 17 at 12 (Mar. 27, 2013) (*See* Selinger Decl. ¶15.) Since the Northern District of California has a more substantial connection to, and local interest in, this case, this factor weighs strongly in favor of transfer.

### 3. Other Factors are Neutral

Other public-interest factors include familiarity with the law that will govern the case and avoidance of any unnecessary problems with conflicts of law. The courts in both districts are well familiar with patent law. The two districts have similar Local Patent Rules, and, because this is a patent case, there are not any issues relating to conflicts of law. These factors are neutral.

## V. CONCLUSION

For all of the foregoing reasons, HTC Corporation respectfully moves the Court to transfer this case pursuant to 28 U.S.C. § 1404 to the Northern District of California. When all relevant factors are weighed and balanced, that forum is clearly more convenient.

Respectfully submitted,

\_\_\_\_/s/Jerry R. Selinger_____

Jerry R. Selinger
State Bar No. 18008250
Trampas A. Kurth
State Bar No. 24055807
PATTERSON & SHERIDAN, LLP
1700 Pacific Ave., Suite 2650
Dallas, Texas 75201
(214) 272-0957 (Telephone)
(713) 623-4846 (Facsimile)
jselinger@pattersonsheridan.com

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

## **CERTIFICATE OF CONFERENCE**

I certify that on April 25, 2017, I conferred by telephone with Andy Tindel about whether his client would consent to transfer this action to the Northern District of California. Mr. Tindel informed me that his client did not consent and opposed the motion to transfer.

/s/ Jerry R. Selinger

## **CERTIFICATE OF SERVICE**

I certify that on May 10, 2017, that the foregoing document was electronically filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing ("ECF") system of the court. The attorneys of record who have consented in writing to accept notice as service of this document by electronic means are being served by a "Notice of Electronic Filing," sent by the ECF system.

/s/ Jerry R. Selinger