# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF JOE ANDREW SALAZAR'S RESPONSE IN OPPOSITION TO DEFENDANT HTC CORPORATION'S SECTION 1404 MOTION TO TRANSFER <u>VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

**TABLE OF CONTENTS**

Table of Contents ...........................................................................................................................i

Table of Authorities ......................................................................................................................ii

I. Introduction ............................................................................................................................... 1

II. Standard of Review .................................................................................................................. 1

    A. The Private Interest Factors Weigh Against Transfer or Are Neutral ................................ 3

        1. The Relative Ease of Access to Sources of Proof Factor Weighs Against Transfer ...................................................................................................................................... 3

        2. The Cost of Attendance for Willing Witnesses Factor Does Not Favor Transfer ......... 7

        3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Factor Weighs Against Transfer or is Neutral .............................................................. 10

        4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Factor Clearly Weighs Against Transfer ................................................. 12

    B. The Public Interest Factors Weigh Against Transfer or are Neutral .................................. 13

        1. The Administrative Difficulties Flowing from Court Congestion Factor Weighs Heavily Against Transfer .............................................................................................. 13

        2. The Local Interest Factor is Neutral ........................................................................... 14

        3. The Familiarity of the Forum with the Law and Problems of Conflict of Laws Factors Are Neutral ..................................................................................................... 14

III. Conclusion ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Aloft Media, LLC. v. Adobe Systems, Inc.*, No. 6:07-CV-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) ................................................................................................................ 6

*AT&T Intel. Prop. I, L.P. v. Airbiquity Inc.*, No. 3:08-CV-1637, 2009 WL 774350 (N.D. Tex. Mar. 24, 2009) .................................................................................................................. 2

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport,* 228 F.3d 544 (5th Cir. 2000) ............................ 9

*BNSF Ry. Co. v. OOCL, Inc.*, 667 F. Supp. 2d 703 (N.D. Tex. 2009) ........................................... 8

*Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC,* No. 2:14-CV-627, 2015 WL 1046267 (E.D. Tex. Mar. 10, 2015) ..................................................................... 10

*Core Wireless Licensing S.a.r.l. v. LG Electronics, Inc.,* No. 2:14-CV-911, 2015 WL 5143395 (E.D. Tex. Sept. 1, 2015) .................................................................................................. 4

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.,* 867 F. Supp. 2d 859 (E.D. Tex. 2012) ............. 4

*Gates Learjet Corp v. Jenson*, 743 F.2d 1325 (9th Cir. 1984) ...................................................... 13

*GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570, Docket No. 585 (E.D. Tex Jan. 14, 2013) .............................................................................................................................................. 8

*Hanby v. Shell Oil Co.,* 144 F. Supp. 2d 673 (E.D. Tex. 2001) ..................................................... 2

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53 (5th Cir. 1963) ........................... 3

*In re Genentech, Inc.,* 566 F.3d 1338 (Fed. Cir. 2009) ................................................. 2, 3, 8, 9, 13

*In re Hoffmann–La Roche Inc.,* 587 F.3d 1333 (Fed. Cir. 2009) .......................................... 10, 14

*In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009) .......................................................... 2, 3

*In re TS Tech USA Corp.,* 551 F.3d 1315 (Fed. Cir. 2008) ........................................................ 2, 3

*In re Volkswagen AG,* 371 F.3d 201 (5th Cir. 2004) ................................................................ 2, 3, 7

*In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008) ......................................... 2, 3, 10

*Invitrogen v. Gen. Elec. Co.,* No. 6:08-cv-113, 2009 WL 331889 (E.D. Tex. Feb. 9, 2009) ........ 6

*J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.,* No. 6:08-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) ................................................................................... 6, 14

*Konami Dig. Entm't Co. Ltd. v. Harmonix Music Sys.,* No. 6:08-CV-286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ............................................................................................ 4

*Mears Techs., Inc. v. Finisar Corp.*, 2:13-CV-376, 2014 WL 1652603 (E.D. Tex. Apr. 24, 2014) .................................................................................................................................... 9, 12

*Medidea, LLC v. Smith & Nephew, Inc.*, No. 2:09-CV-378, 2010 WL1444211 (E.D. Tex. Apr. 12, 2010) ............................................................................................................................. 7

*Mohamed v. Mazda Corp.,* 90 F. Supp. 2d 757 (E.D. Tex. 2000) ................................................. 2

*Mondis Technology Ltd. v. Top Victory Electronics (Taiwan)Co. Ltd.*, No. 2:08-CV-478, 2009 WL 3460276 (E.D. Tex. Oct. 23, 2009) ............................................................................ 8

*Nexus Display Technologies LLC v. Dell, Inc.*, No. 2:14-CV-762-RWS, 2015 WL 5043069 (E.D. Tex. Aug. 25, 2015) .............................................................................................. 9, 11

*Novelpoint Learning v. Leapfrog Enter.,* No 6:10-cv-229, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ............................................................................................................................. 10

*Presquiber, LLC v. CureMD.Com, Inc.,* No. 6:14-CV-446, 2015 WL 11578560 (E.D. Tex. Mar. 26, 2015) ................................................................................................................... 2, 10

*Quad Powerline Techs. LLC v. TRENDnet, Inc.,* No. 2:14-CV-1169-JRG-RSP, 2015 WL 4911094 (E.D. Tex. Aug. 17, 2015) .................................................................................... 10

*SSL Services, LLC v. Cisco Systems, Inc.,* No. 2:15-CV-433, 2016 WL 727673 (E.D. Tex. Feb. 24, 2016) ............................................................................................................................. 7

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ..................... 2

*Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-14, 2014 WL 4449821 (N.D. Tex. Sept. 10, 2014) ............................................................................................................................................ 4

*TC Heartland LLC v. Kraft Foods Group Brands LLC,* 2017 WL 2216934, 581 U.S. __ (May 22, 2017) ............................................................................................................................ 13

*United States v. Tunnell*, 667 F.2d 1182 (5th Cir. 1982) .............................................................. 9

*U.S. Ethernet Innovations, LLC v. Samsung Electronics. Co. Ltd.*, No. 6:12-CV-398, 2013 WL 1363613 (E.D. Tex. Apr. 2, 2013) .................................................................................. 6

*VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-011, 2014 WL 459719 (E.D. Tex, Jan. 31, 2014) .................................................................................................................. 9

*West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850 (E.D. Tex. Oct. 27, 2011) ................................................................................................................ 10

*Ziilabs, Inc. v. Samsung Electronics Co. Ltd.,* No. 2:14-cv-203, 2015 WL 5278744 (E.D. Tex. Sept. 9, 2015) ............................................................................................................ 7, 10

## Rules

Fed. R. Civ. P. 32 ......................................................................................................................... 11

Fed. R. Civ. P. 45 ......................................................................................................................... 11

## Statutes

28 U.S.C. 1404(a) .................................................................................................................. 1, 2, 9

Plaintiff Joe Andrew Salazar ("Mr. Salazar") files this Response in opposition to Defendant HTC Corporation's ("HTC") Section 1404 Motion to Transfer Venue to the Northern District of California ("Motion") which will demonstrate that HTC has failed to carry its burden of establishing that the relevant convenience factors *clearly weigh* in favor of transferring this action to the Northern District of California ("NDCA").  Accordingly, HTC's Motion should be denied.

## I.     INTRODUCTION

Mr. Salazar is the owner of all rights, title and interest in and to United States Patent No. 5,802,467 ("the '467 Patent" or the "Patent-in-Suit"). Mr. Salazar instituted this action in the Eastern District of Texas (this "District") on October 5, 2016 against HTC, a Taiwanese corporation headquartered in New Taipei City, Taiwan, alleging infringement of the Patent-in-Suit. (Doc. No. 1).  Thereafter, HTC thereafter filed the instant Motion to transfer this case to NDCA on May 10, 2017. (Doc. No. 35). HTC's Motion should be denied because NDCA is not a clearly more convenient venue than this District and the private or public interest factors analyzed in assessing venue transfer either weigh against transfer or are neutral. First, the relevant evidence in this case exists in various locations throughout the United States and in Taiwan and Spain. Thus, NDCA merely represents one of the many locations of relevant evidence. Second, only one non-party identified by HTC may arguably have relevant witness in NDCA. Moreover, three of the non-party witnesses live east of Texas, making this District the more convenient venue for them. In sum, transfer of this case would merely shift the inconvenience from one set of witnesses to another. Accordingly, Mr. Salazar's choice of venue should not be disturbed.

## II.    STANDARD OF REVIEW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court *may transfer* any civil action to any other district or division where it

1

might have been brought."[1]  A party "who seeks the transfer must show good cause."[2] "Section 1404(a) is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."[3] Ultimately it is within the Court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case.[4] In order to warrant granting a motion to transfer under 28 U.S.C. § 1404(a) a movant must "demonstrate that the transferee venue is *clearly more convenient*."[5]  Although a plaintiff's choice of venue is not a factor in this analysis, it contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue.[6] Otherwise, a plaintiff's choice of forum must be respected.[7] If HTC fails to satisfy this burden, then Mr. Salazar's choice of forum should be respected.[8]

When analyzing a case's eligibility for section a 1404(a) transfer, the first inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."[9] Once this threshold is met,[10] courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular

---

[1] 28 U.S.C. § 1404(a) (2006) (emphasis added).
[2] *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*").
[3] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (citation and quotation marks omitted).
[4] *Presquiber, LLC v. CureMD.Com, Inc.,* No. 6:14-CV-446, 2015 WL 11578560, at *1 (E.D. Tex. Mar. 26, 2015) citing *Hanby v. Shell Oil Co.,* 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.,* 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).
[5] *In re Volkswagen II*, 545 F.3d at 314-5 (emphasis added); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *In re Genentech, Inc.,* 566 F.3d 1338, 1342 (Fed. Cir. 2009); *see also AT&T Intel. Prop. I, L.P. v. Airbiquity Inc.*, No. 3:08-CV-1637, 2009 WL 774350, at *1 (N.D. Tex. Mar. 24, 2009) (denying a motion to transfer venue where transferee venue was not clearly more convenient even though defendant demonstrated that transferee forum was more convenient than transferor venue).
[6] *In re Volkswagen II*, 545 F.3d at 314-5; *In Re Nintendo,* 589 F.3d at 1200.
[7] *In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008).
[8] *In re Volkswagen II*, 545 F.3d at 315.
[9] *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*In Re Volkswagen I*").
[10] In this case, Mr. Salazar does not dispute that this action could have been brought in NDCA.

venues in hearing the case.[11] The private interest factors are: (i) the relative ease of access to sources of proof; (ii) the cost of attendance for willing witnesses; (iii) the availability of compulsory process to secure the attendance of witnesses; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive.[12] The public interest factors are: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized interests decided at home; (iii) the familiarity of the forum with the law that will govern the case; and (iv) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.[13] Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive on its own.[14] When the Court applies these private and public factors, it will be readily seen that HTC has not demonstrated that NDCA is "clearly more convenient" venue than this District.[15]

### A. The Private Interest Factors Weigh Against Transfer or Are Neutral

#### 1. The Relative Ease of Access to Sources of Proof Factor Weighs Against Transfer

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."[16] However, in this case that factor does <u>not</u> weigh in favor of transfer to NDCA because it does not appear that any relevant HTC documents are located in NDCA. The accused handsets are manufactured abroad by HTC in either Taiwan or China and are then marketed and sold in the United States by HTC America, Inc., a subsidiary of HTC located

---

[11] *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.,* 321 F.2d 53, (5th Cir. 1963); *In re Nintendo,* 589 F.3d at1198; *In re TS Tech USA Corp.,* 551 F.3d at 1319.
[12] *In re Volkswagen I,* 371 F.3d at 203; *In re Nintendo,* 589 F.3d at 1198*; In re TS Tech,* 551 F.3d at 1319.
[13] *Id.*
[14] *In re Volkswagen II*, 545 F.3d at 314-15.
[15] *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.,* 589 F.3d at 1198; *In re TS Tech USA Corp.,* 551 F.3d at 1319.
[16] *In re Genentech, Inc.,* 566 F.3d 1338, 1345 (Fed.Cir.2009) (citation omitted).

in Seattle, Washington. (Gietzen Decl. ¶ 3). Due to this, HTC says that its documents relating to the design, manufacture and operation of HTC-branded handsets and records relating to corporate finance, marketing, market analysis and forecasts are primarily located in Taiwan and Washington State. (Gietzen Decl. ¶ 6). Although HTC says that one of its Washington State-based subsidiaries, HTC America Innovations, Inc., has a facility in San Francisco, HTC provides no information as to relevance of that facility or the work performed there to any of the claims or defenses in this lawsuit. As such, the presence of this San Francisco facility should be given little or no weight.[17]

Even in cases where the location of a defendant's documents is an important factor in determining the most convenient venue because that location is also the location of the proposed transferee district; this factor is deemed neutral where the sources of proof originate from varied locations.[18] The sources of proof in this case are spread across various places throughout the United States as well as in the countries of Spain and Taiwan. In addition to HTC's own company documents being located in Taiwan, Litz Info Tech Ltd. (Taiwan), Xii International Image Ltd. (Taiwan), BCM Ltd. and MPN have been identified by Mr. Salazar as other Taiwanese-based entities that will have documents and relevant knowledge regarding the design and development of products relating to the Patent-in-Suit. (Tindel Decl., ¶ 2 and Ex. A).

In the case of Mr. Salazar's sources of proof, his documents relating to the conception and reduction to practice of the claimed inventions as well as the Intelcom documents and other

---

[17] *Core Wireless Licensing S.a.r.l. v. LG Electronics, Inc.,* No. 2:14-CV-911, 2015 WL 5143395, at *3 (E.D. Tex. Sept. 1, 2015) (Speculative statements about the relevance of unspecified sources of proof which are unsubstantiated with any evidence are according little weight in the analysis of this transfer factor.)

[18] *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.,* 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012) (holding that where "the sources of proof originate from varied locations, this factor is neutral"); *Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-14, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014) (concluding that this factor was neutral where defendant's evidence was in California, Washington, Texas, Illinois, and Taiwan); *Konami Dig. Entm't Co. Ltd. v. Harmonix Music Sys.,* No. 6:08-CV-286, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other locations").

materials relating to the manufacture, sales, cost, and profit of products embodying the claimed inventions are located at 205 Main Street in East Aurora, New York. (Keyhani Decl., ¶ 2). Mr. Luis Molero-Castro, the co-inventor of the '467 Patent, is in possession of documents relevant to when the '467 Patent was conceived and reduced to practice that are located in Madrid, Spain. (Keyhani Decl., ¶ 3). Evidence relating to the prosecution of the patent-in-suit is located in the state of New York. (Keyhani Decl., ¶ 4).

Concerning other third party sources of proof, HTC argues that documents located in NDCA where Peel Technologies, Inc. ("Peel") and Google, Inc. ("Google") are headquartered, and in San Diego, California where Qualcomm, Inc. ("Qualcomm") is located, and in Washington State where Microsoft Corp. ("Microsoft") is located weigh in favor of transfer. As to Qualcomm, after stating that its principal place of business is in San Diego, California, HTC indicates that an "internet search shows that Qualcomm has a facility at 3165 Kifer Rd., Santa Clara, California." (Selinger Decl., ¶ 10). However, HTC makes no attempt to tie anything or anyone located at the Santa Clara facility to the Qualcomm chip found in its accused handsets. In fact, an internet search indicates that Qualcomm has facilities in eighteen (18) states in addition to California, including facilities in Austin, Texas and Richardson, Texas (which is partially located in this District).[19] (Tindel Decl. ¶ 3).

HTC states that Google maintains proprietary documents and source code in NDCA relating to its Android Operating System which HTC says is relevant to this action because Mr. Salazar "has asserted infringement based on Google's Android System." (Mot., pg. 6). However, HTC does not specify what proprietary documents or source code Google is in possession of that is relevant to the claims and defenses in this case. Similarly, HTC states that document relevant

---

[19] *See* https://www.qualcomm.com/company/facilities accessed on May 29, 2017.

to Microsoft's Windows Operating System are located in Washington State but makes no attempt to identify, let alone tie any specific Microsoft documents to any issue that is relevant or material to this case. This may be because Google and Microsoft's operating systems are not, in fact, material to this case. These are generic operating systems that the accused HTC phones use but that are not accused of infringement and there is no evidence that HTC can point to that would be required from these parties that would be material to the claims and defenses in this case. General statements that relevant documents may be found in a particular geographic location are insufficient to support transfer.[20] A transfer movant must also indicate why it would be inconvenient to transport documents in those locations to the transferor district. This is why parties are required to identify sources of proof *with specificity*.[21] Tellingly, HTC's Motion fails to identify its sources of proof with sufficient specificity "such that the Court may determine whether transfer will increase the convenience of the parties."[22] HTC's generalized, conclusory and non-specific claims of easier access to relevant sources of proof in NDCA justifies the Court in giving little or no weight to this factor in the transfer analysis.[23]

In addition, the vast majority of proof in the possession of the parties and any relevant third parties will likely involve electronically produced documents which are easily and inexpensively transportable – not physical evidence.[24] In fact, HTC's Motion provides little in the way of facts or argument regarding any increased cost or expense, significant inconvenience, or hardship

---

[20] *Invitrogen v. Gen. Elec. Co.,* No. 6:08-cv-113, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding that general statements that relevant documents were located in either England or New Jersey "fail to show that transfer would make access to sources of proof either more or less convenient for the parties.")
[21] *See J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.,* No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).
[22] *U.S. Ethernet Innovations, LLC v. Samsung Electronics,. Co. Ltd.*, No. 6:12-CV-398, 2013 WL 1363613 at *2 (E.D. Tex. Apr. 2, 2013).
[23] *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, 2009 WL 440525, at *2.
[24] *See Aloft Media, LLC. v. Adobe Systems, Inc.,* No. 6:07-CV-355, 2008 WL 819956, at *4 (E.D. Tex. Mar. 25, 2008) ("patent infringement litigation usually involves sources of proof that are readily convertible to an electronic format" which are more conveniently and inexpensively transportable than physical evidence).

associated with transporting HTC's documents, either physically or electronically, from either Taiwan or Washington State to this District for trial.[25] In truth, the burden of producing these documents in in this District will not be significantly different nor more onerous than producing them in NDCA would be. As such, the location of HTC's documents and the distance that these documents must be transported to trial is not a meaningful consideration in the transfer analysis for this case.

In summary, due to the fact that very little identified *relevant* proof appears to be located in NDCA and because the other sources of proof at issue in this case are spread across various locations throughout the United States and foreign countries and given the ease of transmitting these documents via electronic means – simply put – HTC has failed to establish that the majority of the sources of proof in this case are located in NDCA or that easier access to this proof would be available in NDCA rather than this District. As such, this factor clearly weighs against transfer.

### 2. The Cost of Attendance for Willing Witnesses Factor Does Not Favor Transfer

In assessing this factor, the Court considers the convenience of party and non-party witnesses.[26] All potential material and relevant witnesses must therefore be taken into account.[27] Despite this, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis.[28] In addition to simply identifying a potential witness by name and location "[a] district court should [also] assess the relevance and materiality of the information the witness may provide" although a movant is not required to

---

[25] *See Medidea, LLC v. Smith & Nephew, Inc.*, No. 2:09-CV-378, 2010 WL1444211, at *2 (E.D. Tex. Apr. 12, 2010) (this factor did not weigh in favor of transfer where defendant identified no documents or evidence located in the transferee district that could not be produced electronically or had not otherwise shown that transporting documents and physical evidence to the transferor district would pose significant additional inconvenience).
[26] *Ziilabs, Inc. v. Samsung Electronics Co. Ltd.,* No. 2:14-cv-203, 2015 WL 5278744, at *6 (E.D. Tex. Sept. 9, 2015).
[27] *In re Volkswagen I,* 371 F.3d at 204.
[28] *SSL Services, LLC v. Cisco Systems, Inc.,* No. 2:15-CV-433, 2016 WL 727673, at *4 (E.D. Tex. Feb. 24, 2016).

identify "key witnesses," or show "that the potential witness has more than relevant and material information...."[29] Importantly, "[a] defendant bears the burden of identifying unwilling third–party witnesses that would benefit from the transfer."[30]

Concerning third party witnesses, Mr. Salazar has identified Mr. Molero-Castro, a co-inventor of the '467 Patent who resides in Madrid, Spain, as a person with relevant knowledge concerning the Patent-in-Suit as well as the prosecuting attorneys of the Patent-in-Suit, Mr. John M. DiMatteo and Mr. Joseph Sofer, both of whom practice in New York, New York. (Keyhani Decl., ¶ 4). HTC has identified one Google employee, Francesco Nerieri, who it alleges has knowledge of the relevant functionality of Google's Android Operating System which, as shown earlier, is not material to the claims asserted by Mr. Salazar in this action. As far as Qualcomm is concerned, HTC fails to name a single Qualcomm employee that has relevant or material information; much less state what that information is or provide the location of the facility where this employee works or where the employee resides. Lastly, HTC has not even attempted to identify any Microsoft employees that supposedly have any information that is relevant or material to this action. This Court has clearly held that such "unsupported assertions" as HTC offers here fail to establish "relevant venue facts."[31]

Lastly, the cost and expense of witness attendance, especially the Taiwanese witnesses, does not favor transferring this case to NDCA.[32] The parties will still likely incur comparable

---

[29] *In re Genentech,* 566 F.3d at 1343–44.
[30] *GeoTag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570, Docket No. 585, *6 (E.D. Tex Jan. 14, 2013).
[31] *Mondis Technology Ltd. v. Top Victory Electronics (Taiwan)Co. Ltd.*, No. 2:08-CV-478, 2009 WL 3460276, at *3 (E.D. Tex. Oct. 23, 2009); *accord BNSF Ry. Co. v. OOCL, Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) ("A party seeking a transfer of venue must do more than make general allegations that key witnesses are unavailable or are inconveniently located." Rather, the moving party must identify specific witnesses and the relevant and material information they have.).
[32] *Mondis Technology Ltd.*, 2009 WL 3460276, at *2 ("When applying the 100–mile rule, a court should not place too much weight to the relative inconvenience for overseas parties and witnesses.", citing *In re Genentech*, 566 F.3d at 1344 (finding that "witnesses from Europe will be required to travel a significant distance no matter where they testify").

travel expenses to get their respective witnesses to trial. Both parties will undoubtedly have an equally small number of individuals who will need to travel to Marshall to testify as live witnesses if this case goes to trial. Most party witnesses can be deposed at locations convenient for both parties and non-party witnesses or by remote means. HTC can hardly argue that taking the depositions of any party witnesses in NDCA that reside in that district would impose any sort of inconvenience on their part.[33] Further, HTC would not be inconvenienced by taking the depositions of non-party witnesses near their places of residence or employment nor that it would be prejudiced by having to present the testimony of these non-party witnesses by video deposition at trial versus as live witnesses.[34] Transferring this case to NDCA would significantly increases the cost and the burden of securing the trial attendance of non-party witnesses located in New York, such as Mr. DiMatteo and Mr. Sofer, if they are willing to voluntarily attend trial since they cannot be compelled to do so. Given the realities of trial, such witnesses will certainly incur travel-related costs such as airfare, meals and lodging expenses that will be unarguably and substantially higher in NDCA than in this District.[35] Moreover, in light of this Court's practice of holding short, streamlined jury trials, convenience considerations also disfavor transfer as it will markedly reduce the inconvenience and time away from home and work for witnesses who must attend the entire trial. Thus, because it is clear that the majority of identified non-party witnesses do not reside in

---

[33] *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-011, 2014 WL 459719, at *5 (E.D. Tex, Jan. 31, 2014).

[34] *Nexus Display Technologies LLC v. Dell, Inc.*, No. 2:14-CV-762-RWS, 2015 WL 5043069, at *4 (E.D. Tex. Aug. 25, 2015) ("the Fifth Circuit [has] observed that a videotape deposition would serve as an acceptable substitute for live testimony", *see Battle ex rel. Battle v. Mem'l Hosp. at Gulfport,* 228 F.3d 544, 554 (5th Cir. 2000) (citing *United States v. Tunnell,* 667 F.2d 1182, 1188 (5th Cir. 1982)). While there is some benefit to providing live witnesses at trial, the Court is not convinced that using the non-party witnesses' deposition as opposed to live testimony at trial would seriously inconvenience [the parties]. *See In re Genentech, Inc.,* 566 F.3d at 1346 ('The Supreme Court has long held that § 1404(a) requires individualized, case-by-case consideration of convenience and fairness.') (internal quotation omitted). If the parties know beforehand that depositions will be used at trial, any inconvenience of not having the witnesses appear live is reduced even further.") (internal citations to the record omitted).

[35] *See Mears Techs., Inc. v. Finisar Corp.*, 2:13-CV-376, 2014 WL 1652603, at *3 (E.D. Tex. Apr. 24, 2014).

NDCA and since there are identified non-party witnesses residing closer to Marshall than to NDCA who would have to travel farther if the case were transferred, this factor weighs against transfer.

### 3. The Availability of Compulsory Process to Secure the Attendance of Witnesses Factor Weighs Against Transfer or is Neutral

This factor weighs heavily in favor of transfer only when more non-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over these non-party witnesses.[36] "Absolute subpoena power" is subpoena power for both depositions and trial.[37] Courts give more weight to those specifically-identified witnesses and less weight to vague assertions that witnesses are likely located in a particular forum.[38] In addition, because the relevant inquiry under this factor is whether either the transferee or the transferor district has absolute subpoena power over unwilling or potentially unwilling witnesses, the respective locations of the *parties'* witnesses are given minimal (if any) weight.[39] This is because the focus of this factor is on witnesses whom compulsory process to attend trial might be necessary.[40] As to unwilling witnesses, absent a showing that substantial expense would not be incurred, neither this Court nor the NDCA may command a non-party witness to attend the trial of

---

[36] *In re Volkswagen II*, 545 F.3d at 316.

[37] *In re Hoffmann–La Roche Inc.,* 587 F.3d 1333, 1338 (Fed. Cir. 2009).

[38] *See Novelpoint Learning v. Leapfrog Enter.,* No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

[39] *Presquiber, LLC v. CureMD.Com, Inc.,* 2015 WL 11578560 at *3 (emphasis supplied); *See also Ziilabs, Inc. v. Samsung Electronics Co. Ltd.*, No. 2:14-cv-203, 2015 WL 5278744, at *9 (E.D. Tex. Sept. 9, 2015) ("Party witnesses normally do not require compulsory process. The Court's analysis of this factor tends to focus on third-party witnesses.")

[40] *Certified Measurement, LLC v. Centerpoint Energy Houston Elec. LLC,* No. 2:14-CV-627, 2015 WL 1046267, at *3 (E.D. Tex. Mar. 10, 2015) (explaining that the location of the defendant's employees would not affect this analysis). *See also Quad Powerline Techs. LLC v. TRENDnet, Inc.,* No. 2:14-CV-1169-JRG-RSP, 2015 WL 4911094, at *4 (E.D. Tex. Aug. 17, 2015) ("Party witnesses do not require compulsory process, and the Court's analysis of this factor focuses on third-party witnesses for whom compulsory process to attend trial might be necessary.")

this case unless that non-party witness resides, is employed or regularly transacts business in person within 100 miles from the courthouse where the trial will take place.[41] On the other hand, both courts can compel the appearance of non-parties to provide their testimony by deposition.[42] This is because Rule 45, as amended in 2013, provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony from persons (regardless of their state of residency or employment) to attend a deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person."[43] The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court.[44]

    As a starting point and most importantly, the co-inventor of the '467 Patent, Mr. Moreno-Castro, resides in Madrid, Spain. Mr. Molero-Castro cannot be compelled to attend trial or appear for a deposition in NDCA. However, Mr. Molero-Castro is willing to voluntarily consent to be deposed in this District and to attend trial in this District where he will be able to present live testimony. (Keyhani Decl., ¶ 3). In addition, Mr. Salazar is willing to travel to this District to attend trial and provide testimony. (Keyhani Decl., ¶ 5). HTC argues that employees of Peel, Google and Qualcomm are subject to compulsory process in NDCA while they are not in this District. As stated earlier, no Qualcomm employees have been specifically identified by HTC as residing in NDCA. As to the single Google employee residing in NDCA identified by HTC, no explanation as to the particular relevance of this witness to HTC has been given that would allow

---

[41] Fed. R. Civ. P. 45(c)(1)(A); Fed. R. Civ. P. 45(c)(1)(B).
[42] Fed. R. Civ. P. 45(a)(2); Fed. R. Civ. P.45(c)(1)(A).
[43] *Nexus Display Technologies LLC v. Dell, Inc.*, 2015 WL 5043069, at *4.
[44] *Id.* at *3, citing Fed. R. Civ. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds ... that the witness is more than 100 miles from the place of hearing or trial....").

the Court to evaluate the importance of his testimony. Accordingly, this witness should be accorded very little weight.

HTC argues that certain executives employed by Peel have critical testimony but are subject to compulsory process only in NDCA. (Motion, Pg. 10) To the extent that HTC alleges that some of these witnesses may provide testimony relevant to Peel's source code, HTC has not pointed to reasons or evidence that would show that the Peel source code (which could be obtained from a subpoena issued from this District) in and of itself would not be sufficient for the parties' experts to examine its functionality for the purposes of Salazar's infringement contentions and/or HTC's defenses. Even if HTC were to this is the case, these witnesses would presumably testify regarding highly technical aspects of the Peel source code and its functionalities and this is would be information the parties' experts could review from the witness' depositions given in NDCA. It would not be crucial for the jury to hear evidence of this nature as live testimony at trial.

If this case is transferred to NDCA, the co-inventor – a very important witness – cannot be compelled to appear at trial. If the case is not transferred, only the identified non-party witnesses from Peel and Google (whose materiality is highly questionable at this point) cannot be compelled to attend trial. When it is appreciated that the co-inventor will appear and testify at trial if the case remains in this District along with the other party and non-party witnesses who are willing to attend trial in this District, this factor heavily disfavors transferring this action to NDCA.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive Factor Clearly Weighs Against Transfer

This factor focuses on practical problems that are rationally based on judicial economy.[45] The Court has already expended time and resources in the initial case management phase of this action and a transfer to NDCA will significantly delay the parties in getting back on a schedule for

---

[45]*Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376, 2014 WL 1652603, at *3 (E.D. Tex. Apr. 24, 2014).

12

a Markman hearing and a trial date in NDCA. The Court has already entered a Docket Control Order scheduling a claim construction hearing and setting a jury selection date for this case, as well as a Discovery Order and a Protective Order. Mr. Salazar has already served his P.R. 3-1 & 3-2 Infringement Contentions on HTC and HTC will be serving its P.R. 3-3 & 3-4 Invalidity Contentions on Mr. Salazar in just a few weeks. Conversely, if this case is transferred to NDCA the parties will basically have to start from scratch. Thus, transferring this action to NDCA at this stage will disrupt and effectively stall this litigation, increase costs, and significantly delay the final resolution of this case. Given all the above, Mr. Mr. Salazar believes this factor clearly weighs against transfer – especially in view of HTC's admission that this factor is neutral at best.

### B. The Public Interest Factors Weigh Against Transfer or are Neutral

#### 1. The Administrative Difficulties Flowing from Court Congestion Factor Weighs Heavily Against Transfer

The speed with which this case can come to trial and be resolved is a factor in the transfer analysis.[46] As the statistics cited in HTC's Transfer Motion indicate, the median time to trial for civil cases in NDCA is either slightly longer (2.3 months) or much longer (11.8 months) than the median time to trial for civil cases in this District. Until relatively recently, these statistics might ordinarily indicate that this factor is neutral or only weighs slightly against transfer. However, the United States Supreme Court's decision in *TC Heartland*[47] is now expected to engulf NDCA with patent cases while at the same time significantly reducing the number of patent cases pending in this District. Given that latter consideration, this factor now strongly weighs against transferring this case – which has been pending in this District since October 10, 2016 and now has a firm date

---

[46] *In re Genentech, Inc.*, 566 F.3d at 1347 (citing *Gates Learjet Corp v. Jenson*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("[T]he real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.")).
[47] *TC Heartland LLC v. Kraft Foods Group Brands LLC,* 2017 WL 2216934, 581 U.S. __ (May 22, 2017).

13

for jury selection less than year away[48] – to the soon to be completely congested NDCA where it will likely languish for many years before Mr. Salazar, who is over 80 years of age, will ever get the opportunity to have his day in court. Accordingly, because transfer of this action to NDCA would likely result in a much longer time to trial, this factor weighs heavily against transfer.

### 2. The Local Interest Factor is Neutral

Local interest arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community.[49] In this case, neither NDCA nor this District is home to Mr. Salazar or to HTC. By its own admission, HTC's business operations, headquarters and knowledgeable employees are located in a foreign country. In addition, any U. S. local interest HTC might arguably have would be in Washington State where its subsidiaries are located. In fact, when a company sells allegedly infringing products, or offers allegedly infringing services, nationwide, "no specific locality has a dominant interest in resolving the issue of [patent infringement]."[50] Thus, at best, this factor is neutral.

### 3. The Familiarity of the Forum with the Law and Problems of Conflict of Laws Factors Are Neutral

These two public interest factors are neutral and thus do not weigh in favor of transferring this action to NDCA and HTC does not allege in its Transfer Motion that they do.

## III. CONCLUSION

Mr. Salazar has shown that all of the private and public interest convenience factors are either neutral or weigh against transfer. As such, HTC has failed to carry its burden of demonstrating that NDCA is a clearly more convenient venue than this District and its Motion should be denied in all respects.

---

[48] Per the Docket Control Order (Doc. No. 25) entered in this action, jury selection is set for April 2, 2018.
[49] *Hoffman-La Roche,* 587 F.3d at 1336.
[50] *J2 Global Communs., Inc. v. Protus IP Solutions, Inc.*, 2008 WL 5378010, at *6 (E.D. Tex. Dec. 23, 2008)

Dated: May 31, 2017

        Respectfully submitted,

*/s/ Andy Tindel w/ permission of Lead Attorney*

Dariush Keyhani, Lead Attorney
New Jersey State Bar No. 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
dkeyhani@meredithkeyhani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909
Email: atindel@andytindel.com

*Attorneys for Plaintiff Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 31st day of May, 2017.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

_____

Andy Tindel

15