**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | JURY DEMANDED |
| | § | |
| Defendant. | § | PATENT CASE |

**PLAINTIFF JOE ANDREW SALAZAR'S OPENING CLAIM CONSTRUCTION BRIEF**

**I.    Introduction**

Pursuant to Local Patent Rule 4-5(a) and in accordance with the Court's Fourth Amended Docket Control Order (Doc. No. 82) entered in this action, Plaintiff Joe Andrew Salazar ("Plaintiff" or "Salazar") submits his Opening Claim Construction Brief with respect to United States Patent No. 5,802,467 ("the '467 Patent") attached hereto as Exhibit A.  The parties' P.R. 4-3(b) Joint Claim Construction and Prehearing Statement (Doc. No. 73) and accompanying Exhibit B (Doc. No. 73-2) and Exhibit C (Doc. No. 73-3) filed on August 1, 2017, identifies the below disputed claim terms in the '467 Patent.

**II.    The '467 Patent**

The '467 Patent was issued on September 1, 1998 on an application filed on September 28, 1995.  Plaintiff has asserted at least claims 1-7, 10, 14, 17, 23, 26-32, and 34 of the '467 Patent against Defendant HTC Corporation ("Defendant" or "HTC").

## III.  Claim Construction Legal Standards

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule is that ***each claim term is construed according to its ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent.*** *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, No. 2:14-CV-911-JRG-RSP, 2016 WL 4374961, at *1 (E.D. Tex. Aug. 16, 2016) ("***There is a strong presumption that claim terms carry their plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of the invention***") (emphasis added).

"The claim construction inquiry ... begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). A term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms

can also assist in understanding a term's meaning. *Id.* For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id.* at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic*

3

*Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("When the prosecution history is used solely to support a conclusion of patentee disclaimer, the standard for justifying the conclusion is a high one."); *Core Wireless Licensing S.a.r.l.,* 2016 WL 4374961, at *2.

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). However, expert testimony may aid a court in understanding how a claim term would be construed by a person of ordinary skill in the art at the time of filing. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1375 (Fed. Cir. 2014).

**IV.** **Construction of Disputed Terms**

    **A.** <u>**Plaintiff's Proposed Constructions**</u>

        **1.** **"communications, command, control, and sensing system"**

Plaintiff proposes that the ordinary and customary meaning of this claim term/phrase as understood by one of ordinary skill in the art at the time of the invention in the context of the patent

is: "an interactive microprocessor based wireless communications device that includes sound and data transceivers, signal detection and coupling devices, signal conversion-device, voice recording, playback and storage device, voice activated device, display device, touchscreen or similar device, sensors, frequency generation devices, sound detection and reproduction devices, and power source." *See* '467 Abstract; Figs. 1(a and b) – 5; Col. 1:8-13, 55-61, 2:31-33,47-55, 1:66-2:4, 6:1-20, 6:52-55, 7:14-19, 19:52-56, 22:8-13, 25:14-19. *See also* Declaration of Roy A. Griffin, at ¶ 8 (September 7, 2017) ("Griffin Decl.") attached hereto.

> 2. **"A handset and a base station employed in a communications, command, control and sensing system for communicating with a plurality of external devices"**

Plaintiff asserts that this claim term/phrase should be construed as having its ordinary and customary meaning. The plain language of the specification of the '467 Patent provides specific unequivocal definition of the handset and base station that would assist with the understanding of the patentee's invention. The specification teaches that the handset and the base station have similar components and function in substantially the same manner. *See* Col. 2:66-3:14. *See also*, Griffin Decl. at ¶ 9. The base station *may* have additional features, for example: it couples a frequency modulated signal to alternating current (AC) power line; it may be powered by an alternative alternating current (AC) signal and battery power sources; it may provide battery charging for the handset, and it may be coupled to public or private telephone lines. *Id*. *See also*, Griffin Decl. at ¶ 9.

In contrast, the intrinsic record militates against Defendant's proposed construction. Indeed, with respect to the construction of the term "base station" the specification of the '467 Patent expressly contradicts Defendant's proposed construction. Defendant's proposed construction mandates that the base station be powered by an alternating current source and a

5

backup battery pack[1] while the specification explicitly states that the base station ***may***, but is not required to, be powered by an alternative alternating current (AC) signal and battery power sources. *See* Col. 3:4-13, 22:35-45. Accordingly, the ordinary and customary meaning of this claim term/phrase as understood by one of ordinary skill in the art at the time of the invention in the context of the patent is:

> the handset and the base station have similar components and function in substantially the same manner. The base station may have additional features, for example: it couples a frequency modulated signal to alternating current (AC) power line; it may be powered by an alternative alternating current (AC) signal and battery power sources; it may provide battery charging for the handset, and it may be coupled to public or private telephone lines.

### B. Claim Terms/Phrases Defendant Asserts are Indefinite

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, ––– U.S. –––, 134 S.Ct. 2120, 2124, 189 L.Ed.2d 37 (2014). A party seeking to have a claim declared "indefinite" must present clear and convincing evidence. *Tech. Licensing Corp. v. Videotek, Inc.,* 545 F.3d 1316, 1338 (Fed. Cir. 2008). "The burden of proving indefiniteness... remains at all times on the party challenging the validity of the patent." *Dow Chem. Co. v. Nova Chem. Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

Under controlling precedent, extrinsic evidence may play a significant role in the indefiniteness analysis, as definiteness is evaluated from the perspective of a person of skill and

---

[1] Defendant's proposed construction for "base station" is: "A device separate from a handheld device that transmits signals to and receives signals from a handheld device and that is powered by an alternating current source and a backup battery pack."

requires a determination of whether such a skilled person would understand the scope of the claim when its read in light of the specification. *Nautilus,* 134 S.Ct. at 2128; *Dow Chem.*, 809 F.3d at 1225; *Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT, 2014 WL 2873902, at *5, *16, *27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).

> **1.** **"said microprocessor creating a plurality of reprogrammable communication protocols ... wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" and "said microprocessor creating a plurality of communication protocols...wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices"**

One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning of "said microprocessor creating a plurality of reprogrammable communication protocols ... wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" and "said microprocessor creating a plurality of communication protocols...wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent.[2] Col. 7:34-8:5, 8:22-30, 8:31-57, 10:22-33. *See also* Griffin Decl. at ¶ 10.

---

[2] Although Defendant references *IPXL Holdings v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) in its claim chart as the basis for invalidating as indefinite claims of the '467 Patent that include this term/phrase, no analysis or explanation is provided. The holding and facts in *IPXL Holdings* are not applicable to the claims of the '467 Patent.

7

> **2.** **"a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" and "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set"**

A claim term that does not use the term "means" will trigger the rebuttable presumption that section 112 (f) does not apply. *Apex Inc. v. Raritan Comp., Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003); *Intelligent Water Sols., LLC v. Kohler Co.,* No. 2:16-CV-689, 2017 WL 2444723, at *4 (E.D. Tex. June 5, 2017); *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 216CV00057JRGRSP, 2017 WL 2691227, at *25 (E.D. Tex. June 22, 2017). The presumption against the application of section 112 (f) is only overcome if a party can demonstrate a person of ordinary skill in the art would fail to understand the necessary structure of the claim term, when read in light of the specification. *Huawei Techs.*, 2017 WL 2691227, at *25; *Umbanet, Inc. v. Epsilon Data Mgmt., LLC*, No. 2:16-CV-00682-JRG, 2017 WL 3508771, at *6 (E.D. Tex. Aug. 16, 2017) (explaining that a disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim").

Here, one with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of the claim terms/phrases "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" and "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a

desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent. Col. 7:55 - 8:65, Col. 16:59 – Col. 17:36. *See also* Griffin Decl. at ¶ 11.

Defendant's assertion that these claim terms/phrases require construction under section 112(f) lacks merit. As these claim phrases do not use the word "means," there is a rebuttable presumption that section 112(f) does not apply. *Barkan Wireless Access Techs., L.P. v. Cellco P'ship*, No. 2:16-CV-293-JRG-RSP, 2017 WL 2099565, at *16 (E.D. Tex. May 14, 2017).

> **3.** **"a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals"**

One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent. *See* Fig 1b; Fig. 3; Fig 5; 20:2-5; 20:11-16; 20:41-50; 20:57-63; 21:9-14; 21:33-42; 22:63-66; 23:23-39; 23:51-56; 23:66-24:6; 24:20-29; '467 claims 2, 10, 17, 19, 20, and 21. *See also* Griffin Decl. at ¶ 12.

Defendant's assertion that this claim term/phrase is indefinite lacks merit. Because the claim phrase at issue does not use the word "means," there is a presumption that section 112(f) does not apply. Accordingly, the claim term/phrase is sufficiently definite.

### 4. "a data detector coupled to said selector for receiving signals transmitted from each one of said external devices, said data detector providing control signals received from said external devices to said microprocessor"

One with ordinary skill in the art at the time of the invention would be informed of and understand the meaning, scope, and necessary structure of "a data detector coupled to said selector for receiving signals transmitted from each one of said external devices, said data detector providing control signals received from said external devices to said microprocessor" with reasonable certainty in light of the language of the claims, specification, and prosecution history of the '467 Patent. *See* Fig 3; Fig 5; 4:2-11; 20:41-50; 23:30-36; '467 claims 10 and 21. *See also* Griffin Decl. at ¶ 13.

### C. Claim Terms/Phrases Defendant Proposes Constructions for or presents in the Alternative to Terms it Proposes are Indefinite

Defendant presents a litany of terms and phrases of the '467 Patent claims it proposes constructions for or presents in the alternative to its indefiniteness arguments addressed above. *See* P.R. 4-3(b) Joint Claim Construction and Prehearing Statement Exhibit C (Doc. No. 73-3). Plaintiff asserts that no construction is necessary and one with ordinary skill in the art would understand the ordinary and customary meaning of these terms and phrases at the time of the invention when read in the context of the claims, specification, and prosecution history of the '467 Patent. *See* Griffin Decl. at ¶¶ 14-26.

To the extent HTC's proposed constructions reference the '467 Patent's specification, HTC's references do not support its proposed constructions, are inconsistent with the disclosures in the specifications, and improperly attempt to narrow the scope of the claims by adding

10

limitations that do not exist in the prosecution history or specification of the '467 Patent. Furthermore, Defendant's proposed constructions change the nature of the claims from capability claims to claims that require functions to be performed in a specific manner. Defendant's attempt to deviate from the ordinary and customary meaning of these terms and phrases falls short of the presumption laid out by the Federal Circuit. *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary and the ordinary and customary meaning of these claim terms/phrases should be applied.

## V. Conclusion

For all of the reasons given above, the Court is respectfully requested to construe the disputed claim terms as discussed herein, as requested by Plaintiff.

Dated: September 7, 2017

Respectfully submitted,

*/Andy Imild w/ permission of Lead Attorney/*

DARIUSH KEYHANI, Lead Attorney
NJ SBN 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 380-1325 Direct Line
(212) 202-3819 Facsimile
Email: dkeyhani@meredithkeyani.com

                ANDY TINDEL
                Texas State Bar No. 20054500
                MT² LAW GROUP
                MANN | TINDEL | THOMPSON
                112 East Line Street, Suite 304
                Tyler, Texas 75702
                Telephone: (903) 596-0900
                Facsimile: (903) 596-0909
                Email: atindel@andytindel.com

*Attorneys for Plaintiff Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of September 2017, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Andy Tindel*

Andy Tindel