IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| HTC CORPORATION, | § § | |
| Defendant. | § § | |

**DECLARATION OF ROY A. GRIFFIN III, P.E. IN SUPPORT OF PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

**I.  INTRODUCTION**

**A.  Background and Experience**

(1)  I reside at 668 Nenna Ct., El Paso, TX. I have been retained by the law firm of Meredith & Keyhani, PLLC in connection with its representation of the Joe Andrew Salazar ("Plaintiff" or "Salazar"), as an expert witness in connection with the above-identified civil action, in the fields of electrical engineering, product and system design, software engineering, software analysis, and security engineering and the subject of matter of the inventions disclosed and claimed in United States patent No. 5,802,467 ("the '467 Patent"). I make this declaration in connection with Salazar's opening claim construction brief. My qualifications as an expert are set forth in detail in the attached curriculum vitae (**Ex. 1**), but may be summarized as follows:

(2)  I received a B.S. degree in Electrical Engineering with the computer engineering option in 1981 from the University of Texas at El Paso. I am a Texas Registered Professional Engineer.

(3)     I have over 30 years of industry experience in electrical engineering, product and system design, software program development, microprocessor based program development, and patent analysis. I am familiar with software and protocols used in communications having designed and analyzed many products that employ or utilize software in their implementation of communications protocols.

(4)     Over the course of more than 20 years, I have been retained by both plaintiffs and defendants in intellectual property cases and have provided expert testimony in the form of declarations, expert reports, and expert testimony in well over a dozen patent infringement cases. I have been deposed as an expert in IP cases dozens of times, and I have testified as an expert witness in 3 jury trials. I have also testified before the ITC. My consulting and/or testifying expert services have often involved systems that incorporate software, such as cellular telephones, digital set-top boxes, and distributed processing systems such as those found in cable TV and satellite TV systems.

(5)     I am the co-inventor of five U.S. Patents, including several data processing and software related patents including U.S. Patent No. 5,151,938, "Security enhancement in a data processor through use of dynamic parameter authentication," issued September 29, 1992; U.S. Patent No. 5,249,294, "Determination of time of execution of predetermined data processing routing in relation to occurrence of prior externally observable event," issued September 28, 1993.

B.     **Scope of Investigation**

(6)     I was retained to review '467 Patent's specifications, claims, and prosecution history and to provide my opinions as to how one of ordinary skill in the art at the time of the invention would have understood the claim terms/phrases identified in Salazar and HTC's

2

Proposed Constructions of Disputed Terms, as identified in Exhibits B and C to the parties' Joint Claim Construction and Prehearing Statement.

### C. Person of Ordinary Skill in the Art

(7) In view of my personal and professional experience and expertise, in my opinion, a person of ordinary skill in the art relevant to the asserted patent as of the priority date of the patent would have the equivalent of a four-year degree from an accredited institution (usually denoted as a B.S. degree) in electrical engineering or the equivalent, and approximately 2 years of professional experience. Additional graduate education could substitute for professional experience, while significant experience in the field might substitute for formal education.

## II. OPINIONS

(8) Based on my review of the specifications, claims, and prosecution history of the '467 Patent, a person with ordinary skill in the art would have understood the term "communications, command, control, and sensing system" at the time the '467 Patent was filed, to mean "an interactive microprocessor based wireless communications device that includes sound and data transceivers, signal detection and coupling devices, signal conversion- device, voice recording, playback and storage device, voice activated device, display device, touchscreen or similar device, sensors, frequency generation devices, sound detection and reproduction devices, and power source."

(9) Based on my review of the specifications, claims, and prosecution history of the '467 Patent, a person with ordinary skill in the art would have understood the term "handset and a base station" at the time the '467 Patent was filed, to mean "the handset and the base station have similar components and function in substantially the same manner. The base station may have additional features, for example: it couples a frequency modulated signal to alternating

3

current (AC) power line; it may be powered by an alternative alternating current (AC) signal and battery power sources; it may provide battery charging for the handset, and it may be coupled to public or private telephone lines."

(10)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, in my opinion one of ordinary skill in the art would be informed of and understand the meaning and scope of "said microprocessor creating a plurality of reprogrammable communication protocols ... wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" and "said microprocessor creating a plurality of communication protocols...wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" at the time of the patent application with reasonable certainty.

(11)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, in my opinion one of ordinary skill in the art would be informed of and understand the meaning, scope, and necessary structure of the claim term/phrase "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" and "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set" at the time of the patent application with reasonable certainty.

(12)   Based on my review of the '467 Patent, including the specification, claims, and

4

prosecution history, in my opinion one of ordinary skill in the art would be informed of and understand the meaning, scope, and necessary structure of the claim term/phrase "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals" at the time of the patent application with reasonable certainty.

(13)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, in my opinion one of ordinary skill in the art would be informed of and understand meaning, scope, and necessary structure of the claim term/phrase "a data detector coupled to said selector for receiving signals transmitted from each one of said external devices, said data detector providing control signals received from said external devices to said microprocessor" at the time of the patent application with reasonable certainty.

(14)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "command code set that defines the signals that are employed to communicate with each one of said external devices" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(15)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "communication protocols" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(16)   Based on my review of the '467 Patent, including the specification, claims, and

5

prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "parameter sets" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(17)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "a microprocessor for generating a plurality of control signals used to operate said system" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(18)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "said microprocessor creating a plurality of reprogrammable communication protocols ... wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(19)   Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "said microprocessor creating a plurality of communication protocols...wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(20)   Based on my review of the '467 Patent, including the specification, claims, and

prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(21)  Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(22)  Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(23)  Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the

ordinary and customary meaning of "a data detector coupled to said selector for receiving signals transmitted from each one of said external devices, said data detector providing control signals received from said external devices to said microprocessor" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(24) Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "backup battery power source" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(25) Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "a plurality of home entertainment systems" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

(26) Based on my review of the '467 Patent, including the specification, claims, and prosecution history, it is my opinion that one of ordinary skill in the art would understand the ordinary and customary meaning of "external devices" at the time the '467 Patent was filed and no additional definitions or constructions of this term would be necessary.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this September 7, 2017.

Roy A. Griffin III, P.E.