**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | JURY DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF JOE ANDREW SALAZAR'S REPLY TO DEFENDANT HTC
CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

TABLE OF CONTENTS

Page

I. TERMS IN DISPUTE ................................................................................................................ 1
    1. "base station" ........................................................................................................................ 1
    2. Defendant's proposed "microprocessor" limitations ............................................................ 3
        a. Defendant mischaracterizes the prosecution history ................................................ 3
        b. *IPXL Holdings* is not applicable because the claims only
           indicate a capability of the structure rather than actual use ..................................... 4
    3. Defendant's proposed "memory device limitations" ........................................................... 6
        a. Section 112(f) does not apply .................................................................................. 6
        b. Defendant's proposed construction in the alternative
           should be rejected .................................................................................................... 7
    4. "selector" ............................................................................................................................. 8
    5. "data detector" .................................................................................................................. 10
    6. "command code set" ......................................................................................................... 10
    7. "communications protocols" ............................................................................................ 11
    8. "parameter sets" ................................................................................................................ 12
    9. "backup battery power source" ........................................................................................ 12
    10. "a plurality of home entertainment systems" ................................................................. 12
    11. "external device" ............................................................................................................ 13

II. CONCLUSION ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp.3d 598 (E.D. Tex. 2017) ............................. 4, 8, 9

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) ..................................... 1

*Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244 (Fed. Cir. 2008) ............................. 6

*Hand Held Prods., Inc. v. Amazon.com, Inc.*, No. CV 12-768, 2014 WL 2873902 (D. Del. June 24, 2014) ................................................................................................................................. 8

*Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00057, 2017 WL 2691227 (E.D. Tex. June 22, 2017) ....................................................................................................................... 6

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) ........................... 4, 5

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) ......................................... 10

*LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316 (Fed. Cir. 2016) ................................................ 5

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) ..................... 9

*Masco Corp. v. United States*, 303 F.3d 1316 (Fed. Cir. 2002) .................................................... 6

*Microprocessor Enhancement Corp. v. Tex. Instruments Inc.,* 520 F.3d 1367 (Fed. Cir. 2008) ................................................................................................................................... 5, 7

*Microsoft Corp. v. Multi–Tech Sys., Inc.,* 357 F.3d 1340 (Fed. Cir. 2004) ................................... 3

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) ................................................................ 1

*Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123 (Fed. Cir. 2006) ............................ 4, 8

*Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005) ......................................... 2

*Smartflash LLC v. Apple Inc.,* 77 F. Supp.3d 535 (E.D. Tex. 2014) ............................................. 9

*Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376 (Fed. Cir. 2011) ................................ 7, 8

*UltimatePointer, LLC. v. Nintendo Co.*, 816 F.3d 816 (Fed. Cir. 2016) ....................................... 5

*VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp.2d 414 (S.D.N.Y. 2008) ............... 8

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) .............................................. 6

In its responsive claim construction brief, Defendant HTC Corporation attempts to depart from the ordinary meaning of the claim terms and rewrite the claims by importing limitations from embodiments in the specification and arbitrarily adding claim limitations in an effort to narrow the scope of the claims and/or convert claims from capability claims[1] to claims that require "use" limitations. Defendant's § 112 and prosecution history estoppel arguments are misplaced and Defendant provides no testimony of one skilled in the art to support its propositions. As detailed below, the intrinsic record does not support Defendant's propositions and the Court should not depart from the ordinary meaning of the claim terms.

**I.    TERMS IN DISPUTE**

    **1.    "base station"**

Realizing its original proposed construction was indefensible, Defendant, in its responsive claim construction brief, makes a second attempt to redefine "base station."[2] Defendant's new construction is similarly untenable as it is inconsistent with the doctrine of claim differentiation, attempts to import limitations from the specification based on particular embodiments, and is inconsistent with the claims of the '467 Patent when read in light of the specification.

Defendant's argument that the base station comes with structures that allow users to employ additional functions is without merit and inconsistent with the doctrine of claim differentiation. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (explaining

---

[1] *See, e.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) ("we have held that, to infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode").

[2] Defendant in its P.R. 4-2 and 4-3 disclosures proposed "a device separate from a handheld device that transmits signals to and receives signals from a handheld device and that is powered by an alternating current source and a backup battery pack."

that when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation); *Seachange Int'l, Inc. v. C–COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (doctrine of claim differentiation). In particular, Defendant's reliance on dependent claim 12 for the proposition that a base station must come with "a telephone line interface" would render claim 12 meaningless. Claim 12, which depends from claim 10, states that "The communication, command, control, and sensing system of claim 10 wherein said base station is coupled to at least one telephone line *via a telephone line interface*." Claim 10 is completely devoid of any reference to a telephone line interface, and the only meaningful difference between these claims is the telephone line interface limitation. Thus, Defendant's proposed construction should be rejected because it would render the additional element of claim 12 superfluous.

The figures of the '467 Patent also contradict Defendant's proposed construction. For example, Figures 3 and 5, among other components, include a sensor, alternating current line, and backup battery power source. Defendant's proposed construction violates the doctrine of claim differentiation and would also render superfluous claims 13 (where the base station is adapted to couple frequency modulated signals to an alternating current power line) and claim 14 (where the base station *further comprises* a backup battery power source).

Defendant's attempt to impose limitations on the base station to differentiate the base station from the handset is directly contradicted by the claims and specification of the '467 Patent. The specification teaches that "It is another object of the invention to provide a means for loading the microprocessor external memory *of the handset or base station* with updated or accessory programs and/or data bases. *The loading can be accomplished via a telephone line, a telephone base unit transceiver, a personal computer...*" *See* Col. 2:47-55. The '467 Patent

2

contemplates that microprocessor external memory can be loaded from either the handset or the base station. The patent does not discriminate between the components and functionality of the handset or base station.

Plaintiff's reference to the language of the Summary of the Invention in its opening brief is highly relevant. *See Microsoft Corp. v. Multi–Tech Sys., Inc.,* 357 F.3d 1340, 1348 (Fed. Cir. 2004). Here, the Summary of the Invention describes a base station and handset as having "similar components and function[ing] in substantially the same manner." Nowhere in the Summary of the Invention is there any reference to any other components that make up a handset or base station, and in particular, there is no reference to a telephone line interface. Accordingly, the Court should reject Defendant's proposed construction that departs from the ordinary meaning of the claim term.

### 2. Defendant's proposed "microprocessor" limitations

#### a. Defendant mischaracterizes the prosecution history

In attempting to narrow the claims of the '467 Patent from "capability" claims to claims with "use" limitations, Defendant mischaracterizes the prosecution history, specification, and language of the claims. Defendant's argument is based on the false premise that because Krisbergh did not teach or disclose a communication system that includes a microprocessor that "creates a plurality of reprogrammable communication protocols," then the scope of the claims of the '467 Patent must be limited to teach or disclose a communication system that includes a microprocessor that creates a plurality of reprogrammable communication protocols. Defendant's argument relies on one sentence of the prosecution history taken out of context. This argument is directly contradicted by unequivocal statements made by both the patentee and the Patent Examiner in its Notice of Allowability that explicitly state that the claims of the '467

3

Patent are capability claims and there is no use limitation, as Defendant asserts.

Krisbergh, unlike the '467 Patent, does not disclose capability claims. *See* Dkt. No. 91, Exhibit D (Patentee's Nov. 3, 1997 Response to Office Action Dated May 1, 1997) at p. 9-10 [hereinafter "Patentee's Response to Office Action"]; Declaration of Frances H. Stephenson, Exhibit G, p.3 (Sept. 26, 2017). In the Notice of Allowability for the application that resulted in the '467 Patent, the Examiner confirmed, as the patentee argued, "the additional capability to recreate an external devices command code set from a set of parameters for the external device and thus, reduce the required memory space to store command code sets to that of the parameter set alone **has not been observed in the prior art**" (emphasis in original). There is no support in the intrinsic evidence for narrowing the '467 Patent's claims given the clear and unequivocal statements made by the patentee and the Examiner to the contrary.[3] The Court should reject Defendant's argument to change the claim language and add additional limitations, including that the microprocessor be "configured to create a plurality of control signals" (instead of "for generating a plurality of control signals") and "to create all of the command code sets for [reprogrammable] communication protocols for each of the plurality of external devices with which the system is intended to communicate."

      b.  ***IPXL Holdings* is not applicable because the claims only indicate a capability of the structure rather than actual use**

Defendant's argument with respect to *IPXL Holdings* is also without merit. In *IPXL Holdings*, the Federal Circuit held that a claim is invalid under § 112 if it claims both an apparatus and use of the apparatus ***by a user*** because "it is unclear whether infringement ... occurs when one creates a[n infringing] system, ***or whether infringement occurs when the user***

---

[3] Disavowal through prosecution history must be clear, unmistakable, and unambiguous. *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp.3d 598, 602-03 (E.D. Tex. 2017).

*actually uses* [the system in an infringing manner]." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005) (emphasis added). *IPXL Holdings* has repeatedly been distinguished from cases where an apparatus possesses the recited structure and capability of performing the recited functions. *See Microprocessor Enhancement Corp. v. Tex. Instruments Inc.,* 520 F.3d 1367, 1375 (Fed. Cir. 2008) (holding that the claim was not indefinite because the limitation only indicated a capability of the structure rather than actual use); *UltimatePointer, LLC. v. Nintendo Co.*, 816 F.3d 816, 826 (Fed. Cir. 2016); *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1326-27 (Fed. Cir. 2016) (finding claims not indefinite where they did not mix an apparatus with a method of using that apparatus).

Here, the language of the claims at issue relating to the microprocessor (a structure) recite the capability of the microprocessor for performing the recited functions. In particular, the claims and specification of the '467 Patent make clear that the microprocessor[4] has the capability to create plurality of reprogrammable communication protocols and recreate a desired command code set. *See* '467 Patents claim 1, 10, and 34; Exhibit D p. 10-11. Unlike in *IPXL Holdings*, in the claims of the '467 Patent there is no *user* activity recited. Furthermore, the timing of the creating/recreating of the command code set has no bearing on this issue of notice of infringement because a person of ordinary skill in the art at the time of the invention would understand that infringement occurs upon creation of the system that is capable of performing the creating/recreating of the command code set, and when that happens is immaterial.[5]

Accordingly, the claim terms provide reasonable notice about when infringement occurs

---

[4] As discussed in the following section, Defendant's assertion that the memory device recreates command code sets is false.

[5] HTC has provided no support for the proposition that the timing of when the element is performed by the system impacts the *IPXL Holdings* or § 112 analysis.

5

and who might be an infringer. Defendant's argument that the claims of the '467 Patent are indefinite and invalid should be rejected.

### 3. Defendant's proposed "memory device" limitations

#### a. Section 112(f) does not apply

Defendant's argument that § 112(f) applies to these claim terms/phrases must be rejected. There is a rebuttable presumption that § 112(f) does not apply in the absence of the claim language "means" or "step for." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015); *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002). The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function. *Huawei Techs. Co. v. T-Mobile US, Inc.*, No. 2:16-CV-00057, 2017 WL 2691227, at *7 (E.D. Tex. June 22, 2017).[6]

As addressed in Plaintiff's opening brief, the claims of the '467 Patent do not include the language "means" or "step for," therefore § 112(f) is not applicable. Nevertheless, Defendant argues that the "memory device limitations" should be construed under § 112(f) because "each term recites 'function without reciting sufficient structure for performing that function.'" In making its argument, Defendant misleads the Court with a reading of the claim language that is simply not supported by the claim language or the specification of the '467 Patent. It is clear from the language of the claims and Defendant's own later proposed construction,[7] that the

---

[6] *See Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (overcoming the presumption of patent validity "demands clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim"). It should be noted that Defendant has provided no evidence of the opinion of one of ordinary skill in the art with respect to the interpretation of this term or any term in the '467 Patent.

[7] Defendant's proposed construction is that "parameter sets" should be construed as "a set of predefined encoded data stored in the memory device that the microprocessor retrieves and uses

functionality Defendant attributes to the memory device is attributed to the microprocessor. A microprocessor, and not a memory device, is capable of performing the "recreate" function. Defendant provides no support for its unreasonable reading of the claim language and provides no evidence that a person of ordinary skill in the art would interpret the claim language in such a manner.

Arguendo, even if there were any confusion about the language of the claim, the specification explicitly explains what a memory device does and gives specific examples of memory device structure. The specification teaches that "a memory device, such as a RAM, ROM, EPROM, or EEPROM . . . is configured to store a finite set of parameters…" Col. 8:22-27. Reading the claims in light of the specification, a person of ordinary skill in the art would understand that ROM or RAM store data and are not capable of recreating command code sets. The specification also defines a microprocessor and what a microprocessor does in great detail and describes the microprocessor numerous times as the structure capable of creating and recreating command code. *See* Col. 7:30-17:28. Defendant's argument is wholly unreasonable and contradicts the plain language of the claims and a universal understanding of the capabilities of a microprocessor and a memory device by one of ordinary skill in the art. Accordingly, Defendant has failed to rebut the presumption that § 112(f) does not apply, and the Court should reject Defendant's argument.

### b. Defendant's proposed construction in the alternative should be rejected

Defendant proposed construction for this claim term/phrase is incomprehensible and Defendant provides no reasonable basis to rewrite the claim language at issue. In *Typhoon*, the

---

to recreate a command code set." It is clear from this construction that Defendant understands that this functionality is attributable to a microprocessor, not the memory device.

7

Federal Circuit made clear that apparatus claims may appropriately use functional language if the apparatus as provided is "capable" of performing the recited function without later needing to be modified to perform that function. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380 (Fed. Cir. 2011); *Microprocessor Enhancement Corp.*, 520 F.3d at 1375.

To the extent Defendant attempts to rely on *Typhoon* to depart from the ordinary meaning of the claim language, Defendant's arguments should be rejected.[8] *Typhoon* is inapposite to the case at hand because it involved the function of "memory for storing" in the abstract (requiring an association with recited structure in the specification) and not the structure of a specifically defined memory device that is already capable of performing the recited function,[9] as in the '467 Patent. In *Typhoon*, the court found that the specification required that the memory element at issue actually "stores a data collection application." *Id.* at 1381. With respect to the claims of the '467 Patent, there has been no clear, unmistakable, and unambiguous disavowal justifying the departure from the ordinary meaning of the term "memory device." *See Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006); *Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp.3d 598, 602-03 (E.D. Tex. 2015).

Defendant provides no support or reasoning as to why removing the phrase "coupled to microprocessor" would provide the jury with clarity. Further, since the phrase "coupled to a microprocessor" is included in Defendant's proposed construction with respect to claim 34,

---

[8] Defendant also references, in a conclusory manner, *Typhoon* in its arguments relating to its proposed constructions of selector and data detector.

[9] If Defendant is attempting to again argue that the memory device can perform the "recreate" function rather than storing data, as discussed in the previous section, Defendant has not provided any evidence of a person of ordinary skill in the art that supports such a reading. *See Hand Held Prods., Inc. v. Amazon.com, Inc.*, No. 12-768, 2014 WL 2873902, at *5, *16, *27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp.2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite).

Defendant's decision to omit it in its proposed constructions relating to claims 1 and 10 underscores the fact that its constructions are arbitrary and without purpose. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

### 4. "selector"

The claim language makes clear that a selector is a structure that is capable of performing the recited function without modification to perform the function. *See, e.g.*, Claims 2 and 10 ("a selector controlled by said microprocessor *for enabling* said radio frequency transceiver and said infra-red frequency receiver, to transmit a desired command code . . ." (emphasis added)); *see also* Fig. 3; Fig. 5; *Smartflash LLC v. Apple Inc.,* 77 F. Supp.3d 535, 540 (E.D. Tex. 2014) (explaining that even if a term covers a broad class of structures and identifies structures by their function, it is sufficient to avoid means-plus-function treatment); *see also Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1360 (Fed. Cir. 2004).

Defendant's proposed construction attempts to rewrite this claim term to require use by a user and add limitations without any analysis or support. Defendant's argument that this claim term should be narrowed based on statements taken out of context made by the patentee during prosecution of the '467 Patent is without merit. In Patentee's Response to Office Action, the examples of what Krisbergh does not teach cited by Defendant is prefaced by the statement that "[t]he references cited by the Examiner either alone or in combination do not even discuss the problems solved by the present invention, nor do they, disclose or teach the figures of the present invention as claimed." Dkt. No. 91, Exhibit D at p. 12. The patentee further states that "none of the references disclose a selector that allows the transmission and reception of the same signals via either radio frequency (RF) range or infra-red frequency (IR) range as desired. Krisbergh's system does not even includes an IR transceiver." *Id.* at 12-13. As Krisbergh does not have an

9

IR transceiver, Krisbergh cannot be used as a basis to narrow selector as Defendant suggests. Nothing in the prosecution history rises to the level of clear, unmistakable, and unambiguous disavowal that would be required to rewrite the claim as Defendant proposes. *See Biosonix,* 230 F. Supp.3d at 614.

Without any support or analysis, Defendant arbitrarily adds the limitation that "a device...receives signals from external devices via *both* radio frequency and infra-red." This is directly contradicted by the claim language that states "via *either* radio frequency signals and infra-red signals." As noted with respect to the memory device, the specification of the '467 Patent provides no clear, unmistakable, and unambiguous disavowal justifying adding limitations to the claims, as proposed by Defendant. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

### 5. "data detector"

The claim language makes clear that a data detector is a structure that is capable of performing the recited function without modification to perform the function. *See, e.g.*, Claim 10 ("a data detector coupled to said selector *for receiving* signals transmitted from each one of said external devices . . ." (emphasis added)); *see also* Fig. 3; Fig. 5.

Without any support or analysis, Defendant arbitrarily rewrites this claim term, departing from its ordinary meaning, by inserting the language "through the selector." As with respect to the other terms, the specification of the '467 Patent provides no clear, unmistakable, and unambiguous disavowal justifying adding limitations to the claims, as proposed by Defendant. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

### 6. "command code set"

Defendant's proposed construction attempts to import limitations from a particular embodiment of the '467 Patent into the claims and should be rejected. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004) ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").

Defendant's proposed construction also arbitrarily inserts language into this claim term based on attorney argument. In particular, Defendant adds the limitation of "a set of signals that constitute the *universe of signals*." There is nothing in the '467 Patent claims, specification, or the prosecution history that teaches this limitation. As with respect to the other terms, the specification of the '467 Patent provides no clear, unmistakable, and unambiguous disavowal justifying adding limitations to the claims, as proposed by Defendant. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of the term.

### 7. "communications protocols"

Defendant's proposed construction improperly adds limitations to the claims of the '467 Patent based solely on attorney argument and should therefore be rejected. Defendant's proposed construction also misrepresents what the intrinsic evidence states. The intrinsic evidence cited by Defendant states that "One embodiment of handset 10, in accordance with the present invention, is configured to communicate with various devices such as TV sets, VCR sets, CD players, and Cable boxes..." *See* Col. 7:34-37.

Defendant also arbitrarily inserts language into this claim term based on attorney argument. Defendant's addition of "two or more devices" and "to produce an action" is not supported by the claims or specification of the '467 Patent and would not help a jury understand

11

this claim term. Further, Defendant's construction is misleading and suggests that the communication protocols provide a set of rules for TV sets and/or VCR sets or other such external devices to communicate with each other. Again, as with the other terms, the specification of the '467 Patent provides no clear, unmistakable, and unambiguous disavowal justifying adding limitations to the claims, as proposed by Defendant. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of the term.

### 8. "parameter sets"

Defendant's proposed construction of parameter sets improperly imports limitations from the specification and should be rejected. Defendant's purported intrinsic evidence does not support its construction. The '467 Patent does not teach the "predefined encoded data" limitation in Defendant's cited references to the specification or anywhere else. Again, as with the other terms, the specification of the '467 Patent provides no clear, unmistakable, and unambiguous disavowal justifying adding limitations to the claims, as proposed by Defendant. Accordingly, the Court should reject Defendant's attempt to depart from the ordinary meaning of the term.

### 9. "backup battery power source"

As discussed before in connection with the term "base station," Defendant's proposed construction attempts to improperly limit a backup battery power source to a base station that would render the claim language of claim 14 superfluous. Claim 14 depends from claim 10 and already states "said *base station* further comprises a backup battery power source." Again, Defendant has not shown any clear, unmistakable, and unambiguous disavowal of the scope of this term. The Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

### 10. "a plurality of home entertainment systems"

Again, Defendant's proposed construction inserts additional language into this claim phrase that would render the language of claim 26 superfluous. Defendant's proposed construction adds limitations that are already part of claim 10, the independent claim that claim 26 depends from. Again, Defendant has not shown any clear, unmistakable, and unambiguous disavowal of the scope of this term. The Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

### 11. "external device"

Defendant's proposed construction should be rejected. Defendant attempts to import a limitation from an embodiment that does not involve or reference an "external device" but rather an "external appliance and/or apparatus." Again, Defendant has not shown any clear, unmistakable, and unambiguous disavowal of the scope of this term. The Court should reject Defendant's attempt to depart from the ordinary meaning of this term.

## II. CONCLUSION

For all of the reasons given above, the Court is respectfully requested to construe the disputed claim terms as discussed herein, as requested by Plaintiff.

Dated: September 26, 2017  Respectfully submitted,

DARIUSH KEYHANI, Lead Attorney
NJ SBN 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 380-1325 Direct Line
(212) 202-3819 Facsimile
Email: dkeyhani@meredithkeyani.com

13

>ANDY TINDEL
>Texas State Bar No. 20054500
>MT² LAW GROUP
>MANN | TINDEL | THOMPSON
>112 East Line Street, Suite 304
>Tyler, Texas 75702
>Telephone: (903) 596-0900
>Facsimile: (903) 596-0909
>Email: atindel@andytindel.com
>
>*Attorneys for Plaintiff Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 26th day of September 2017, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by, electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Andy Tindel*

Andy Tindel