IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § § | |
| Plaintiff, | § § | |
| v. | § § | No. 2:16-CV-01096-JRG-RSP |
| HTC CORPORATION, | § § § | |
| Defendants. | § | |

**ORDER**

In this patent case, the Court will now consider Defendant's Motion to Transfer Venue to the Northern District of California [Dkt. # 35]. The Court concludes that district is not a clearly more convenient forum than this District and will therefore deny the motion.

**I. BACKGROUND**

**A. The Technology**

Plaintiff Joe Salazar accuses HTC Corporation of infringing U.S. Patent 5,802,467 by making and selling smartphones. More specifically, Salazar alleges three HTC smartphone models—the One M7, One M8, and One M9—embody the asserted claims of the '467 Patent. First Am. Compl. [Dkt. # 17] ¶ 13.

The '467 Patent, which is now expired, relates to a system for two-way communication with appliances, such as intercoms, televisions, sound systems, and the like. *See, e.g.*, '467 Patent fig.1b. According to the patent, prior-art devices communicated with such

appliances only using one-way communication, and usually with only one of an infrared (IR) signal or a radio frequency (RF) signal. *Id.* at 1:18–50. Relative to the prior art, the '467 Patent considered full two-way communication directly with an appliance using IR or RF links to be significantly advantageous. *Id.* at 1:51–2:11.

### B. The Accused Instrumentalities

Salazar's Preliminary Infringement Contentions chart the One M7, One M8, and One M9 together. *See, e.g.*, [Dkt. # 35-9] at 1. In addition to the physical components of the smartphones, the contentions call out a "universal remote control" application allegedly included as a stock application. *Id.* at 3. For example, the contentions note that, "[u]sing the Sense TV [universal remote control] application, the HTC phone employs the phone's user interface to direct the phone to retrieve parameter sets corresponding to a particular television model and TV function (for example parameter sets corresponding to volume command code sets including volume up, volume down and mute command codes for a particular Sharp TV model)." *Id.* at 8. While the contentions also reference Microsoft and Google operating systems, it is the remote control application that is at the heart of Salazar's contentions.

### C. The Parties

#### 1. Joe Andrew Salazar

Plaintiff Joe Salazar is a named co-inventor on the '467 Patent. Salazar lives in Lompoc, California. First Am. Compl. [Dkt. # 17] ¶ 2. Lompoc is in the Central District of California. He has information and knowledge regarding the conception and reduction

to practice of the inventions disclosed and claimed in the '467 Patent. Salazar also has knowledge regarding the ownership/assignment of '467 Patent.

2. HTC Corporation

Defendant HTC Corporation is a Taiwanese entity headquartered in New Taipei City, Taiwan. Gietzen Decl. (May 9, 2017) [Dkt. # 35-1] ¶¶ 2. HTC does not have any witnesses with relevant factual knowledge of the accused HTC handsets, the '467 Patent, or prior art who work or reside in the Eastern District of Texas, *id.* ¶¶ 3, 6, 10, nor does HTC maintain any documents relevant to this action in the Eastern District of Texas, *id.* ¶ 6. Most of HTC's engineers, including those who worked on the hardware and software design, development, integration and manufacturability of the accused instrumentalities, work and live in Taiwan. *Id.* ¶ 7.

**D. Third Parties**

1. HTC America and HTC America Innovation

Plaintiff identifies HTC America as a potential party to this lawsuit. Salazar's First Am. Disclosures [Dkt. #41-2] at 3. HTC America is a subsidiary of Defendant and a Washington corporation headquartered in Seattle. During the term of the '467 Patent, HTC America imported, marketed, and sold the accused handsets, which were made abroad by Defendant. Gietzen Decl. (May 9, 2017) [Dkt. # 35-1] ¶¶ 2–4.

HTC's United States operations are coordinated through HTC America's headquarters in Seattle. *Id.* HTC contends documents relating to the design, manufacture, and oper-

ation of handsets are primarily located in Taiwan and the State of Washington. HTC's records relating to corporate finance, marketing, market analysis, and forecasts are primarily located in Taiwan and Washington State. *Id.* ¶¶ 3, 6, 11. Defendant, however, doesn't explain the relative amount of documents and evidence in each location, and treats Defendant HTC Corporation and third-party HTC America as a single entity in parts of its disclosures.

    2.    Peel Technologies

Peel Technologies, Inc. is HTC's source of command sets for the functionality for remotely controlling appliances. *See* http://blog.htc.com/2015/04/sense-tv-going-away-need-know/ ("Sense TV was powered by the Peel Smart Remote app. . . . Quite simply there's no need for [HTC] to act as a middleman with Sense TV when the Peel Smart Remote is available on its own."). Peel is located in Mountain View, California.

According to HTC, Peel officers with relevant knowledge include Balamurugan Krisnan, President and Chief Product Officer, Vineet Gupta, Vice President, Strategic Alliance & Distribution, and Thiru Arunachalum, CEO. HTC's First Am. Initial Disclosures [Dkt. # 35-14] at 9. HTC identifies each as having "[i]nformation about infrared/remote control technology, including the structure, implementation and functionality of the Peel Smart Remote." *Id.*

    3.    Google

Plaintiff has asserted infringement based on Google's Android Operating System. First Am. Compl. [Dkt. # 17] ¶ 14; *see also* Claim Chart A [Dkt. # 35-9] at 1 ("The under-

lying smart phone operating systems used by the accused HTC phones are the Google Android™ with HTC Sense™, and Windows operating systems"). Google is headquartered in Mountain View, California. HTC identifies Francesco Nerieri, who works for Google in Mountain View, California, as having "[k]nowledge of the relevant functionality of Android." HTC's First Am. Initial Disclosures [Dkt. # 35-14] at 10.

### 4. Microsoft

Plaintiff also has asserted infringement based on Microsoft's Windows Operating System. First Am. Compl. [Dkt. # 17] ¶ 14; *see also* Claim Chart A [Dkt. # 35-9] at 1 ("The underlying smart phone operating systems used by the accused HTC phones are the Google Android™ with HTC Sense™, and Windows operating systems"). Microsoft is headquartered in Redmond, Washington. HTC does not identify any particularly witnesses associated with Microsoft as having relevant knowledge. HTC's First Am. Initial Disclosures [Dkt. # 35-14] at 10.

### 5. Qualcomm

Plaintiff's Infringement Contentions assert Qualcomm chips in HTC's accused handsets implement functions relevant to the accused features. *See, e.g.*, Claim Chart A [Dkt. # 35-9] at 1 ("the HTC One M7 utilizes a Qualcomm® Snapdragon™ 600, quad-core, l.7 GHz microprocessor"). Qualcomm is headquartered in San Diego, California, [Dkt. # 35-8] ¶ 11, but has a facility in the Northern District of California, Selinger Decl. (May 10, 2017) [Dkt. # 35-3] ¶ 10. Qualcomm also has facilities in Austin and Richardson, Texas.

### 6. Luis Molero-Castro

Luis Molero-Castro is a named co-inventor on the '467 Patent who lives in Madrid, Spain. Salazar identifies Molero-Castro as having knowledge and information regarding conception and reduction to practice of the inventions claimed in the '467 Patent. Salazar's First Am. Disclosures [Dkt. #41-2] at 5. Salazar's initial disclosures indicate Molero-Castro should be contact through Salazar's counsel. *Id.* Molero-Castro is willing to voluntarily appear as a witness at a trial and be deposed in this District. Keyhani Decl. (May 31, 2017) [Dkt. # 41-3] ¶ 3.

### 7. Robert Meyers

Salazar's Initial Disclosures identify Meyers as a person having knowledge regarding the manufacturing and sale of products marked with the '467 Patent number. Salazar's First Am. Disclosures [Dkt. #41-2] at 5–6. Meyers lives in Lompoc, CA. *Id.* Salazar's initial disclosures indicate Meyers should be contact through Salazar's counsel. *Id.*

### 8. John M. DiMatteo and Joseph Sofer

Salazar's Initial Disclosures identify DiMatteo and Sofer, who work in New York, as having information and knowledge concerning preparation and prosecution of the patent application upon which the '467 Patent was granted. Salazar's First Am. Disclosures [Dkt. #41-2] at 5–6; Keyhani Decl. (May 31, 2017) [Dkt. # 41-3] ¶ 4.

### E. The Procedural History

Salazar filed this lawsuit in October 2016. Compl. [Dkt. # 1]. On March 27, 2017, HTC moved to dismiss under Rule 12(b)(6). [Dkt. # 14]. In April, Salazar amended his

complaint, [Dkt. # 17], which mooted HTC's first motion to dismiss. Later that month, HTC again moved to dismiss. [Dkt. # 28]. HTC filed the present motion in May 2017.

## II. APPLICABLE LAW

Regardless of whether the plaintiff's chosen venue is proper, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). A court should grant a motion to transfer under § 1404(a) if the transferee venue is clearly more convenient than the plaintiff's chosen venue. *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

The Fifth Circuit applies the "public" and "private" factors for determining forum *non conveniens* when deciding a § 1404(a) question. *In re Volkswagen*, 545 F.3d at 314 n.9. The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). The "public" interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *In re Volkswagen,* 545 F.3d at 315.

The plaintiff's choice of venue is not a factor in this analysis. *Id.* at 314–15; *id.* at

314 n.10. Instead, the plaintiff's choice of venue contributes to the defendant's burden in proving the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009). And though the private and public factors apply to most transfer cases, they are not exhaustive or exclusive and no single factor is dispositive. *In re Volkswagen*, 545 F.3d at 315.

"Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'" *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).

### III. DISCUSSION

#### A. Whether this case could have been brought in the Northern District of California

Because HTC Corporation is a foreign entity, this lawsuit could have been brought in any judicial district in the United States, including the Northern District of California. *See Brunette Mach. Works, Ltd. V. Kockum Indus.*, Inc. 406 U.S. 706, 710 (1972) ("[S]uits against aliens are outside the scope of all the venue laws.").

#### B. The Private Interest Factors

##### *(1)  the relative ease of access to sources of proof*

Courts analyze this factor in light of the distance that evidence must be transported to the trial venue. *See In re Volkswagen*, 545 F.3d at 316; *see also In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (presuming the bulk of the discovery material relating to a corporate party is located at the corporate headquarters); *In re Genentech, Inc.*, 566

F.3d 1338, 1345 (Fed. Cir. 2009) (noting the bulk of the relevant evidence in patent infringement cases usually comes from the accused infringer). *But see In re Hoffmann–La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009) (noting that documents moved to a particular venue in anticipation of a venue dispute should not be considered).

Defendant's relevant documents are primarily located in Taiwan and Washington, but Defendant does not indicate the relative volume of documents in each location. Moreover, Defendant does not distinguish between those documents controlled by HTC Corporation and its third-party subsidiary, HTC America. The Court therefore presumes most of the documents are in Taiwan, where Defendant is headquartered. Those documents would have to travel a significant distant regardless of the chosen forum. *See In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (discounting European witnesses and documents transported from Washington D.C. in the analysis when reviewing a denial of transfer from Texas to California because they would have to travel a significant distance regardless of chose venue).

As to third parties, the parties do not identify documents associated with Robert Meyers or Luis Molero-Castro. The prosecuting attorneys are located in New York, but they may be discounted in the Court's analysis of this factor because any evidence in their possession would have to travel a significant distance to either venue. *See id.*

The Court also discounts the importance of Qualcomm and its evidence. Defendant does not show why any evidence in Qualcomm's Santa Clara facility is important to this case. Moreover, Qualcomm's name has been invoked a number of times in this Court as a

third party in support of venue-change motions, yet the Court cannot recall a single instance where a Qualcomm witness has testified or where Qualcomm has produced a significant amount of relevant evidence in the capacity of a third-party.

As to Google and Microsoft, neither party specifies how their operating systems are particularly material to this case. While Salazar references their operating systems in his infringement contentions, he does so generically. The operating systems thus appear only tangentially related to this lawsuit.

Peel Technologies is a different matter, as its SenseTV technology appears central to Salazar's infringement contentions. Still, the Court finds it unlikely Peel will have voluminous documentary evidence to offer. At most, Peel may have to produce source code for the SenseTV application.

In sum, the Court concludes this factor is neutral. Although Peel will have likely have a limited amount of documentary evidence in the Northern District, the Court cannot conclude this factor weights in favor of transfer when no other parties or third parties have material evidence located in the proposed transferee district.

> (2)   *the availability of compulsory process to secure the attendance of witnesses*

The Fifth Circuit values absolute subpoena power when deciding motions to transfer. *In re Hoffman–La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Regardless of the trial venue, parties can secure the depositions of non-party witnesses. Under amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition

is to be taken within 100 miles of the witness's residence or regular place of business. Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial. Fed. R. Civ. P. 32(a)(4) (allowing a party to use the deposition of a witness if the witness is more than 100 miles from the location of the hearing or trial).

The Court finds this factor neutral for many of the same reasons set forth in its analysis of the sources-of-proof factor. Neither forum has absolute subpoena power over a party. Second, the Court does not expect Microsoft, Google, or Qualcomm to play an important role in this proceeding for the reasons already explained. Third, as to the presence of Peel in Northern California, Salazar correctly notes that experts would likely testify about Peel's source code and its functionalities, thereby minimizing (or altogether eliminating) the need for Peel employees to appear live at trial.

### (3) the cost of attendance for willing witnesses

A court should analyze this factor by giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen*, 371 F.3d 201, 204 (5th Cir. 2004). The court should consider all potential material and relevant witnesses, regardless of the likelihood of their being called to testify at trial. *See In re Genentech*, 566 F.3d at 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary."). In addition, this factor weighs heavily for transfer when more third-party witnesses reside in the transferee venue

than the transferor venue. *In re Apple, Inc.,* 581 Fed. Appx. 886, 889 (Fed. Cir. 2014).

The Fifth Circuit has adopted a "100-mile rule" to assist with analysis of this factor. *See In re Volkswagen*, 371 F.3d at 204–05 ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."). Under that rule, the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. If they are, the court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Generally, the 100-mile rule favors transfer if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen*, 545 F.3d at 317; *In re TS Tech,* 551 F.3d at 1320.

Importantly, however, the 100-mile rule should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. For example, when a particular witness would be required to travel a significant distance regardless of the chosen venue, that witness is discounted for purposes of the analysis. *Id.* at 1345–46 (discounting European witnesses and documents transported from Washington D.C. in the analysis when reviewing a denial of transfer from Texas to California). Also, when inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other's is insufficient to affect a transfer of venue analysis. *In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir.

2011).

Here, the Court discounts the prosecuting attorneys (New York) or Molero-Castro (Spain), all of which would have to travel a significant distance regardless of the chosen venue. And as noted, the Court does not expect Microsoft, Google, or Qualcomm to play a significant role in this case. The remaining third-party witnesses—in particular Peel representatives in Northern California and HTC America representatives in Seattle—cause this factor to weigh in favor of transfer given their closer proximity to Northern California.

> (4) all other practical problems that make a trial easy, expeditious and inexpensive

This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 25 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). The "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–21 (7th Cir. 1986)).

The Court has already expended time and resources in the initial case management of this action. Moreover, HTC waited six months before filing the present motion, after it

filed both of its motions to dismiss under Rule 12(b)(6). Given that delay and the Court's resources already been expended in this case, this factor weighs against transfer.

### C. The Public Interest Factors

*(1) the administrative difficulties flowing from court congestion*

This factor considers the speed with which a case may be resolved in the plaintiff's chosen venue and in the proposed transferee venue. *See In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). Generally, this factor weighs in favor of the venue with the faster time to trial, but the speed of the transferee district court should not alone outweigh the other factors. *Id.*

HTC cites statistics that, from filing to trial, the median time to trial for a civil case in Northern California is 31.2 months whereas this District is 19.4 months. Although HTC suggests there is less urgency here because the patent has already expired, it provides no authority the Court should consider this in its analysis. This factor weighs against transfer.

*(2) the local interest in having localized interests decided at home*

This factor considers the connection of the chosen venue's locality to the events giving rise to the suit. *See In re Volkswagen*, 371 F.3d at 205–06; *In re TS Tech*, 551 F.3d at 1321 (concluding where the accused products were sold nationally, the citizens of this District had no more or less of a meaningful connection to the case than any other venue). After all, "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *In re Volkswagen*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

The sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue. *In re Acer America Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010). But if there are significant connections between a particular venue and the events giving rise to a suit, this factor should be weighed in that venue's favor. *Id.* For example, when the company asserting harm and many of the companies alleged to cause the harm are all residents of that district, as are the inventor and the patent prosecuting attorney whose work may be questioned at trial, the local interest favor strongly favors transfer. *Id.*

Here, neither party is a resident of Northern California or this District, nor are the prosecuting attorneys. Given that nationwide sales of accused products do not give rise to a substantial interest in either venue, this factor is neutral.

        *(3)*    *the familiarity of the forum with the law that will govern the case*

Patent claims are governed by federal law, and both courts are capable of applying that law to infringement claims. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). This factor is neutral.

        *(4)*    *the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law*

Neither party has identified any specific conflicts-of-laws issues. This factor is neutral.

## IV. CONCLUSION

Of the private interest factors, one weighs in favor of transfer, one weighs against transfer, and the others are neutral. Of the public interest factors, three are neutral whereas

speed to trial weighs against transfer. When considered together, the Court concludes HTC Corporation has not shown the Northern District of California is clearly more convenient than this District and **DENIES** Defendants' Motion.

**SIGNED this 18th day of October, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE