IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-CV-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF JOE ANDREW SALAZAR'S MOTION TO COMPEL
DEFENDANT HTC CORPORATION TO COMPLY WITH THE COURT'S
DISCOVERY ORDER, ANSWER INTERROGATORIES AND PRODUCE 30(b)(6)
<u>WITNESSES AND TO OVERRULE OBJECTIONS</u>**

# FILED UNDER SEAL

I.     INTRODUCTION.

Pursuant to Fed. R. Civ. P. 37(a), Plaintiff Joe Andrew Salazar ("Salazar") moves the Court for an order compelling Defendant HTC Corporation ("HTC") to provide complete discovery disclosures in compliance with the Court's Discovery Order; full and adequate responses to certain interrogatories propounded to HTC; and to produce witnesses to testify in response certain topics designated in Salazar's Rule 30(b)(6) deposition notice.

II.    FACTUAL BACKGROUND.

On November 14, 2017, Salazar sent a letter to HTC identifying multiple categories of documents that HTC had deficiently disclosed or, in some instances, completely failed to disclose that were relevant to Salazar's infringement and damages claims. After the parties conducted the meet and confer specified in Court's Discovery Order on November 20, 2017, a small number of Salazar's document disclosure requests were either partially resolved or were tabled subject to Salazar's receipt and review of additional documents from HTC. By correspondence dated November 28, 2017, HTC formally responded to Salazar's November 14 deficiency letter and the parties conducted a second meet and confer on December 5, 2017 which again resulted in a partial resolution of some of the document production deficiencies identified in Salazar's November 14 letter. However, other document disclosure categories identified by Salazar have never been adequately responded to by HTC, as have certain of Salazar's interrogatories and 30(b)(6) deposition topics which are the subject of this motion to compel.

III.   LEGAL STANDARDS

> "This Court adheres to a policy of liberal, open, and forthright discovery and will not tolerate gamesmanship." [1]

---

[1] *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs.*, No. 6:07-CV-251, 2008 U.S. Dist. LEXIS 93177 at *7-8 (E.D. Tex. Oct. 3, 2008) (citing *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 242 F.R.D. 362, 375-383 (E.D. Tex. 2007), *aff'd in part, rev'd in part and remanded*, 560 F.3d 1291 (Fed.Cir.2009); *Garmin Ltd. v. TomTom, Inc.*, No. 2:06-cv-338, 2007 WL 2903843, at *8 (E.D. Tex. Oct. 3, 2007).

Federal Rule of Civil Procedure 26 allows a party to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense." *Realpage, Inc. v. Enterprise Risk Control, LLC,* No. 4:16-cv-737-ALM, 2017 WL 1165688, at *1 (E.D. Tex. March 29, 2017) In addition, this Court's local rules provide detailed guidance for counsel in evaluating and determining whether a particular piece of information is "relevant to any party's claim or defense." *See* Local Rule CV-26(d). Lastly, the Discovery Order (Doc. No. 26) entered in this action clearly delineates the nature and scope of the mandatory disclosures required of the parties by the Court.

### IV.     ARGUMENT

#### A.     The Court Should Compel HTC to Disclose All Relevant (1) Patent License Agreements, (2) Sales, Purchase or Distribution Agreements, and (3) Customer Surveys, Marketing and Demand Analyses for the Accused Devices

Salazar's request to HTC to produce patent license agreements that relate to the various functionalities of the Accused Devices that are the subject of his infringement claims in this suit, as well as purchase, sales and distribution agreements between HTC and its U.S. customers and customer surveys and marketing studies related to the Accused Devices are undoubtedly relevant to Salazar's damages claim and are within the scope of permissible discovery. However, prior to sending Salazar's November 14 deficiency letter, HTC had produced only a smattering of agreements, most of which consisted of litigation settlement agreements with non-practicing entities for ▮▮▮▮▮▮▮▮▮▮ – instead of comparable patent license or cross-license agreements with other technology companies involving the same or similar functionalities and no relevant customer survey information or marketing studies or product demand analyses. As a result, Salazar included five specific categories of documents (nos. 6, 18, 19, 26 and 27) in his November 14 deficiency letter that were directed to securing these types of licenses, sales agreements and marketing information. HTC responded to the requested categories with objections instead of

documents. *See* Exhibit 1. In an attempt to address HTC's scope objections to the patent license agreements sought in categories 26 and 27, Salazar further specified that he was seeking disclosure of HTC patent license agreements that related to certain functionalities of HTC's accused devices, including and not limited to, radio frequency communications, microprocessor functionalities and capabilities, memory device functionalities and capabilities, infra-red frequency communications, sensing systems, functionalities, and capabilities, user interfaces, selectors or data detectors. However, Salazar's attempt to clarify the scope of his request for relevant patent licenses from HTC did not result in the production of any further responsive patent licenses.

As to category no. 27, after repeated requests from Salazar, on December 11, 2017, HTC finally produced a Master Purchase Agreement between , a Product Supply Agreement between and a Product Supply Agreement between .[2] HTC also sells the Accused Devices to , among others, yet HTC failed to produce these additional relevant purchase or supply agreements with .[3] In fact, most of the purchase or supply agreements with that HTC had produced to Salazar prior to the transmission of his November 14 deficiency letter were older agreements, one between , and an assignment of the rights/obligation under that agreement from . Given the paltry state of HTC's production of these categories of documents this stage of the litigation, HTC should be required to produce all sales or and distribution agreements and purchase

---

[2] However, these agreements were not produced to Salazar until <u>after</u> HTC's 30(b)6 deposition was completed on December 1, 2017 meaning that Salazar had no opportunity to question HTC's witnesses on any of these documents.
[3] As a result of a meet and confer that occurred between the parties on December 13, 2017, HTC has now agreed to produce the master purchase agreement between pursuant to the provisions of the Protective Order entered in this action and HTC has represented to Salazar that it is currently securing permission to produce the master purchase agreement between .

agreements between HTC and ▇▇▇▇▇▇▇▇▇▇▇ in the 2011- 2015 time period that relate to the Accused Devices or the functionalities of components of the Accused Devices or that involve technologies substantially similar to the patented technologies. These categories of documents are clearly relevant to the establishment of a reasonable royalty for HTC's infringement of the patent-in-suit and are crucial to the preparation and completion of the reports of Plaintiff's damages experts which are currently due on December 29, 2017.

As an adjunct to his November 14 deficiency letter, Salazar also served a Third Set of Interrogatories (Nos. 24 and 25) that HTC responded to on December 11, 2017 by identifying a small number of documents and asserting a large number of objections. *See* Exhibit 2. The parties met and conferred on HTC's objections to these two interrogatories on December 14, 2017 and although some agreements were reached with respect to Interrogatory No. 25,[4] as to Interrogatory No. 24 HTC reiterated its objection to producing the full scope of the patent license agreements sought by this interrogatory (and in Salazar's earlier deficiency letter). The basis of HTC's objections to these interrogatories was that they called for the disclosure or production of license agreements that were not "comparable" to the patent-in-suit. However, contrary to HTC's "non-comparability" assertions, patent licenses entered into by HTC that relate to the Accused Devices and/or the functionalities and components of those devices are clearly relevant to Salazar's claims of patent infringement and the amount of damages he has suffered as a result of that infringement. As such, Salazar's disclosure requests and interrogatories seeking production of documents relating to this specific subject matter are reasonably calculated to lead to the discovery of admissible evidence and should be immediately produced by HTC. *See* Fed. R. Civ. P. 26(b)(1); Local Rule CV-26(d); *Realpage Inc.*, 2017 WL 1165688, at *1.

    **B.**    **HTC Should be Compelled to Designate and Produce Witnesses to Testify in**

---

[4] Please see the preceding footnote for the results of this meet and confer as it relates to Interrogatory No. 25.

**Response to Salazar's Rule 30(b)(6) Deposition Notice**

Salazar served a Rule 30(b)(6) Deposition Notice on October 6, 2017 to which HTC responded with First Amended Responses and Objections on November 13, 2017. Specifically, HTC refused to designate a representative to testify in response to 30(b)(6) Topics 11-14, 24 and 30 based scope objections that included overbreadth, undue burden, lack of proportionality and lack of relevance. *See* Exhibit 3. However, HTC never met and conferred with Salazar on its objections to these topics and no agreement between the parties to limit the scope of these topics was ever reached. Despite this, HTC did not seek a protective order from the Court as to these topics at any time prior to Salazar's 30(b)(6) deposition of HTC going forward on December 1, 2017 as scheduled. At that deposition HTC failed to produce any witness to testify concerning **Topic 12** ("Patent license agreements entered into by Defendant and/or any of its U.S. subsidiaries in connection with the Accused Devices"); **Topic 30** ("Any patent license agreements relating to the components and/or functionalities of the Accused Devices and/or other devices that incorporate these components and/or functionalities"); **Topic 11** ("The development of each Accused Device and the date(s) of such design"); **Topic 13** ("All technical and design features and all functional and operational elements of the Accused Devices"); **Topic 14** ("The dates of design and development of the Accused Devices"); or **Topic 24** ("What inspired or influenced Defendant in design of, or upon which Defendant's based the design of the Accused Devices"). As to Topic 30, HTC's counsel specifically confirmed during the course of one of the 30(b)(6) depositions that HTC was refusing to designate a witness for that topic.[5] The parties subsequently met and conferred on December 5, 2017 regarding HTC's failure to produce witnesses for the noticed

---

[5] *See* Exhibit 4 - Deposition of ▇▇▇▇, taken on December 1, 2017 pg. 5, lines 8 – 13: "MR. KEYHANI: Okay. Topic number 30 -- is ▇▇▇▇ going to testify regarding topic number 30 related to the patent license agreements, or is that another witness, Jerry? MR. SELINGER: No witness was designated. That was an objection only. And no motion to compel.

topics but HTC persisted in its refusal to tender any further 30(b)(6) witnesses. That position was confirmed by HTC's counsel in a December 7, 2017 email that stated: "there should be no misunderstanding. Under the circumstances, as I stated from Taiwan, we believe the 30(b)(6) deposition was concluded at the end of ▮▮▮▮ testimony." *See* Exhibit 5.

It has long been established in the Eastern District of Texas that a party may not unilaterally decide which 30(b)(6) deposition topics for which it will and will not produce responsive witnesses. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 2012 U.S. Dist. LEXIS 99797, 11-12, 2012 WL 2935315 (E.D. Tex. July 18, 2012) (a "unilateral decision to block discovery into a topic clearly and unambiguously identified in a 30(b)(6) deposition notice is not permitted under the Federal Rules of Civil Procedure or this Court's Local Rules"). A party served with a Rule 30(b)(6) deposition notice must respond in one of two ways: (1) designate a person to testify at a deposition, or (2) move for a protective order. *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.,* 218 F.R.D. 125, 133 (E.D. Tex. 2003) ("When a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic."). *See also Collins v. Nissan North Am., Inc.,* No. 2:11-cv-428-JRG, at 2 (E.D. Tex. May 9, 2013) ("Having been put on notice of Plaintiffs' 30(b)(6) topics, Nissan was required to either (1) tender a witness on each topic; (2) confer with Plaintiffs' counsel to discuss the scope of the deposition and resolve any disputes among themselves; or (3) seek relief from the Court once a meet-and-confer between the parties did not resolve the dispute."); *accord DDR Holdings,* 2012 WL 2935315 at *2. Further, a party's failure to either designate a witness for a particular topic or alternatively to move for a protective order on that topic is considered "tantamount to a complete failure of the corporation to appear." *See Ferko,* at 142 (citing *Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d

6

196, 197 (5th Cir. 1993)).

Accordingly, absent an agreement among the parties to limit the scope of a 30(b)(6) topic or HTC's filing of a motion for protective order as to the objectionable topics, Salazar was entitled to have HTC produce a witness or witnesses that was prepared to fully respond to Topics 11-14, 24 and 30 as formulated by Salazar at the time the December 1, 2017 30(b)(6) deposition of HTC commenced. In this instance, HTC failed to do either of those things and instead simply stood on its previously stated objections to these topics. However, HTC's decision to unilaterally limit the scope of Salazar's 30(b)(6) deposition without first seeking or obtaining a protective order from the Court as to those topics prior to the start of the deposition is clearly impermissible. Consequently, the Court should compel HTC to designate and produce 30(b)(6) witnesses responsive to Topics 11 – 14, 24 and 30. Moreover, because of HTC's blatant failure to comply with these established procedural rules, HTC should be compelled to produce its 30(b)(6) witnesses for their depositions in the United States – not in Taiwan.

## V.     CONCLUSION AND PRAYER

Accordingly, Salazar requests the Court to grant this Motion to Compel in all respects and enter an order: (1) compelling HTC to disclose documents responsive to categories 6, 18, 19, 26 and 27 in Salazar's November 14 deficiency letter; (2) compelling HTC to provide full and complete answers and responsive documents to Interrogatory Nos. 24 and 25 of Salazar's Third Set of Interrogatories; (3) directing HTC to produce witnesses in the United States that are prepared to testify in response to Topics 11-14 and 30 of Salazar's 30(b)(6) deposition notice, and; (4) awarding Salazar his reasonable and necessary attorney's fees and costs incurred as a result of having to bring this motion against HTC pursuant to Fed. R. Civ. P. 37(a)(5) and for such further relief as the Court deems suitable and just.

Dated: December 15, 2017

Respectfully submitted,

*Andy Tindel w/ permission of Lead Attorney*

Dariush Keyhani, Lead Attorney
New Jersey State Bar No. 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
dkeyhani@meredithkeyhani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909
Email: atindel@andytindel.com

*Attorneys for Plaintiff Joe Andrew Salazar*

### CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 15th of December, 2017. Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

_____
Andy Tindel

8

## **CERTIFICATE OF CONFERENCE**

Counsel for Plaintiff Joe Andrew Salazar have complied with the meet and confer requirements of Local Rule CV-7(h) and the foregoing Motion to Compel is opposed by HTC. The personal conference required by Local Rule CV-7(h) was conducted via telephone conferences on November 20, 2017, December 5, 2017 and December 13, 2017 between Dariush Keyhani, Lead Attorney for Plaintiff Joe Andrew Salazar and Andy Tindel, Local Counsel for Plaintiff Joe Andrew Salazar and Jerry Selinger, Lead Counsel for Defendant HTC Corporation. Counsel for the parties also engaged in additional telephone calls and email exchanges which resolved some of discovery disputes but agreement could be reached with respect to other disputes that are the subject of this Motion to Compel and discussions regarding these disputed issues have now conclusively ended in an impasse, leaving an open issue for the Court to resolve.

Dated: December 15, 2017

/s/Dariush Keyhaini

Dariush Keyhani
Lead Counsel for Plaintiff,
Joe Andrew Salazar

Andy Tindel
Local Counsel for Plaintiff
Joe Andrew Salazar

9

**CERTIFICATE OF AUTHORIZATION TO FILE SEALED DOCUMENTS**

Pursuant to E.D. Tex. Loc. Ct. R. CV-5(a)(7)(A), I hereby certify that the foregoing document and/or any declarations or exhibits attached thereto are authorized to be filed under seal because the Court has granted authorization to file sealed documents in this action by virtue of the Protective Order (Doc. No.33) previously entered herein on April 25, 2017.

_/s/ Andy Tindel_

Andy Tindel