**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR, <br><br> Plaintiff, <br><br> v. <br><br> HTC CORPORATION, <br><br> Defendant. | Civil Action No. 2:16-cv-01096-JRG-RSP <br><br> JURY TRIAL DEMANDED <br> **PATENT CASE** |

### HTC CORPORATION'S MOTION FOR ADDITIONAL DEPOSITION TIME OF PLAINTIFF'S RETAINED EXPERT WITNESS, ROY ALAN GRIFFIN III

Defendant HTC Corporation ("HTC Corp.") requests three hours of additional deposition time of Roy Alan Griffin III, the witness proffered by Plaintiff Joe Andrew Salazar ("Salazar") on issues related to alleged infringement. At Plaintiff's request, HTC Corp. traveled to Buffalo, New York, last week to depose Mr. Griffin, but the deposition was unreasonably impeded by Mr. Griffin and Salazar's New York counsel. On at least 25 lines of questioning, Mr. Griffin provided non-responsive, evasive, and rambling answers instead of a fair response to simple questions. He also took unreasonably lengthy pauses when answering simple questions about the basis for his opinions.

Regrettably, Plaintiff's counsel exacerbated the problem by making at least 30 improper speaking objections in violation of L.R. CV-30, succeeding in coaching Mr. Griffin to provide evasive responses at least six times. Counsel's behavior denied HTC Corp. a fair opportunity to examine Salazar's infringement claims. To cure the resulting prejudice, HTC Corp. requests three additional hours of deposition with the witness in Dallas, with an order from the Court admonishing Mr. Griffin to provide responsive answers, his counsel to obey the Local Rules, and

1

requiring that Plaintiff pay HTC Corp.'s fees and costs for filing this motion and taking the second deposition.

I.   **Background**

On December 29, 2017, Plaintiff served Mr. Griffin's report on alleged infringement of the '467 patent. HTC Corp. deposed Mr. Griffin on January 23, 2018. During the deposition, defense counsel asked some simple "yes" or "no" questions about the bases for Mr. Griffin's opinions.[1] Many times Mr. Griffin refused to answer "yes," "no," or "I don't know."[2] Instead, he provided non-responsive, evasive, and rambling answers that were non-responsive. He also insisted repeatedly on taking unreasonable, lengthy pauses to review the patent when asked simple questions.[3]

Plaintiff's counsel obstructed the deposition by providing improper speaking objections. He repeatedly urged "asked and answered."[4] He repeatedly and inaccurately objected that a

---

[1] *See, e.g.*, Ex. A, Tr. at 13:14-14:2 (failing to answer whether the IR transceiver must transmit to "said external devices"), 35:19-36:6 (failing to confirm his report did not specifically identify a cable box as an "external device"), 41:2-43:14 (evading whether the IR transceiver must have the capability to transmit to external devices), 48:1-49:8 (same), 50:4-18 (same), 51:5-52:9 (failing to answer whether "said external devices" refers to "plurality of external devices" in preamble), 53:2-55:15 (same), 71:18-75:1 (failing to confirm his report did not specifically identify "microprocessor" for certain accused products), 78:6-79:17 (failing to answer whether his opinion of "implementing protocols" satisfies "creating a protocol"), 82:8-83:12 (similar), 98:12-103:11 (failing to answer whether he identified command codes within Bluetooth standards), 123:10-22 (failing to answer whether communication protocols must include command code set), 124:17-126:7 (same), 126:15-127:5 (same), 131:13-132:15 (same), 133:10-24 (same), 155:22-156:19 (failing to identify evidence that identified SIM card has capability to store parameter sets), 195:6-197:16 (failing to answer whether he measured "memory space" required to store command code sets).
[2] *See infra* n.1.
[3] *See, e.g.*, Tr. at 50:4-18 (reviewing patent to determine if claim 1 requires IR transceiver be capable of transmitting to external devices), 51:5-52:9 (reviewing patent to answer whether "said external devices" in claim 1 refers to same external devices), 53:2-54:16 (same), 112:15-114:7 (reviewing patent to answer whether claim 1 requires each communication protocol to include a command code set), 123:20-124:1 (reviewing patent to answer whether each protocol including a command code set is a capability requirement), 124:17-126:7 (same), 160:20-161:7 (reviewing patent to answer whether "configured to" was interpreted by him to only require a capability), 161:22-162:23 (same).
[4] Tr. at 14:21-23, 26:22-23, 45:1-2, 46:23-25, 48:7-8, 58:20-21, 65:20-21, 71:5-6, 72:11-12, 73:22-23, 74:20-22.

2

question "calls for a legal conclusion."[5] He persisted in improper "legal conclusion" objections even after being informed <u>three times</u> that the Local Rules limit objections to form and privilege, claiming that he is "familiar" with the Local Rules. Tr. at 18:22-20:12, 39:2-23, 46:23-47:24.[6]

At the end of the day, HTC Corp. stated on the record the deposition was being held open and requested that Salazar agree to three additional hours of deposition, in part because Mr. Griffin "wouldn't even answer the most basic questions." Tr. at 201:16-202:7. Plaintiff's counsel disagreed and objected. Tr. at 202:8-203:8.

## II. Legal Standard

Under Fed. R. Civ. P. 30(d)(1), depositions are generally limited to seven hours. The Court, however, "must allow additional time … if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1). When a deponent is uncooperative and provides non-responsive answers to deposition questions, additional deposition time is warranted. *See* Ex. B, *Realtime Data, LLC v. Oracle America, Inc.*, No. 6:16-cv-00088-RWS-JDL, Dkt. No. 137 at 17 (E.D. Tex. Mar. 22, 2017) (granting additional deposition time because expert failed to answer simple "yes"/"no" questions).

## III. Argument

    A.    <u>Mr. Griffin should sit for three additional deposition hours because of the obstructionist behavior of both the witness and Plaintiff's counsel.</u>

The conduct of Mr. Griffin and his counsel impeded HTC Corp.'s fair examination. First, the lack of responsive answers during the deposition prejudiced HTC Corp.'s ability to examine

---

[5] Tr. at 10:18-19, 11:3-4, 11:12-13, 13:17-18, 14:7-8, 14:21-23, 18:2-3, 18:22-23, 29:4-5, 29:13-14, 29:22-23, 38:25-39:1, 42:5-6, 45:1-2, 45:17-23, 46:8-9, 46:23-25, 48:7-8, 51:9-10, 52:17-18, 58:1-2, 58:20-21, 69:9-10, 71:5-6, 72:11-12, 136:21-22.

[6] Counsel then continued to object improperly, stating that "I think we have a difference of understanding. I'm just protecting the interests of my client, and I think I need to note for the record where there's a – where there's a legal conclusion being attempted to be drawn." Tr. at 39:17-23.

and challenge Mr. Griffin's infringement opinions and the bases therefor. Mr. Griffin answered simple questions with non-responsive, evasive, and rambling answers instead of providing a fair response. For example, in questioning about command codes that he identified for televisions in the Wi-Fi protocols, Mr. Griffin consistently sought to evade the question and failed to provide a responsive answer:

> Q: With respect to any WiFi protocol, did you determine the section of the protocol where command codes for televisions could be found?
>
> A: Again, there's -- **it's just not a relevant inquiry** to -- to my analysis here so far.
>
> Q: I understand you don't think it's a relevant inquiry. I'm simply asking you: You did not make that inquiry with respect to any WiFi protocol, correct?
>
> A: WiFi protocol?
>
> Q: Any of the WiFi protocols.
>
> A: Why don't you restate the question so that I can --
>
> Q: Sure. Again, I understand that you don't think it's relevant, but my question is: You did not make an inquiry with respect to any WiFi protocol as to where command codes for televisions could be found within that protocol, correct?
>
> A: I – now you're talking about command codes in relation to the patent. You're kind of mixing something here, a term that's not even in this claim element that we're talking about, and I'm not understanding what you're trying to ask me.
>
> Q: I'm simply asking you if you looked in the WiFi protocols for where command codes for televisions could be found.
>
> A: I think this has to do with RF protocols here, right? We're talking about – all this Bluetooth, all this is relating to RF protocols and not to IR protocols, and so I'm having a hard time understanding how the relationship between my investigations into WiFi as discussed here in my report relates to a discussion of command code sets or command codes or other things having to do with WiFi.

So perhaps another part of my report would have more information about this, the part that deals with the RF transmission, but I'm not seeing -- **I'm not understanding the nexus here or how to answer the question that seems to have nothing to do with this particular element**.

Q: **Mr. Griffin, I'm simply asking what you did. Did you look at the WiFi protocols, any of them, to determine where in the protocol the section is for command codes for televisions?**

A: **I think there's a basic misunderstanding about what we're talking about when we're going to talk about WiFi transceivers**, implementing protocols to communicate wirelessly with WiFi enabled devices.

The WiFi protocols are -- are used for carrying communication signals, and this is what their purpose is. Those protocols are Ethernet related and don't necessarily as a WiFi protocol employ protocols specific to command code sets, for instance, in relation to this particular element.

Now, we can talk about other elements perhaps where that would make some sense, but right now, the point I'm make here is that there are different protocols, that there are HTC, there are protocols for transmission to external devices of various sorts. That's all that I'm trying to say here, is here's -- here's an example, there's WiFi, there's IR, there's Bluetooth protocols, that all of these exist within the HTC smart phones.

And so as you're going along, these are exemplary protocols which meet this particular claim element. **This particular claim element has nothing to do with command codes or -- or whether it's required**. In claim 1 you don't even need to have WiFi command codes or any kind of command codes that deal with RF, so it's -- it's difficult for me to hone in on what it is that you're asking when you're not providing proper context for me, I think.

Q: Mr. Griffin, you did not do an investigation of the WiFi protocols to determine whether there was a section in any WiFi protocol that had command codes for televisions, correct?

A: My inquiry into the WiFi did exist, did look at it, did look at Ethernet protocols which are similar to the WiFi transceiver protocols.

The specific manner in which a WiFi protocol might be used is dealt with later on in my analysis further on, but I did not in this section deal with it. And so if we would like to look at some other sections

>and try to understand my rationales there, we can certainly do that, but the WiFi standards are not probably the place that you're going to find any such thing as you're talking about as far as I can tell.

(Tr. at 99:1-103:11) (emphasis added). These were simple questions about the basis for Mr. Griffin's opinions and whether he identified particular command code sets required by the claims. Although it appears from the lack of response that he did not make this identification, Mr. Griffin repeatedly evaded answering the question and instead chose to challenge its relevance. He provided many similarly evasive, non-responsive answers. *See infra* n.1.

Similarly, Mr. Griffin repeatedly took lengthy pauses to review the patent when asked simple questions about the scope of his analysis. For example, when asked if he understands that, when the claim references "said external devices," it references the "plurality of external devices" in the preamble, Mr. Griffin took a long pause to review the patent and then provided a rambling, non-responsive answer. *See infra* n.3.

Second, Salazar's counsel obstructed the examination with repeatedly improper objections. The Local Rules provide: "Objections to questions during the oral deposition are limited to Objection, leading and Objection, form." Local R. CV-30. Salazar's counsel did not comply with the rule and repeatedly made speaking objections. For example, when Salazar's counsel objected that a question called for a "conclusion," Mr. Griffin responded, on cue, that the question was "getting into a very legal area that I don't know that I can respond in the way that would satisfy you here." Tr. 42:2-16. As another example, counsel instructed that "[i]f you believe you've answered the question, you have nothing else to add, then you don't need to add anything to it." Tr. at 74:20-22; *see also infra* n.4. And Mr. Griffin followed his counsel's coaching: "I have nothing to add to the answers, multiple answers that I've given you." Tr. at 74:25-75:1. Salazar's counsel also repeatedly and improperly objected that a question "calls for a legal conclusion." *See infra* n.5.

6

      B.      <u>Other courts, including in the Eastern District, have granted additional deposition time for similar behavior</u>.

Judge Love recently ordered an expert to appear for an additional deposition because of similarly non-responsive answers in the expert's first deposition. *Realtime Data,* No. 6:16-cv-00088-RWS-JDL, Dkt. No. 137 at 17. There, the expert was asked a series of "yes" or "no" questions regarding the bases for his opinions and methodology. *Id.* at 4. Although the expert "did not flatly refuse to answer Oracle's questions, his responses were primarily evasive." *Id.* at 14. The court found that, for one exemplary line of questioning, the expert "consistently failed to provide responsive answers" to "simple questions relating to the basis for [his] opinions." *Id.* at 14-15. The court concluded that "[t]here is no reason that [the expert] should be evasively answering these basic questions about his methodology." *Id.* at 15. The court also found that just because the expert would in some instances "provide some language within his answer directly addressing counsel's question does not solve this problem." *Id.* at 15-16. "Such a tactic is prejudicial to Oracle because it prevents a meaningful cross-examination of the basis of [the expert's] opinions." *Id.* at 16. Because of the expert's evasive answers, the Court granted Oracle additional deposition time and directed the parties to call the Court if the expert failed again to provide responsive answers.

**IV.    Conclusion**

HTC Corporation respectfully requests that the Court order Mr. Griffin to appear for an additional three-hour deposition in Dallas; direct him to provide responsive answers; admonish his counsel to abide by the Local Rules; and order Plaintiff to pay defense counsel's fees and costs for filing this Motion and for taking the second deposition.

Dated: January 29, 2018

        Respectfully submitted,

        /s/ *Jerry R. Selinger*_____
Jerry R. Selinger
State Bar No. 18008250
Email: jselinger@pattersonsheridan.com
Trampas A. Kurth
State Bar No. 24055807
Email: tkurth@pattersonsheridan.com
PATTERSON + SHERIDAN, LLP
1700 Pacific Avenue, Suite 2650
Dallas, Texas 75201
Tel: 214.272.0957
Fax: 713.623.4846

/s/ *Fred I. Williams*_____
Fred I. Williams
TX Bar No. 00794855
Email: fwilliams@velaw.com
Mario A. Apreotesi
TX Bar No. 24080772
Email: mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: 512.542.8400
Fax: 512.542.8612

Todd E. Landis
TX Bar No. 24030226
Email: tlandis@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 210.220.7700
Fax: 210.220.7716

Harry Lee Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

### **CERTIFICATE OF SERVICE**

I certify that on January 29, 2018 a true and correct copy of the foregoing document was electronically filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing ("ECF") system of the court. The attorneys of record who have consented in writing to accept notice as service of this document by electronic means are being served by a "Notice of Electronic Filing," sent by the ECF system.

*/s/ Fred I. Williams*_____
Fred I. Williams

### **CERTIFICATE OF CONFERENCE**

I certify that on January 23, 2018, HTC Corporation's counsel conferred in person with Plaintiff's counsel, Darius Keyhani, about whether Plaintiff would consent to three additional hours of deposition time for Mr. Griffin. Mr. Keyhani stated that Plaintiff is opposed. On January 29, 2018, counsel for HTC Corporation asked Plaintiff's counsel in writing to confirm that Plaintiff still opposes the request, but Plaintiff's counsel did not respond. Having reached an impasse with Plaintiff, Defendant HTC Corporation presents this motion to the Court for resolution.

*/s/ Fred I. Williams*_____
Fred I. Williams