**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>             Plaintiff,<br><br>     v.<br><br>HTC CORPORATION,<br><br>             Defendant. | Civil Action No. 2:16-cv-01096-JRG-RSP<br><br>JURY TRIAL DEMANDED<br>**PATENT CASE** |

**HTC CORPORATION'S MOTION FOR SUMMARY JUDGMENT
OF NON-INFRINGEMENT OF THE ASSERTED CLAIMS
OF THE '467 PATENT**

Jerry R. Selinger
State Bar No. 18008250
Email: jselinger@pattersonsheridan.com
Trampas A. Kurth
State Bar No. 24055807
Email: tkurth@pattersonsheridan.com
PATTERSON + SHERIDAN, LLP
1700 Pacific Avenue, Suite 2650
Dallas, Texas 75201
Tel: 214.272.0957
Fax: 713.623.4846

Harry Lee Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas   75670
Tel: 903.934.8450
Fax: 903.934.9257

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

Fred I. Williams
State Bar No. 00794855
Email:  fwilliams@velaw.com
Mario A. Apreotesi
State Bar No. 24080772
Email:  mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas  78746
Tel: 512.542.8400
Fax: 512.542.8612

Todd E. Landis
State Bar No. 24030226
Email:  tlandis@velaw.com
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
Tel: 210.220.7700
Fax: 210.220.7716

**TABLE OF CONTENTS**

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................... 2

LEGAL BACKGROUND ............................................................................................. 7

ARGUMENT ........................................................................................................... 9

I.      HTC Corp. Is Entitled To Summary Judgment Of Non-infringement Because The Accused Instrumentalities Do Not Satisfy Each And Every Limitation Of The Asserted Claims. .................................................................................................... 9

        A.      Salazar cannot show that the Accused Instrumentalities include a memory device "configured to store a plurality of parameter sets" as sold. ........................ 9

        B.      Salazar has failed to show that the Accused Instrumentalities include the claimed "infra-red transceiver" capable of bi-directional communication. .......... 11

        C.      Salazar cannot show that the Accused Instrumentalities include the claimed "transceivers" that communicate "in accordance with said communication protocols." ........................................................................................... 13

        D.      The Accused Instrumentalities do not "create" or "generate" communication protocols as a matter of law. ..................................................... 15

        E.      Salazar cannot show that the accused "microprocessor" carries out each and every claimed function. .......................................................................... 17

II.     HTC Corp. Is Entitled To Summary Judgment Of No Indirect Infringement, No Willful Infringement, And No Infringement Under The Doctrine Of Equivalents. ......... 19

        A.      Salazar cannot prove the "knowledge" element of indirect infringement because HTC Corp. did not have notice of the '467 Patent until after it expired. ................................................................................................ 19

        B.      Salazar cannot prove the "culpable behavior" element of willful infringement because HTC Corp. did not have notice of the '467 Patent before it expired. .................................................................................... 20

        C.      Salazar cannot show infringement under the doctrine of equivalents because he failed to proffer supporting expert opinion on "insubstantial differences." ........................................................................................... 21

III.    HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For The HTC One M9 And HTC One M8 For Windows Because Salazar Failed To Provide Supporting Expert Testimony. ..................................................................................... 22

IV.     HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For The Accused Instrumentalities Retailed By Sprint Because HTC Corp. Performed No Allegedly Infringing Acts In The United States. ............................................................. 23

V.      HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For Claims 10 And Its Dependents Because Salazar Has Stipulated To Dismiss These Claims. ............ 24

CONCLUSION......................................................................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**

*Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*,
   811 F.3d 1334 (Fed. Cir. 2016) ................................................................................. 8

*AquaTex Industries, Inc. v. Techniche Solutions,*
   479 F.3d 1320 (Fed. Cir. 2007) ................................................................. 9, 21, 22

*Aspex Eyewear v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012) ............................................................................. 10

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
   922 F.2d 792 (Fed. Cir. 1990) ................................................................................. 8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................................ 7, 8

*Centricut, LLC v. The ESAB Group, Inc.*,
   390 F.3d 1361 (Fed. Cir. 2004) ............................................................... 8, 22, 23

*Commil USA, LLC v. Cisco Systems, Inc.*,
   135 S.Ct. 1920 (2015) ..................................................................................... 19, 20

*Copelands' Enters. v. CNV, Inc.*,
   945 F.2d 1563 (Fed. Cir. 1991) ............................................................................. 8

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
   424 F.3d 1293 (Fed. Cir. 2005) ........................................................................... 20

*Graver Tank & Mfg. v. Linde Air Prods. Co.*,
   339 U.S. 605 (1950) ................................................................................................... 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   136 S. Ct. 1923 (2016) ........................................................................................... 21

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   49 F.3d 1551 (Fed. Cir. 1995) ............................................................................. 13

*IAP Intermodal, LLC v. Northwest Airlines Corp.*,
   No. 2:04-CV-65, 2005 WL 6217423 (E.D. Tex. Sept. 7, 2005) ......................... 17

*In re Varma*,
   816 F.3d 1352 (Fed. Cir. 2016) ..................................................................... 17, 18

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ................................................................................. 20

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000) ............................................................................. 8

*Nazomi Comm'ns, Inc. v. Nokia Corp.*,
   739 F.3d 1339 (Fed. Cir. 2014) ..................................................................... 12, 13

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ............................................................................. 8

*O2 Micro Int'l Ltd. v. Samsung Elecs. Co., LTD*,
   No. 2:04-CV-323,  2006 WL 1804616 (E.D. Tex. Jun. 28, 2006) .......................................... 17

*Pellegrini v. Analog Devices, Inc.*,
   375 F.3d 1113 (Fed. Cir. 2004) .................................................................................. 23, 24

*Reese v. Samsung Telecomm'ns Am., L.P.*,
   No. 2:05-CV-415-DF, 2006 WL 6112195 (E.D. Tex. Dec. 5, 2006) ...................................... 17

*Renishaw PLC v. Marposs Societa' per Azioni*,
   158 F.3d 1243 (Fed. Cir.1998) ...................................................................................... 9

*SIPCO, LLC v. ABB, Inc.*,
   No. 6:11-CV-0048 LED-JDL, 2012 WL 3112302 (E.D. Tex. Jul. 30, 2012) ......................... 10

*SIPCO, LLC v. Amazon.com, Inc*,
   No. 2:08-CV-359-JRG, 2012 WL 5195942 (E.D. Tex. Oct. 19, 2012).................................. 10

*Solocron Media, LLC v. Verizon Comm's, Inc.*,
   No. 2:13-CV-1059-JRG-RSP, 2015 WL 1011310 (E.D. Tex. Mar. 4, 2015) ......................... 10

*Southwall  Technologies., Inc. v. Cardinal IG Co.*,
   54 F.3d 1570 (Fed. Cir. 1995) ....................................................................................... 9

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) .................................................................................... 13

*Texas Instruments, Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ..................................................................................... 21

*Trintec Indus., Inc. v. Top-U.S.A. Corp*,
   295 F.3d 1292 (Fed. Cir. 2002) .................................................................................... 16

*Wahpeton Canvas Co. v. Frontier, Inc.*,
   870 F.2d 1546 (Fed. Cir. 1989) ..................................................................................... 8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
   520 U.S. 17 (1997).......................................................................................................... 8

## Statutes

35 U.S.C. § 271(a) .......................................................................................................... 23

35 U.S.C. § 284................................................................................................................. 20

## Rules

Fed. R. Civ. P. 56(a) ......................................................................................................... 7

Defendant HTC Corporation ("HTC Corp.") is entitled to summary judgment on all asserted claims of U.S. Patent No. 5,802,467 ("the '467 Patent").  In particular, summary judgment of non-infringement should be granted for the following reasons:

1.     Plaintiff Joe Andrew Salazar ("Salazar") cannot show infringement of the asserted claims because the Accused Instrumentalities as sold do not have memory "configured" to store a plurality of parameter sets.

2.     Salazar cannot show infringement of the asserted claims because the Accused Instrumentalities do not include the claimed "infra-red frequency transceiver" that transmits to and receives from the same external devices.

3.     Salazar cannot show infringement of the asserted claims because the Accused Instrumentalities do not include the claimed "transceivers" that send and receive signals in accordance with each of the identified "communication protocols."

4.     HTC Corp. is entitled to summary judgment of non-infringement for each of the asserted claims because the Accused Instrumentalities do not "create" or "generate" communication protocols.

5.     Salazar cannot show infringement of the asserted claims because the Accused Instrumentalities do not include the claimed "a microprocessor" that carries out each and every claimed function.

6.     Salazar has failed to carry its burden of proving indirect infringement, willful infringement, or infringement under the doctrine of equivalents.

7.     Salazar cannot show infringement for the HTC One M9 or HTC One M8 for Windows because his infringement expert failed to provide any opinion or analysis regarding those devices.

1

8.      Salazar cannot show direct infringement for the Accused Instrumentalities retailed by Sprint/United Management Company ("Sprint") because non-party HTC America, Inc.—not the defendant in this case, HTC Corp.—is the importer of record and the entity that offered to sell (and sold) those devices to Sprint in the United States.

9.      HTC Corp. is entitled to summary judgment of non-infringement for claims 10, 14, 17, 23, 26, 31, and 32 of the '467 Patent because Salazar has stipulated to dismiss these claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      HTC Corp. is a Taiwanese corporation headquartered in Taiwan.  *See* Ex. C at 26:9-13.

2.      The accused HTC-brand smartphones consist of the One M7, One M8, One M8 for Windows, and One M9 smartphones ("the Accused Instrumentalities").  The Accused Instrumentalities are manufactured by HTC Corp. in Taiwan.  Selinger Decl., Ex. A at 19:18-23.

3.      Salazar asserts that the Accused Instrumentalities infringe claims 1-7, 27-30, and 34 of the '467 Patent (the "Asserted Claims").  *Compare* Selinger Decl., Ex. E at 1 (asserting claims 1-7, 10, 14, 17, 23, 26-32, and 34), *with* Selinger Decl., Ex. Q (Salazar stipulating to no longer asserting claims 10, 14, 17, 23, 26, 31, and 32).

4.      Claims 1 and 34 are the only asserted independent claims.

5.      The HTC One M7 and One M8 Accused Instrumentalities included the Android-based Sense TV application.  Selinger Decl., Ex. G at 17:4-9.  The HTC One M8 for Windows Accused Instrumentality included the Windows-based Sense TV application.  *See id.*

2

6.      The HTC One M9 Accused Instrumentality did not include the Sense TV application. *Id.* at 17:4-19.  The HTC One M9 utilized the Peel Smart Remote application, not the Sense TV application.  Selinger Decl., Ex. H at 14:11-15.

7.      Roy A. Griffin III, Salazar's infringement expert, provided an infringement report for Salazar, including a cover report and Exhibit C thereto (collectively, "the Griffin Report"), on December 29, 2017.  Mr. Griffin's cover report mentions the "Sense TV application" and the Peel Smart Remote application, but it does not opine that the Peel Smart Remote or Windows-based Sense TV applications infringe.  Selinger Decl. ¶¶ 21-23.

8.      Exhibit C to the Griffin Report identifies the Sense TV application as allegedly meeting several limitations of each asserted independent claim.  Selinger Decl., Ex. F at 4, 11, 73, 76-80.

9.      The Griffin Report does not include an element-by-element infringement analysis for the Peel Smart Remote application comparable to the analysis in Mr. Griffin's Exhibit C for the Sense TV application.  Selinger Decl. ¶ 21.

10.     Mr. Griffin did not review the source code of the Windows-based Sense TV application for the One M8 for Windows when that code was made available for review under the Protective Order in this case.  Selinger Decl. ¶ 22-23.  And HTC Corp. did not provide any printed pages of the source code for the Sense TV application for Windows to Mr. Griffin.  *Id.* at ¶ 22.

11.     The Griffin Report describes reverse engineering two versions of the Sense TV application, but Mr. Griffin concedes that the apk files corresponding to those two versions of the Sense TV application were both Android versions.  *See* Selinger Decl., Ex. E at ¶¶ 44-46.  The Griffin Report does not offer any opinion as to the source code for the Sense TV application for the One M8 for Windows.  Selinger Decl. ¶ 23.

12.     Until a user goes through a configuration process in the Sense TV and Peel Smart Remote applications, the Accused Instrumentalities cannot be used to control any external devices. Selinger Decl., Ex. O at 77:24-78:18 (agreeing that consumers cannot control external devices until "after he goes through the configuration process that's required"); Ex. H at 15:1-16:5 (stating that to set up the Peel Smart Remote application a user has to specify "what kind of TV he has, and then the Peel application downloads the code from the servers for the particular TV").

13.     The Accused Instrumentalities as sold do not contain any parameter sets or command codes.  Selinger Decl., Ex. H at 17:8-23.  Command codes must be downloaded over the Internet from Peel servers to the Accused Instrumentalities.  *Id.* at 15:1-16:5.

14.     Mr. Griffin's "demo application" described in the Griffin Report was developed by Christopher Byler. *See, e.g.,* Selinger Decl., Ex. F at 7-8; Selinger Decl., Ex. K at 59:16-60:17. The Griffin "demo application" was not present on any Accused Instrumentality as sold.  *See* Selinger Decl., Ex. K at 60:18-62:15.

15.     The IR transceiver in the Accused Instrumentalities cannot send or receive signals in accordance with RF communication protocols.  Selinger Decl., Ex. O at 19:25-20:15 ("Protocols are dealing with different kinds of technology, one having an IR transmission capability, which an RF protocol will not.   And one having an RF capability that the IR transceiver will not."). Specifically, the IR transceiver in the Accused Instrumentalities cannot communicate in accordance with Wi-Fi, Bluetooth, or NFC protocols.  *Id.* at 49:19-50:20 (agreeing that the IR transceiver does not operate with respect to Wi-Fi, Bluetooth, or NFC protocols).

16.     The RF transceivers in the Accused Instrumentalities cannot send or receive signals in accordance with IR communication protocols.  *See id.* at 19:25-20:15 (stating that "protocols

are dealing with different kinds of technology"); 35:4-8 (agreeing that identified RF transceivers in the Accused Instrumentalities do not operate in IR frequency spectrum).

17.     The communication rules for IR protocols are created by third-parties, not HTC Corp.  *Id.* at 26:3-6 (agreeing that NEC makes rules for NEC IR protocol), 27:2-15 ("But I would agree with you that [IR] chip manufacturers will often design what that [IR] protocol will look like."), 27:16-28:2 (agreeing that HTC "likely" does not create protocol rules for the NEC protocols), 28:3-8 (agreeing that HTC "likely" does not create protocol rules for IR protocols used by the Accused Instrumentalities).  The communication rules for Bluetooth protocols are created and managed by third-party standards bodies, including the Bluetooth Special Interest Group and IEEE.  Selinger Decl., Ex. P at 1.  The communication rules for Wi-Fi protocols are created and managed by IEEE, a third-party standards body.  *See* Selinger Decl., Ex. I.  The communication rules for NFC protocols are created and managed by third-party standards bodies.  Selinger Decl., Ex. L at 5-6.

18.     Each Accused Instrumentality uses the MAXQ614 microcontroller for infra-red ("IR") frequency transmissions.  Selinger Decl., Ex. B at 18:5-19:14.

19.     The MAXQ614 microcontroller generates the IR carrier waveform and modulates the carrier waveform with the appropriate data.  Selinger Decl., Ex. J at HTC011331 (MAXQ614 specification describing "automatic IR carrier frequency generation and modulation), HTC011341 ("During IR transmission (IRMODE = 1), the carrier generator creates the appropriate carrier waveform, while the carrier modulator performs the modulation."); Ex. O at 44:24-47:3 (agreeing that MAXQ614 creates the IR signal that is to be transmitted).

20.     The '467 Patent issued on September 1, 1998, and expired on September 28, 2015. The Complaint was filed on October 5, 2016, after the '467 Patent expired.  Dkt. No. 1.

21.     Before filing this lawsuit, Mr. Salazar did not provide notice to HTC Corp. of the existence of the '467 Patent or that he believed any of the four Accused Instrumentalities infringed. Selinger Decl., Ex. C at 96:16-18; Selinger Decl., Ex. D at 10-11.   No products marked with the '467 Patent number were sold after 2005.  *Id*. at 11.

22.     HTC Corp.'s first notice of any alleged infringement of the '467 Patent came after Mr. Salazar filed this lawsuit in 2016.  HTC Corp.'s first knowledge of the '467 Patent was after Mr. Salazar filed this lawsuit in 2016.  Wiggins Decl. ¶ 4.

23.     Effective June 1, 2010, non-party HTC America, Inc. became a distributor for HTC Corp. in the United States and the importer of record for all HTC-brand smartphones, including the Accused Instrumentalities, into the United States.  Selinger Decl., Ex. A at 14:3-5; 15:4-8, 14-20, 22; 45:6-11.   Title to all HTC-branded smartphones passes to HTC America, Inc., outside of the United States.  Selinger Decl., Ex. A at Dep. Ex. 2 at HTC037534 (Section 7.2).

24.     After June 1, 2010, offers for sale and sales in the United States of HTC-brand smartphones to Sprint, including the Accused Instrumentalities, were made by non-party HTC America, Inc.  Selinger Decl., Ex. M (Master Purchase Agreement between HTC Corp. and Sprint for the supply of HTC-branded products), Selinger Decl., Ex. N at 2 (amending Master Purchase Agreement between HTC Corp. and Sprint to assign to HTC America, Inc. rights to receive and process purchase orders, issue invoices, and receive payments); *see also* Selinger Decl., Ex. A at 36:14-15, 17-23; 45:12-25; 46:1-7, 15-17, 19-21, 25; 47:1, 3-25; 48:1-19.

25.     Sales of the Accused Instrumentalities began in 2013.  Selinger Decl., Ex. A at 12:13-15.

26.     The Griffin Report claims that Mr. Griffin provides a doctrine of equivalents analysis.  Selinger Decl., Ex. E ¶¶ 33-35, 37.  The Griffin Report, however, does not include any

6

doctrine of equivalents analysis purporting to show that any portion of the Accused Instrumentalities meets the "function-way-result" test or that any differences are only "insubstantial." Selinger Decl. ¶ 20.  The Griffin Report purports to assert both literal infringement and infringement under the doctrine of equivalents for **every limitation of every asserted claim** (in the right-hand column of Mr. Griffin's table), but it lacks any opinion or analysis that any portion of the accused structure meets any claim limitation under the "function-way-result" test or that any differences were only "insubstantially different."  *Id.*; *see also* Selinger Decl., Ex. F at 1-3.

27.     The operative complaint asserts induced infringement.  Dkt. 44, ¶¶ 21-22.  The Griffin Report fails to identify any evidence of underlying acts of direct infringement by any third party.  Selinger Decl. ¶ 24.

28.     The operative complaint does not assert contributory infringement.  *See* Dkt. 44. The Griffin Report fails to offer any opinion that the Accused Instrumentalities have no substantial non-infringing uses.  Selinger Decl. ¶ 25.

## LEGAL BACKGROUND

Summary judgment is appropriate when "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  The moving party, however, need not produce evidence showing the absence of a genuine issue of material fact, but rather may discharge its burden by showing the district court that there is an absence of evidence to support the nonmoving party's case.  *Copelands' Enters. v. CNV, Inc.*, 945 F.2d 1563, 1565 (Fed. Cir. 1991) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party must provide more than the conclusory opinions of an expert to preclude a summary judgment finding; instead, the

nonmoving party must provide specific facts showing that there is a genuine issue for trial. *See Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1050-51, 1055 (Fed. Cir. 2001) (conclusory expert testimony is not entitled to weight at summary judgment).

Here, Salazar bears the burden of proof on infringement. As a matter of law, there is no infringement (literal or otherwise) if even a single claim limitation is missing from the Accused Instrumentalities. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 798 (Fed. Cir. 1990); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1358 (Fed. Cir. 2000). Devices that do not infringe an independent claim do not infringe any of its dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (citation omitted).

The issue of infringement is amenable to summary judgment when, *inter alia,* no reasonable fact finder could find infringement. *Akzo Nobel Coatings, Inc. v. Dow Chemical Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016) (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 39 n. 8 (1997)). That situation exists when the accused technology is complex, involving matters beyond the comprehension of a layperson, and the expert fails to opine that structure in the accused device meets every claim limitation. *See, e.g., Centricut, LLC v. ESAB Grp., Inc.,* 390 F.3d 1361, 1369-70 (Fed. Cir. 2004). The infringement analysis is "a two-step process in which [courts] first determine the correct claim scope, and then compare the properly construed claim to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1247-48 (Fed. Cir. 1998). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed. Cir. 1995). For infringement under the doctrine of equivalents, a patentee must demonstrate an "insubstantial difference" between the claimed invention and the accused product.

*AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007) (citing *Graver Tank & Mfg. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

## ARGUMENT

**I.     HTC Corp. Is Entitled To Summary Judgment Of Non-infringement Because The Accused Instrumentalities Do Not Satisfy Each And Every Limitation Of The Asserted Claims.**

Direct infringement of the Asserted Claims requires that the Accused Instrumentalities satisfy each and every limitation.  Because the Accused Instrumentalities fail to satisfy several limitations of the asserted independent claims (specifically, claims 1 and 34), summary judgment of non-infringement should be granted for all Asserted Claims.

### A.     Salazar cannot show that the Accused Instrumentalities include a memory device "configured to store a plurality of parameter sets" as sold.

Summary judgment of non-infringement should be granted on all Asserted Claims because the Accused Instrumentalities do not include a memory device "configured to store a plurality of parameter sets."  Each of the asserted independent claims require "a memory device coupled to said microprocessor configured to store a plurality of parameter sets."  '467 Patent at 26:1-3, 30:16-17.

The Accused Instrumentalities do not contain a memory "configured" to store parameter sets.  It is undisputed that the Accused Instrumentalities contain a memory that is capable of being configured to store command data received from the Peel servers.  *See* Undisputed Material Fact ("UMF") Nos. 12-13 (providing that command data can be downloaded from Peel servers after the configuration process is completed).  But it is also undisputed that the memories within the Accused Instrumentalities do not have any memory spaced allocated for the storage of "parameter sets" or command data received from the Peel servers when sold.  *See* UMF No. 13.  This is because while it is undisputed that the Accused Instrumentalities are sold with the Android-based

Sense TV application, the Windows-based Sense TV application, or the Peel Smart Remote application, it is also undisputed that those applications cannot be used on the Accused Instrumentalities to control external devices until a user completes a configuration process by connecting the Accused Instrumentalities over the Internet to Peel's servers, selecting a specific device to control, and downloading command data for that device from Peel's server.  UMF Nos. 5, 6, 12, and 13.  Until such configuration process occurs, it is undisputed that the Accused Instrumentalities do not contain any "parameter sets" and do not have any memory space allocated to store such parameter sets.

The mere capability of the Accused Instrumentalities to be configured to store parameter sets is not sufficient to prove infringement.  This Court has consistently held that "configured to" in fact "require[s] not merely being capable of being configured, but rather being actually configured."  *SIPCO, LLC v. Amazon.com, Inc*, No. 2:08-CV-359-JRG, 2012 WL 5195942, at *56 (E.D. Tex. Oct. 19, 2012); *see also SIPCO, LLC v. ABB, Inc.*, No. 6:11-CV-0048 LED-JDL, 2012 WL 3112302, at *10-11 (E.D. Tex. Jul. 30, 2012) (holding that the term "memory configured to" "requires that the memory is actually programmed or configured to store the data").[1]  Mr. Griffin opines that the "memory device" limitation is satisfied because the Accused Instrumentalities include memory that is "**capable** of being configured" to store a plurality of parameter sets. Selinger Decl., Ex. K at 158:6-160:11 (emphasis added).  HTC Corp. does not dispute that the memory of the Accused Instrumentalities is capable of being configured.  *See* UMF No. 13.  But mere capability to store parameter sets is not sufficient.  The Accused Instrumentalities must be

---

[1] *See also Solocron Media, LLC v. Verizon Comm's, Inc.*, No. 2:13-CV-1059-JRG-RSP, 2015 WL 1011310, at *12 (E.D. Tex. Mar. 4, 2015) (following *SIPCO, LLC v. Amazon.com, Inc.*); *Aspex Eyewear v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012) ("adapted to" construed to mean "configured to," which requires that the device be actually so configured, not merely capable of configuration).

"actually configured" to store parameter sets and the undisputed facts demonstrate that they are not.  Because the Accused Instrumentalities as sold are not "actually configured" to store a plurality of parameter sets, summary judgment of non-infringement should be entered on all Asserted Claims.

**B.**      **Salazar has failed to show that the Accused Instrumentalities include the claimed "infra-red transceiver" capable of bi-directional communication.**

Summary judgment of non-infringement should be entered on all Asserted Claims because the Accused Instrumentalities do not include the claimed "infrared transceiver."  All of the Asserted Claims require an "infra-red [("IR")] frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices."  The term "said external devices" in this limitation refers back to "a plurality of external devices" recited in the preamble.  *See* '467 patent at 25:57-59 (preamble of claim 1).  Because the claimed IR transceiver transmits to "said external devices" **and** receives from the **same** "said external devices," Salazar must show that the Accused Instrumentalities include an IR transceiver capable of bi-directional IR communication with at least two external devices.  It is insufficient that a transceiver transmits to one external device and receives from a different device.  The claim language requires that an accused IR transceiver must be capable of transmitting to at least two separate external devices and receiving from the **same** at least two external devices.  The Accused Instrumentalities do not have such an IR transceiver.

In fact, summary judgment of non-infringement should be granted because Salazar has failed to show that the Accused Instrumentalities include an IR transceiver that transmits IR signals to **and** receives IR signals from even one external device, let alone a plurality of external devices. Mr. Griffin opines that "[t]he accused HTC One phones have an IR transceiver for transmitting IR signals to external devices, and receiving IR signals from external devices using infrared frequency

signals." Selinger Decl., Ex. F at 12. Mr. Griffin merely identifies generic, unspecified "televisions, cable TV boxes, and other devices" as the external devices. *Id.* at 2. He has not, however, identified any specific external devices with which the Accused Instrumentalities as sold could bi-directionally communicate. Mr. Griffin's conclusory opinions merely show that the Accused Instrumentalities could transmit IR signals and receive IR signals—which HTC Corp. does not dispute. But that opinion falls well short of Salazar's infringement burden to provide evidence that the Accused Instrumentalities could transmit IR signals to and receive IR signals from the **same** external devices. Accordingly, summary judgment of non-infringement of all Asserted Claims should be granted.

Mr. Griffin's "demo application" does not show direct infringement by the Accused Instrumentalities because it constitutes a clear "modification." Apparatus claims, like the Asserted Claims here, are not directly infringed if the accused products must be modified to utilize the claimed function. *See Nazomi Comm'ns v. Nokia Corp.*, 739 F.3d 1339, 1345-46 (Fed. Cir. 2014) (affirming summary judgment of non-infringement because "[t]he purchase and installation of [software] clearly constitutes a 'modification' of the accused products"). It is undisputed that the Griffin "demo application" was not included in any Accused Instrumentality as sold. UMF No. 14. It is also undisputed that the "demo application" was developed by Mr. Griffin's colleague during the course of this lawsuit. *Id.* As a result, the development and installation of the demo application "clearly constitutes a modification" of the Accused Instrumentalities, and Salazar cannot rely on it to avoid summary judgment of non-infringement. *See Nazomi Comm'ns*, 739 F.3d at 1345-46; *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement."); *High Tech Med. Instrumentation, Inc. v. New*

*Image Indus., Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (stating that the fact that the accused device could be altered in a way that satisfies the claim term did not lead to infringement).

      **C.**      **Salazar cannot show that the Accused Instrumentalities include the claimed "transceivers" that communicate "in accordance with said communication protocols."**

Summary judgment of non-infringement should be entered on all Asserted Claims because the Accused Instrumentalities do not include a transceiver that operates "in accordance with said communication protocols." The Asserted Claims require a microprocessor that creates "a plurality of reprogrammable communication protocols."[2] They also require an IR transceiver "for transmitting to said external devices and receiving from said external devices, **infra-red frequency signals in accordance with said communications protocols**." Because the IR transceiver in the Accused Instrumentalities does not communicate in accordance with **each and every** accused communication protocol, the Accused Instrumentalities do not infringe.

The IR transceiver in the Accused Instrumentalities does not communicate in accordance with RF protocols. UMF No. 15. Mr. Griffin identifies the "plurality of reprogrammable communication protocols" as including RF communication protocols (specifically, Bluetooth, Wi-Fi, and NFC protocols) and unspecified IR communication protocols:

---

[2] Specifically, the "microprocessor" limitation of each asserted independent claim recites:

> a microprocessor for generating a plurality of control signals used to operate said system, **said microprocessor creating a plurality of reprogrammable communication protocols**, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices.

> **said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices**
>
> The microprocessor in the HTC Smart Phones creates a plurality of reprogrammable communications protocols for transmission to external devices. For example, HTC One phone's microprocessor software uses the HTC One phone's built-in Bluetooth[10] [11] transceiver to implement protocols[12] [13] [14] to communicate wirelessly with

> Bluetooth enabled devices.[15] [16] [17]
>
> Likewise, HTC One phone microprocessor software uses the HTC One phone's built-in Wi-Fi transceiver to implement protocols to communicate wirelessly with Wi-Fi enabled devices.[18] [19] The HTC One phones also employ NFC connectivity to implement NFC[20] protocols.[21] The HTC microprocessor software also uses the HTC's built-in USB port to implement protocols to communicate via a wired link with devices having a USB port such as a PC.[22]
>
> Further, the HTC microprocessor software enables applications such as the HTC Sense TV application[23] [24] to implement IR communication protocols to control a wide variety of televisions, cable TV boxes, and other devices.[25] [26] HTC communication protocols are configured to be reprogrammed by for example employing the HTC One phone's IR learning functions to create a plurality of reprogrammable IR communication protocols.[27] [28] Reprogramming of protocols may also be accomplished by updating the operating system software, by installing new or different applications, or by updating applications.

Selinger Decl., Ex. F at 1-2. Mr. Griffin then *ipse dixit* opines that an IR transceiver in the Accused Instrumentalities sends and receives "infrared frequency signals in accordance with said communications protocols." *Id.* at 13.  It is undisputed, however, that the IR transceiver in the Accused Instrumentalities cannot send or receive signals in accordance with the Bluetooth, Wi-Fi, or NFC communication protocols.  UMF No. 15.  Salazar has failed to show that the IR transceivers in the Accused Instrumentalities send infra-red frequency signals "in accordance with" **each** of

"said plurality of reprogrammable communication protocols" identified by Mr. Griffin.  Summary judgment of non-infringement of all the Asserted Claims should therefore be granted.

Claim 2 (along with claims 3 and 4 depending therefrom) also requires a RF transceiver "for transmitting to said external devices and receiving from said devices, radio frequency signals … **in accordance with said communication protocols**."  In other words, the RF transceiver must transmit and send signals in accordance with the **same** communication protocols identified for the "microprocessor" limitation of claim 1.  For the "RF transceiver" limitation, Mr. Griffin opines that the Accused Instrumentalities include "a number of" RF transceivers that communicate in accordance with RF-based protocols.  Selinger Decl., Ex. F at 13-15 (identifying cellular network transceivers, Wi-Fi transceiver, Bluetooth transceiver, and NFC transceiver).  As with the IR transceiver, it is undisputed that the RF transceivers in the Accused Instrumentalities do not transmit and receive signals in accordance with IR communication protocols.  UMF No. 16.  As Salazar has failed to show that the RF transceivers in the Accused Instrumentalities transmit and receive radio frequency signals "in accordance with" **each** of the identified communication protocols, summary judgment of non-infringement of claims 2-4 should be granted.

As a result, summary judgment of non-infringement of all Asserted Claims should be granted because the Accused Instrumentalities do not include transceivers that communicate "in accordance with said communication protocols."

**D.**     **The Accused Instrumentalities do not "create" or "generate" communication protocols as a matter of law.**

The Asserted Claims require the claimed "microprocessor" to "creat[e] a plurality of reprogrammable communication protocols, for transmission to said external devices" (element 1[a]) and "generat[e] a communication protocol in response to said user selections" (element 1[c]). It is undisputed that a "communication protocol" is a set of rules that allow devices to communicate

with each other.  *See* Selinger Decl., Ex. F at 2 ("A protocol establishes the communication rules for communicating with a device such as an external device.").  Salazar, therefore, must show that the Accused Instrumentalities include a microprocessor that "creates" and "generates" the communication rules for communicating with a plurality of external devices.

HTC Corp. is entitled to judgment as a matter of law because the Accused Instrumentalities implement pre-existing communication protocols and do not "create" or "generate" the communication rules for those protocols.  It is undisputed that the communication rules for the accused, unspecified IR protocols are created by third-parties—not HTC Corp. or the Accused Instrumentalities.  UMF No. 17.  It is also undisputed that the communication rules for the identified RF protocols are created by third-party standards bodies—not HTC Corp. or the Accused Instrumentalities.  *Id.*  As a result, the Accused Instrumentalities do not "create" or "generate" the IR protocols because they do not create the associated communication rules or bring those protocols into existence.  Courts have routinely held that the plain and ordinary meaning of "creating" and "generating" requires bringing something into existence.  *See Trintec Indus., Inc. v. Top-U.S.A. Corp*, 295 F.3d 1292, 1296-97 (Fed. Cir. 2002) (construing "creating" to "require more than simply using the computer as a conduit to convey information," rather it requires "a substantive addition or modification of the artwork in the computer").[3]  Here, Salazar has failed to show that the Accused Instrumentalities do more than simply implement IR protocols and summary judgment of non-infringement for all the Asserted Claims should be granted.

---

[3] *See also O2 Micro Int'l Ltd. v. Samsung Elecs. Co.*, No. 2:04-CV-323,  2006 WL 1804616, at *8 (E.D. Tex. Jun. 28, 2006) (construing "generating" to mean "bringing into existence"); *IAP Intermodal, LLC v. Nw. Airlines Corp.*, No. 2:04-CV-65, 2005 WL 6217423, at *8-9 (E.D. Tex. Sept. 7, 2005) (construing "creating" to mean "forming or making" and "generating" to mean "producing"); *Reese v. Samsung Telecomm'ns Am., L.P.*, No. 2:05-CV-415-DF, 2006 WL 6112195, at *12-13 (E.D. Tex. Dec. 5, 2006) (construing "generating" to mean "creating").

### E.      Salazar cannot show that the accused "microprocessor" carries out each and every claimed function.

HTC Corp. is entitled to summary judgment of non-infringement because the Accused Instrumentalities do not infringe the "a microprocessor" limitations of the Asserted Claims.  Each of the asserted independent claims requires "a microprocessor" that is responsible for specific functions described in the remainder of the claim.  Specifically, the claimed "microprocessor" of each Asserted Claim is responsible for (1) "generating a plurality of control signals used to operate said system," (2) "creating a plurality of reprogrammable communication protocols," (3) "recreat[ing] a desired command code set" from "a plurality of [retrieved] parameter sets," and (4) "generating a communication protocol in response to said user selections."

The law requires that, regardless of whether "a microprocessor" is one microprocessor or multiple microprocessors, the accused microprocessor(s) must be able to perform **all** of the functions associated with the claimed "a microprocessor."  *See* In re *Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016).  In re *Varma* involved the appeal of a claim construction from the Patent Trial and Appeal Board of the Patent and Trademark Office (the "Board"), in which the Board interpreted the claim phrase "a statistical analysis request corresponding to two or more selected investments." *Id.* at 1358.  The Board had concluded that the claim would be satisfied even if two requests would be necessary to accomplish an analysis of "two or more investments."  *Id.*.  The Federal Circuit rejected the Board's decision because the Board had focused on the indefinite article "a" in the phrase "a statistical analysis," rather than on the claim language that follows. *Id.* at 1362-63.  The Federal Circuit reasoned:

> [T]he question is not whether there can be more than one request in a claim-covered system: there can. Rather, the question is whether 'a' can serve to negate what is required by the language following 'a': a 'request' (a singular term) that 'correspond[s]' to 'two or more selected investments.'  It cannot.

*Id.*  The Federal Circuit analogized this principle as follows:  "For a dog owner to have 'a dog that rolls over and fetches sticks,' it does not suffice that he have two dogs, each able to perform just one of the tasks."  *Id.* at 1363.  Thus, the Federal Circuit concluded:

> In the present case, no matter how many requests there may be, no matter the variety of the requests the system may receive, the system must be adapted to receive a request that itself corresponds to at least two investments.

*Id.*

The Accused Instrumentalities here do not infringe the Asserted Claims because they do not contain a microprocessor capable of performing each and every one of the required functions. Mr. Griffin identifies the claimed "microprocessor" for the accused HTC One M7 as the "Qualcomm Snapdragon 600, quad-core, 1.7 GHz microprocessor" ("Snapdragon 600").[4] Selinger Decl., Ex. F at 1.  As a result, the Snapdragon 600 must perform each of the claimed microprocessor functions, including the "recreate a desired command code set" function.[5] According to Salazar's own expert, a "command code set" is a "set of signals that are the after-modulated signal."  Selinger Decl., Ex. K at 174:2-175:1.  It is undisputed that it is the MAXQ614 in the Accused Instrumentalities—not a generic "microprocessor" or the Snapdragon 600—that creates the modulated IR signals (or "after-modulated signals") for transmission.  UMF Nos. 18-19.  Specifically, the MAXQ614 microcontroller generates the IR carrier waveform and modulates the carrier waveform with the command data.  *Id.*  Because the MAXQ614 "recreates" the alleged desired command code set, Salazar has failed to show any microprocessors capable of performing

---

[4] Mr. Griffin does not identify the accused "microprocessor" in the HTC One M8, One M8 for Windows, or One M9 Accused Instrumentalities, but merely identifies a generic microprocessor in these devices.

[5] HTC. Corp disputes that the Accused Instrumentalities "recreate command code sets" but, for purposes of this Motion, does not dispute Salazar's allegation that the Accused Instrumentalities "recreate command code sets."

each of the required functions.  And so summary judgment of non-infringement should be entered on all Asserted Claims.

## II.     HTC Corp. Is Entitled To Summary Judgment Of No Indirect Infringement, No Willful Infringement, And No Infringement Under The Doctrine Of Equivalents.

The Court should grant summary judgment of no indirect infringement, no willful infringement, and no infringement under the doctrine of equivalents because Salazar has failed to prove each claim.

### A.     Salazar cannot prove the "knowledge" element of indirect infringement because HTC Corp. did not have notice of the '467 Patent until after it expired.

"[L]iability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015) (internal quotations omitted) .  "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Id*. And the patentee always bears the burden to show the underlying direct infringement for each instance of indirect infringement. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement.").  Contributory infringement also requires that the patent owner "show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (internal quotations omitted).

Salazar's operative complaint asserts induced infringement but not contributory infringement.  UMF 27-28.  HTC Corp. did not have notice of any alleged infringement or of the '467 Patent itself before Salazar filed his complaint in 2016, by which time the '467 Patent had already expired.  UMF Nos. 20-22.  For these reasons alone, HTC Corp. is entitled to partial

19

summary judgment of no indirect infringement.  *See Commil*, 135 S.Ct. at 1926 (requiring that defendant knew of the patent to indirectly infringe).

Summary judgment of no indirect infringement should be granted for two additional reasons.  First, Mr. Griffin failed to identify any evidence of underlying acts of direct infringement by third parties.  UMF No. 27; *Joy Techs., supra*.  Second, Mr. Griffin failed to opine that any of the Accused Instrumentalities lack substantial non-infringing uses.  UMF No. 28; *Cross Med. Prods., supra*.  For each of these reasons also, HTC Corp. is entitled to summary judgment of no indirect infringement.

### B.      Salazar cannot prove the "culpable behavior" element of willful infringement because HTC Corp. did not have notice of the '467 Patent before it expired.

In *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, the Supreme Court held that § 284 contains no explicit limit or condition on when a district court may award enhanced damages, but instead allows courts to "punish the full range of culpable behavior."   136 S. Ct. 1923, 1931, 1933 (2016).   This "sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate."  *Id.* at 1932.  Enhanced damages, however, are generally reserved for an "egregious case of misconduct beyond typical infringement," such as those "typified by willful misconduct."  Culpability is generally measured against the knowledge of the actor at the time of the challenged conduct.  *Id.* at 1933.

HTC Corp. is entitled to summary judgment of no willful infringement because HTC Corp. could not have acted with wanton disregard of Mr. Salazar's patent rights.  *See Halo*, 136 S.Ct. at 1933.  Given that it had no notice of the '467 Patent until after it expired, UMF Nos. 20-22, HTC Corp. could not have acted in a way that could be described as "willful, wanton, malicious, bad-

faith, deliberate, consciously wrongful, flagrant, or – indeed – characteristic of a pirate." *Halo*,
136 S. Ct. at 1932.

      **C.**      **Salazar cannot show infringement under the doctrine of equivalents because
he failed to proffer supporting expert opinion on "insubstantial differences."**

Summary judgment of non-infringement under the doctrine of equivalents should be
granted because Mr. Griffin failed to offer the required expert opinions.  Salazar was required to
provide "particularized testimony and linking argument on a limitation-by-limitation basis that
created a genuine issue of material at as to equivalents."  *See AquaTex Indus.*, 479 F.3d at 1328-
29.  "Generalized testimony as to the overall similarity between the claims and the accused
infringer's product or process will not suffice."  *Id.* at 1328 (quoting *Texas Instruments, Inc. v.
Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)).  Mr. Griffin's cover report
states that he provides a doctrine of equivalents analysis, but the Griffin Report does not provide
any "particularized testimony."  In the right-hand column of his Exhibit C, Mr. Griffin provides
conclusory assertions that each claim element of every Asserted Claim is both literally infringed
and infringed under the doctrine of equivalents, simply by placing the same "L;D/E" designation
in each and every row of his charts.  UMF No. 26.  Mr. Griffin, however, provides no opinion or
linking argument in the cover report or Exhibit C as to any purportedly insubstantial differences
between the claimed invention and the Accused Instrumentalities.  *Id.*  Because Salazar failed to
provide the necessary expert opinions and arguments, HTC Corp. is entitled to summary judgment
of non-infringement under the doctrine of equivalents.  *See AquaTex Indus.*, 479 F.3d at 1326,
1328-29.

III.     **HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For The HTC One M9 And HTC One M8 For Windows Because Salazar Failed To Provide Supporting Expert Testimony.**

Summary judgment of non-infringement should be entered for all assertions against the HTC One M9 and One M8 for Windows because Salazar failed to provide expert testimony showing infringement.  *See Centricut*, 390 F.3d at 1369-70 (stating expert testimony typically necessary in cases involving complex technology).  In his Exhibit C, Mr. Griffin identified and analyzed the Sense TV application as infringing structure within the Accused Instrumentalities. But the written infringement analysis and opinions make no mention of the Peel Smart Remote application used exclusively in the One M9 (*see* UMF Nos. 7, 9) or the Windows-based Sense TV application on the One M8 for Windows (*see* UMF No. 10), therefore, failing to provide supporting argument for his conclusory opinions.

Mr. Griffin mentions both the Sense TV application and the Peel Smart Remote application in his cover report, but wholly fails to opine that the Peel Smart Remote application infringes. UMF No. 7.  Exhibit C to the cover report opines only that the "Sense TV application" is the structure within the Accused Instrumentalities that allegedly meets several limitations of the independent claims.  Mr. Griffin's cover report, however, does not provide any opinion or analysis indicating that the Peel Smart Remote application satisfies any of the claim limitations.  UMF No. 9.  As a result, the Court should grant partial summary judgment of non-infringement for the HTC One M9.

Similarly, the Court should grant partial summary judgment of non-infringement by the HTC One M8 for Windows because Salazar failed to provide expert testimony showing infringement.  There is no mention of the Windows-based Sense TV application on the One M8 for Windows in either the Griffin cover report or its Exhibit C, nor does either provide any analysis of it.  Mr. Griffin did not review the source code of the Sense TV application for the One M8 for

22

Windows when it was produced for inspection.  UMF No. 10.  No pages of that source code were

provided to Salazar.  *Id*.  Neither Mr. Griffin's cover report nor his exhibit C addresses the source

code of the Windows-based Sense TV application.  UMF No. 11.  Mr. Griffin's failure to cite to

source code for the Windows-based Sense TV application or provide any infringement analysis

for this application warrants summary judgment of non-infringement by the One M8 for Windows.

*Centricut, supra.*

## IV.   HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For The Accused Instrumentalities Retailed By Sprint Because HTC Corp. Performed No Allegedly Infringing Acts In The United States.

Only a defendant that "makes, uses, offers to sell or sells" a patented invention **in the**

**United States**, or "imports into the United States" a patented invention can be a direct infringer.

35 U.S.C. § 271(a) (emphasis added);  *see also Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113,

1117 (Fed. Cir. 2004) ("[As] the U.S. Supreme Court explained nearly 150 years ago ... the U.S.

patent laws do not, and were not intended to, operate beyond the limits of the United States.")

(citations omitted).

HTC Corp. is a Taiwanese corporation.  The Accused Instrumentalities are manufactured

by HTC Corp. in Taiwan.  UMF No. 2.  On June 1, 2010, HTC America, Inc. became the importer

of record for HTC-brand smartphones sold in the U.S., including the Accused Instrumentalities,

taking title outside of the United States.  UMF No. 23.  Sales of the accused products began in

2013.  UMF No. 25.  After June 1, 2010, offers for sale and sales in the United States of the

Accused Instrumentalities retailed by Sprint were made by HTC America, Inc.  UMF No. 24.

Because it has committed no allegedly infringing acts in the United States, HTC Corp. cannot be

liable for direct infringement for the Accused Instrumentalities retailed by Sprint.  *See Pellegrini,*

*supra.*  HTC Corp. is therefore entitled to summary judgment that it did not infringe any asserted

claim of the '467 Patent for any of the Accused Instrumentalities retailed by Sprint.

**V.     HTC Corp. Is Entitled To Summary Judgment Of Non-infringement For Claims 10 And Its Dependents Because Salazar Has Stipulated To Dismiss These Claims.**

Salazar has stipulated to no longer assert claims 10, 14, 17, 23, 26, 31, and 32.  UMF No.

3.  Given Salazar's stipulation, summary judgment of non-infringement of claims 10, 14, 17, 23,

26, 31, and 32 of the '467 Patent should be granted.

## CONCLUSION

HTC Corp. is entitled to summary judgment for all of the foregoing reasons.

Dated: February 12, 2018                              Respectfully submitted by,

                                                      /s/ *Jerry R. Selinger*_____
                                                      Jerry R. Selinger
                                                      State Bar No. 18008250
                                                      Email: jselinger@pattersonsheridan.com
                                                      Trampas A. Kurth
                                                      State Bar No. 24055807
                                                      Email: tkurth@pattersonsheridan.com
                                                      PATTERSON + SHERIDAN, LLP
                                                      1700 Pacific Avenue, Suite 2650
                                                      Dallas, Texas 75201
                                                      Tel: 214.272.0957
                                                      Fax: 713.623.4846

                                                      /s/ *Fred I. Williams*_____
                                                      Fred I. Williams
                                                      TX Bar No. 00794855
                                                      Email: fwilliams@velaw.com
                                                      Mario A. Apreotesi
                                                      TX Bar No. 24080772
                                                      Email: mapreotesi@velaw.com
                                                      VINSON & ELKINS LLP
                                                      2801 Via Fortuna, Suite 100
                                                      Austin, Texas 78746
                                                      Tel: 512.542.8400
                                                      Fax: 512.542.8612

Todd E. Landis
TX Bar No. 24030226
Email: tlandis@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
Tel:  210.220.7700
Fax: 210.220.7716

Harry Lee Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas   75670
Tel: 903.934.8450
Fax: 903.934.9257

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

**CERTIFICATE OF SERVICE**

I certify that on February 12, 2018 a true and correct copy of the foregoing document was electronically filed with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing ("ECF") system of the court.  The attorneys of record who have consented in writing to accept notice as service of this document by electronic means are being served by a "Notice of Electronic Filing," sent by the ECF system.

*/s/ Fred I. Williams*_____
Fred I. Williams