# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-CV-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF JOE ANDREW SALAZAR'S SUR-REPLY IN OPPOSITION TO DEFENDANT HTC CORPORATION'S *DAUBERT* MOTION TO EXCLUDE THE OPINIONS AND TESTIMONY OF PLAINTFF'S DAMAGES EXPERT, <u>JUSTIN BLOK</u>**

Plaintiff Joe Andrew Salazar ("Mr. Salazar") file this Sur-reply in support of his Opposition

to the *Daubert* Motion to Exclude the Opinions and Testimony of Plaintiff's Damages Expert,

Justin Blok ("Motion") (Doc. No. 159) filed by Defendant HTC Corporation ("HTC") and shows:

### I.    Mr. Blok Properly and Reasonably Relied on the Opinions of Mr. Salazar's Technical Expert.

HTC challenges Mr. Blok's opinions on the basis that he relied on technical opinions that

were not included in the report of Roy A. Griffin III, Mr. Salazar's technical expert.  In advancing

this argument, HTC claims that Mr. Salazar's prior response to this Motion made no reference to

Mr. Griffin's report as support for Mr. Blok's opinions and that he even conceded Mr. Griffin's

opinions were undisclosed.  None of this is true. In addition to not making any such concession,

Mr. Salazar expressly disputed the assertion that Mr. Griffin's expert report failed to disclose the

opinions challenged by HTC. Paragraphs 49 through 51 of Mr. Griffin's report detailed the

similarities in the infrared ("IR") functionality provided by the Pronto add-on device and the

Accused IR Functionality integrated into HTC's accused smartphones.  Mr. Griffin's report clearly

expresses his opinion that the Pronto product provides the two-way IR functionality recited in the

asserted claims of the '467 Patent – albeit with certain described shortcomings when compared to

the fully integrated IR functionality in the HTC accused products.  *See* Griffin Report, ¶ 49-

51.  Nonetheless, HTC seems to believe it improper that Mr. Griffin also chose to orally discuss

his opinions in this regard with Blok as recited in Mr. Blok's report.  However, this Court's

decision in *Freeny v. Murphy Oil Corp.*, 2:13-CV-791-RSP, 2015 WL 11089599 (E.D. Tex. June

4, 2015) supports Mr. Salazar's assertion that this sort of communication between expert witnesses

provides an acceptably reliable foundation for their opinions. In *Freeny*, the defendant argued that

the plaintiff's damages expert's conclusions regarding the technical comparability of a certain

patent license at issue was predicated solely on discussions he had with the plaintiffs' technical

expert and that because the technical expert did not elaborate on those discussions, "[plaintiff's damages expert] should not be permitted to rely on an undisclosed opinion outside of his own expertise." *Id.* at *2.  In rejecting this argument, this Court found that the "[plaintiff's damages expert] had sufficient technical basis for his conclusions when relying on [plaintiff's technical expert's] assessment of the Skyline technology. Pursuant to the Federal Rules, '[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed....' FED. R. EVID. 703. Accordingly, [plaintiff's damages expert] is entitled to rely on his discussions with [plaintiff's technical expert] even if such discussions would be otherwise inadmissible." *Id.*

Moreover, HTC has not (and cannot) claim that it was blind-sided or prejudiced by Mr. Griffin's alleged failure to insert the exact words that he communicated to Mr. Blok in his expert report.  HTC was served with copies of both Mr. Blok's and Mr. Griffin's expert reports on December 29, 2017. HTC then took Mr. Griffin's deposition almost a month later, on January 23, 2018 and Mr. Blok's deposition the next day, followed by a second deposition of Mr. Griffin on February 9, 2018. HTC was well aware of what both plaintiff's experts' opinions were on this subject prior to taking any of these depositions yet chose not to question Mr. Griffin – at all – during either of his depositions and only barely so in Mr. Blok's deposition.  Either this was not important enough of an issue to question the witnesses about or it was intentionally done for strategic reasons so it could be later used as a basis for a motion to strike. Whatever the case, HTC knew exactly which technical opinions of Mr. Griffin that Mr. Blok was relying on. Accordingly, the alleged failure by Mr. Griffin to express those opinions to the degree of specificity required by HTC provides no legitimate reason for excluding any of Mr. Blok's opinions.

**II.**       **Mr. Blok Properly Apportioned Out Non-Patented Features in Determining the Incremental Value of the Accused IR Functionality**

2

HTC's continues to argue that Mr. Blok did not engage in the apportionment required to the reflect value of the Accused IR Functionality in HTC's accused smartphones which are multi-component devices that include numerous non-infringing features. But Mr. Blok did engage in the required apportionment by limiting his opinions solely to the incremental value attributable to the basic two-way IR functionality integrated into the accused smartphones.  Mr. Blok was able to determine this incremental value by analyzing the Pronto product, a third party add-on device available in the market that allows consumers to add IR remote control functionality to smartphones that do not have this feature integrated. *See* Blok Report, ¶ 76. The Pronto is a "next best alternative" device that provides benefits similar to the Accused IR Functionality taught by the '467 Patent and provides an indication of value of that functionality. *Id.* As noted in Mr. Blok's report, consumers are willing to pay between $15.00 and $99.99 for access to the similar – but inferior – IR capabilities that the Pronto provides and for that reason he believes at least $15.00 to be an accurate indication of value of the Accused IR Functionality. *Id.*

Nevertheless, HTC claims that Mr. Blok's focus on valuing the rudimentary two-way IR communication the Pronto product allows disregards the value of the non-infringing features of the Peel app and HTC Sense TV app that can be used with the Pronto product.  However, Mr. Blok has never opined that the Peel app or its predecessor Sense TV app were equivalent to the Accused IR Functionality. In fact, Mr. Blok worked to apportion out any value that may have been associated with any additional features those accompanying apps might provide in order to confine his analysis to estimating the incremental value of only the basic type of two-way IR functionality provided by the Pronto.  Blok Depo., pg. 47-48. Limiting his analysis to the value of the Pronto add-on device was appropriate in Mr. Blok's opinion because the sole purpose of the Pronto was to add two-way IR functionality to a smartphone that did not have this capability built in.  This

was the incremental value that Mr. Blok was attempting to apportion down and measure – not the value of two-way IR functionality plus the added value of any unique features contained in an app that could be used with the Pronto.  Blok Depo., pg. 46-49.

HTC's argument refuses to acknowledge the fact that consumers are purchasing the Pronto in order to gain the ability to utilize their smartphones to communicate with and control external devices via IR. Purchasers are not buying the Pronto so they can obtain access to the non-patented features provided by the Peel or Sense TV apps. They are buying the Pronto for the only feature it affords – adding two-way IR functionality to their smartphones.   Mr. Blok appropriately apportioned out the value of any non-infringing features and concentrated his analysis on estimating the incremental value associated with benefits provided by the Accused IR Functionality that was integrated into HTC's accused smartphones.

III.     **Mr. Blok's Analysis of the Relevant *Georgia-Pacific* Factors Produced a Reliable Opinion that Mr. Salazar and HTC Would Enter the Hypothetical Negotiation with Equal Bargaining Positions**

Lastly, HTC again claims – with no better arguments than before – that Mr. Blok has "no basis" for his opinion that the results of a hypothetical negotiation between Mr. Salazar and HTC would have resulted in an equal sharing of the economic benefits derived from incorporating the teachings of the '467 Patent into the accused products. However, even a cursory review of Mr. Blok's expert report plainly reveals that he conducted a thorough analysis of the parties to this litigation, the patent-in-suit, the accused products, the smartphone market in general and the specific niche of that market that pertained to smartphones possessing the ability to command and control external devices via IR communication. *See* Blok Report, ¶ 7-41. After gathering these facts, Mr. Blok applied them to each of the *Georgia-Pacific* factors in order to understand and assess the relative bargaining positions of the parties heading into the March 2013 hypothetical

4

negotiation. *See* Blok Report, ¶ 46-106. Although Mr. Blok and HTC's damages expert differ as to how these factors should be weighted and which party would have the greater negotiating leverage, they both use the same methodology to structure their respective analyses. And, although Mr. Blok believes that an analysis of these factors would have put Mr. Salazar in a stronger bargaining position than HTC, he conservatively reduces Mr. Salazar's position and increases HTC's to equalize them.  As discussed in Mr. Salazar' prior response to this motion, Mr. Blok plainly did not use the faulty methodology of the damages expert in *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 (Fed. Cir. 2014) in arriving at his reasonable royalty opinion.  Instead, Mr. Blok employed the same methodology that was used by the expert in *Summit 6, LLC v. Samsung Elecs. Co., Ltd.,* 802 F.3d 1283 (Fed. Cir. 2015) that was approved by the Federal Circuit. This explains why HTC's critique of Mr. Blok is not actually focused on his opinion that the parties would occupy equal bargaining positions at the time of the hypothetical negotiation but is simply a rehash of its complaint about Mr. Blok's utilization of the Pronto device as a determinant for estimating the incremental value of the Accused IR Functionality.

## CONCLUSION AND PRAYER

"[E]stimating a reasonable royalty and apportionment is never an exact science. At some level an expert must be allowed to rely on and use his or her judgment, provided the opinion is supported by facts and data." *PerdiemCo, LLC v. Industrack LLC*, No. 2:15-CV-726-JRG-RSP, 2016 WL 6611488, at *3 (E.D. Tex. Nov. 9, 2016). Adequate facts and data support Mr. Blok's opinion as to the reasonable royalty owed to Mr. Salazar by HTC and that opinion is reliable because Mr. Blok specifically tied to those underlying facts and data to an accepted methodology for determining a reasonable royalty.  HTC's *Daubert* Motion to Exclude the Opinions and Testimony of Plaintiff's Damages Expert, Justin Blok should therefore be denied.

Dated: March 22, 2018

Respectfully submitted,

Dariush Keyhani, Lead Attorney
New Jersey State Bar No. 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
dkeyhani@meredithkeyhani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909
Email: atindel@andytindel.com

J. Mark Mann
Texas State Bar No. 12926150
G. Blake Thompson
Texas State Bar No. 24042033
MT² LAW GROUP
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)
Email: mark@themannfirm.com
Email: blake@themannfirm.com

*Attorneys for Plaintiff Joe Andrew Salazar*

6

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 22nd day of March, 2018.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

_____

Andy Tindel

7