IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION**

In this patent case, Plaintiff Joe Salazar moves to exclude certain testimony of HTC Corporation's technical and damages experts. Pl.'s Mot. to Exclude Testimony of Christopher Bakewell [Dkt. # 162]; Pl.'s Mot. to Exclude Testimony of Andrew Wolfe [Dkt. # 164]. Having considered the parties' briefing with respect to each expert, the Court will deny both motions.

**I.    BACKGROUND**

Salazar accuses HTC Corporation of infringing U.S. Patent 5,802,467 by making and selling various models of smartphones. Second Am. Compl. [Dkt. # 44] ¶ 7. The '467 Patent relates to a system for two-way communication with appliances, such as intercoms, televisions, sound systems, and the like. *See, e.g.*, '467 Patent fig.1b. According to the patent, prior-art devices communicated with such appliances only using one-way communication, and usually with only one of an infrared (IR) signal or a radio frequency

(RF) signal. *Id.* at 1:18–50. Relative to the prior art, the '467 Patent considered full two-way communication directly with an appliance using IR or RF links to be significantly advantageous. *Id.* at 1:51–2:11.

Salazar's motions specifically relate to two limitations of the asserted claims. First, the claims require an IR transceiver, '467 Patent at 26:13–17, which Salazar calls "uniquely attractive" to consumers when fully integrated with "otherwise commonly available smartphone technology," Pl.'s Motion [Dkt. # 162] at 6. With respect to that limitation, Salazar contends both Christopher Bakewell (HTC's damages expert) and Dr. Andrew Wolfe (HTC's technical expert) reach improper conclusions about whether an "acceptable" non-infringing alternative must include an IR transceiver.[1] *See generally* Pl.'s Motion [Dkt. # 162] at 4–7; Pl.'s Motion [Dkt. # 164] at 8–9. Second, the claims require "a memory device . . . *configured to* store a plurality of parameter sets retrieved by [a] microprocessor." '467 Patent at 26:1–6 (emphasis added). As to that limitation, Salazar contends Wolfe's non-infringement analysis interprets "configured to" in a manner contrary to the Court's claim construction order. Pl.'s Motion [Dkt. # 164] at 5–7.

## II.   APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[1] In his replies, Salazar for the first time argues the proposed non-infringing alternatives were not available during the period of infringement. *See* Pl.'s Reply [Dkt. # 184] at 4–5; Pl.'s Reply [Dkt. # 186] at 4–5. The Court, however, rejects this argument as untimely given Salazar did not raise it until his reply briefs.

evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993).

District courts are accorded broad discretion in making Rule 702 determinations. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Although the Fifth Circuit has identified various factors the district court may consider, the common nature of these factors directs the trial court to consider as its ultimate inquiry whether the expert's testimony is sufficiently reliable, relevant, and non-prejudicial to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("[t]he trial court's role

as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system. . . . Thus, while exercising its role as a [gatekeeper], a trial court must take care not to transform a *Daubert* hearing into a trial on the merits") (quoting Fed. R. Evid. 702 advisory committee note). Instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant so as to be appropriate for the jury's consideration. *See Pipitone*, 288 F.3d at 249–50. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Finally, in addition to Fed. R. Evid. 702, courts should consider other applicable rules when assessing expert testimony. *Daubert*, 509 U.S. at 595. Fed. R. Evid. 703, for example, provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Id.* (quoting the rule). And Fed. R. Civ. P. 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* (quoting the rule).

### III. DISCUSSION

#### A. Salazar's Motion to Exclude Certain Testimony of Christopher Bakewell

Salazar first moves to exclude portions of Bakewell's testimony as wrongly

concluding non-infringing alternatives need not have (1) IR communications capabilities or (2) the learning capability and related lack of preprogrammed IR codes taught by the patent. Because Bakewell's alternatives do not provide some of the advantages of the claimed limitations, says Salazar, these alternatives are not "acceptable" and Bakewell's opinions concerning these alternatives should be excluded. *See generally* Pl.'s Motion [Dkt. # 162] at 4–7.

HTC counters that, "by definition, noninfringing products do not represent an embodiment of the invention," and "a noninfringing alternative need not have the patented feature in order to be deemed 'acceptable.'" HTC's Resp. [Dkt. # 173] at 2 (quoting *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2013 WL 5958178, at *2 (N.D. Cal. Nov. 7, 2013), and *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991)). According to HTC, Bakewell properly considers non-infringing alternatives that provide the alleged advantages of the purported invention because those alternatives wirelessly communicate with external devices. *Id.* at 3–6.

The concept of an "acceptable non-infringing alternative" relates to a lost-profits damage model. To recover lost profits, the patentee must show a "reasonable probability that, 'but for' infringement, it would have made the sales that were made by the infringer." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1380 (Fed. Cir. 2017) (quoting *Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001)). That, in turn, requires the patent owner to prove an absence of "acceptable" noninfringing substitutes. *Presidio Components*, 875 F.3d at 1380 (citing

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)). And although there are no bright-line rules for deciding "acceptability" of a noninfringing substitute, if the patent owner shows consumers specifically want devices with certain advantages, non-infringing alternatives cannot be "acceptable" without those advantages. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991).

But "acceptable non-infringing alternatives" don't play the same role in a reasonable-royalty determination. Rather, courts consider the *next-best* available alternative, which is not necessarily an "acceptable" alternative that precludes recovery of lost profits under *Panduit*. *See Grain Processing Corp. v. Am. Maize-Products Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999) ("[O]nly by comparing the patented invention to its next-best available alternative(s) . . . can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward . . . ."); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (considering "[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results").

With this distinction in mind, Salazar's motion fails on two counts. First, Bakewell's opinion doesn't relate to a lost-profits determination, so it doesn't matter whether the alternatives are "acceptable" under *Panduit*. Instead, the factfinder should consider the next-best alternative, regardless of whether that alternative would preclude recovery of lost profits under *Panduit*. Here, that next-best alternative, at least according to HTC, happens to lack IR capability and includes preprogrammed codes.

Second, even if next-best alternatives must be "acceptable" alternatives under *Panduit*, Salazar presents no evidence supporting his contention that devices without IR capability or with preprogrammed codes are not "acceptable." The absence of these limitations in Bakewell's alternatives does not make them unacceptable, *see Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2013 WL 5958178, at *2 (N.D. Cal. Nov. 7, 2013) ("a noninfringing alternative need not have the patented feature in order to be deemed 'acceptable'"), and Salazar presents no evidence consumers specifically want devices with IR capability or learning capability such that only non-infringing devices with those features would be "acceptable." Put simply, even if a next-best alternative in a reasonable-royalty determination must be "acceptable" under *Panduit*, Salazar hasn't met his burden of proving there are no acceptable non-infringing alternatives here.

**B.      Salazar's Motion to Exclude Certain Testimony of Dr. Andrew Wolfe**

Salazar next moves to exclude certain testimony of Dr. Andrew Wolfe, HTC's technical expert, for two reasons. First, Salazar contends Wolfe's opinion contradicts the Court's claim construction order. Pl.'s Motion [Dkt. # 164] at 5–7. Second, Salazar complains about Wolfe's conclusion that devices without IR or learning capability are "acceptable," *id.* at 8–9—i.e., the same arguments Salazar made with respect to Bakewell's report and addressed above.

Salazar's claim construction argument relates to the "configured to" language of the

"memory" limitation.[2] Salazar argues Wolfe improperly interprets "configured to" to mean "actually configured." *Id.* at 5 (citing Wolfe Rep. [Dkt. # 164-1] at 58). This, says Salazar, is contrary to the Court's claim construction order, which interpreted "configured to" as only requiring a capability rather than actual use. *Id.* at 5–6. HTC responds that Wolfe's application of "configured to" to his noninfringement analysis does not conflict with the Court's construction because the Court did not construe that term. Rather, the Court simply concluded the "microprocessor" limitation did not render the claim indefinite under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005). HTC says Wolfe's opinion is consistent with that interpretation because it does not require use of the claimed device for infringement. Def.'s Resp. [Dkt. # 174] at 4–5.

The Court agrees with HTC. Although "configured to" composed some of the disputed claim language, it was not construed. *See generally* Joint Cl. Constr. & Prehr'g Statement [Dkt. # 73]. Also, the parties' arguments about the "microprocessor" limitation concerned whether that limitation impermissibly includes both apparatus and use limitations. *See generally* Cl. Constr. Op. & Order [Dkt. # 108] at 15–22. Wolfe's opinion, however, pertains to when the allegedly infringing device comes into existence, not

---

[2] Claim 1, for example, requires "a memory device . . . *configured to* store a plurality of parameter sets retrieved by [a] microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets." '467 Patent at 26:1–6 (emphasis added).

whether use of the allegedly infringing device constitutes infringement.[3] Thus, Wolfe's opinion is not inconsistent with the Court's claim construction order, and this part of Salazar's motion should be denied.

The second part of Salazar's motion concerns Wolfe's opinions about noninfringing alternatives. Salazar reurges the same arguments he made in his motion to exclude Bakewell's testimony. *Compare* Pl.'s Motion [Dkt. # 164] at 8–9, *with* Pl.'s Motion [Dkt. # 162] at 4–7. The Court will therefore deny this part of the motion for the reasons set forth in Part III.A of this opinion.

* * *

For the foregoing reasons, the Court **DENIES** both Plaintiff's Motion to Exclude Testimony of Christopher Bakewell [Dkt. # 162] and Plaintiff's Motion to Exclude Testimony of Andrew Wolfe [Dkt. # 164].

**SIGNED this 28th day of March, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[3] In his reply, Salazar argues Wolfe's own deposition testimony shows user activity is required. Pl.'s Reply [Dkt. # 184] at 1–2. True, but Wolfe's position is that user activity is required to morph the device from non-infringing device to infringing by virtue of the post-sale configuration process. In other words, Wolfe's position is that the accused device does not satisfy the structural requirements of the claims (if at all) until the user does something. That's different from the issue considered by the Court during claim construction and addressed by the Federal Circuit in *IPXL Holdings*—indefiniteness of a claim that recites both an infringing device and a method of using that infringing device.