**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| JOE ANDREW SALAZAR,<br><br>       Plaintiff,<br><br>   v.<br><br>HTC CORPORATION,<br><br>       Defendant. | Civil Action No. 2:16-cv-01096-JRG-RSP<br><br>JURY TRIAL DEMANDED<br>**PATENT CASE** |

**<u>HTC CORPORATION'S RESPONSE IN OPPOSITION OF PLAINTIFF JOE ANDREW SALAZAR'S SECOND MOTION TO COMPEL DEFENDANT HTC CORPORATION TO COMPLY WITH THE COURT'S ORDER AND PRODUCE 30(b)(6) WITNESSES AND HTC CORPORATION'S CROSS-MOTION FOR SANCTIONS AND TO TERMINATE THE DEPOSITION UNDER RULE 30(D)(2-3)</u>**

Fred I. Williams
State Bar No. 00794855
Email: fwilliams@velaw.com
Mario A. Apreotesi
State Bar No. 24080772
Email: mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: 512.542.8400
Fax: 512.542.8612

Todd E. Landis
State Bar No. 24030226
Email: tlandis@velaw.com
Eric J. Klein
State Bar No. 24041258
eklein@velaw.com
VINSON & ELKINS, LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.220.7716

Harry Lee Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

ATTORNEYS FOR DEFENDANT HTC CORPORATION

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | INTRODUCTION ................................................................................................... | 1 |
| **II.** | MR. KEYHANI REPEATEDLY REPRESENTED TO THE COURT THAT HE WANTED TO EXAMINE A RULE 30(B)(6) WITNESS ON "IR FUNCTIONALITY." ................................................................................................ | 2 |
| **III.** | TO ENSURE SALAZAR GOT ALL THE DISCOVERY HE NEEDED FROM THE DEPOSITION, HTC CORP. TRIED TO CLARIFY THE SUBJECTS ON WHICH HE SOUGHT DEPOSITION TESTIMONY. ...................................................... | 3 |
| **IV.** | HTC CORP. HAS NO CORPORATE KNOWLEDGE ABOUT THE INTERNAL WORKINGS OF THE PEEL APPLICATION, WHICH WAS PRESENT ON THE ACCUSED HTC ONE M9. ................................................................................... | 5 |
| **V.** | HTC CORP.'S OBJECTIONS WERE PROPER. ............................................... | 6 |
| **VI.** | NO SANCTIONS AGAINST HTC CORP. ARE JUSTIFIED. .......................... | 7 |
| **VII.** | THE DEPOSITION SHOULD BE TERMINATED WITH FEES AND COSTS AWARDED TO HTC CORP. UNDER RULE 30(D)(2)-(3). ............................. | 8 |
| **VIII.** | CONCLUSION ..................................................................................................... | 9 |

# TABLE OF AUTHORITIES

**Cases**

*Toon v. Wackenhut Corrections Corp.*,
  250 F.3d 950 (5th Cir. 2001) .................................................................................................. 8

**Rules**

Fed. R. Civ. P. 30 ............................................................................................................................ 1
Fed. R. Civ. P. 30(b)(4)-(5) ............................................................................................................ 8
Fed. R. Civ. P. 30(b)(6) ........................................................................................................ passim
Fed. R. Civ. P. 30(c)(2) .................................................................................................................. 6
Fed. R. Civ. P. 30(d)(2)-(3) ........................................................................................................ 8, 9

**I.     INTRODUCTION**

Defendant HTC Corporation ("HTC Corp.") opposes Plaintiff Joe Andrew Salazar's second motion to compel HTC Corp. to comply with the court's order and produce Rule 30(b)(6) witnesses and for sanctions (the "Motion," Dkt. No. 215). The record on this Motion demonstrates that Plaintiff's lead counsel continues a pattern of regrettable conduct in this case. *See, e.g.*, Dkt. 142 at 1-2 (Mr. Keyhani making dozens of speaking objections during deposition of Salazar's expert witness). The Motion is not merely unmeritorious: it is based on misleading half-truths and other clear misrepresentations to the Court.

Mr. Keyhani's lack of planning and preparation for the deposition, his unwillingness to abide by relevant standards of practice (and Rule 30) in noticing and conducting the deposition, and his failure to meet-and-confer about the overbroad nature of one deposition topic all resulted in HTC Corp. spending thousands of dollars to attend and prepare witnesses for a deposition that appears to have been conducted by Salazar's counsel for the primary purpose of filing the Motion to complain about the deposition.

Salazar's refusal to conduct the deposition properly (and disinterest in examining the witnesses effectively) led to his failure to ask necessary, fundamental, and foundational questions to determine the extent of HTC Corp.'s knowledge on the discovery he sought. Defense counsel was able to, and did, ask those fundamental questions on redirect, and the witnesses' knowledge and preparation is demonstrated in their answers to those questions. Ex. 1 at 56:5-63:9. Salazar's counsel then asked no follow-up questions before adjourning the deposition.

HTC Corp. should not be punished for the failures of Plaintiff's lead counsel. Given the record established here, HTC Corp. respectfully requests that the Court terminate the deposition and award HTC Corp. its fees and costs incurred in preparing the witnesses for deposition, defending the witnesses at the deposition, and responding to the Motion.

1

## II. MR. KEYHANI REPEATEDLY REPRESENTED TO THE COURT THAT HE WANTED TO EXAMINE A RULE 30(B)(6) WITNESS ON "IR FUNCTIONALITY."

Given the remarkable breadth of topic 13, the Court during the February 8 hearing found that topic 13 overlapped with other topics in Salazar's original 30(b)(6) notice. As a result, the Court inquired how the previous deposition witnesses had not already covered topic 13 when they testified on the overlapping topics:

> COURT: My issue is that there are definitely overlaps between the different topics, and if you had a witness who spoke to the technical and design features of the accused devices, why wouldn't that also cover topic 13?

Motions Hearing (Feb. 8, 2018) Tr. at 92:7-10. In response, Mr. Keyhani stated: "They provided us witnesses that they said this guy can talk about hardware. This guy can talk about software. The problem is they produced no witness I just ask—**we could just ask, okay how does the IR functionality work?** . . ." *Id.* at 92:19-22 (emphasis added).

The Court then inquired further: "Well, did you ask the witness who was there on the hardware issue how it works?" *Id.* at 92:25-93:1. In response, Mr. Keyhani complained that "nobody was testifying on behalf of the company as to how this integrated functionality operated. It was sort of compartmentalized by somebody who would only talk about hardware issues on behalf of the company and somebody would only talk about software issues." *Id.* at 93:7-11. So Mr. Keyhani then reiterated his request for a witness to talk about IR functionality: "I just want to speak to somebody that I can just ask candid questions just to clarify so at trial we're not surprised by some information that we didn't know about. **I just want to be able to ask, how does this— how does this IR work? How does it do this?**" *Id.* at 93:14-18 (emphasis in original).

Because Mr. Keyhani represented to the Court at that February 8 hearing that his issue was wanting a witness to discuss the IR functionality within the Accused Products, HTC Corp. produced two witnesses—Mr. Robby Ho and Mr. Bryan Wu—who were prepared to discuss all

2

of the relevant hardware and software functionality within the Accused Products on which HTC Corp. has corporate knowledge. Mr. Ho was fully prepared to discuss the IR capabilities as they pertain to the hardware used in the IR functionality, and Mr. Wu was fully prepared to discuss the software aspects of the IR capabilities of the Accused Products. Ex. 1 at 56:11-22, 63:4-9. And in an effort to accommodate Mr. Keyhani even further, HTC Corp. acceded to his unusual request to question both witnesses simultaneously so that he could go back and forth between the witnesses to cover all aspects of the IR functionality in tandem.

HTC Corp.'s witnesses were fully prepared for all of the questions that Mr. Keyhani told the Court he wanted to ask. It is telling that the Motion cites to just one question relating to IR functionality that the witnesses did not address: a question seeking details of some third-party technology included in the HTC One M9 phone, which is beyond the knowledge of the corporation (as discussed separately below).

### III. TO ENSURE SALAZAR GOT ALL THE DISCOVERY HE NEEDED FROM THE DEPOSITION, HTC CORP. TRIED TO CLARIFY THE SUBJECTS ON WHICH HE SOUGHT DEPOSITION TESTIMONY.

Deposition topic 13 reads as follows: "All technical and design features and all functional and operational elements of the Accused Devices." Ex. 2 (deposition notice). The topic as written covers <u>every hardware component</u> and <u>every software component</u> within the Accused Products. As Mr. Ho and Mr. Wu both testified, that inquiry would cover thousands of components, and no one person at HTC Corp. could ever have knowledge of all of those components. Ex. 1 at 57:13-58:4.

To avoid a situation where Mr. Keyhani tried to use the overly broad and unduly burdensome topic as a vehicle to find some immaterial issue on which the witnesses were unable to provide testimony, well before the deposition HTC Corp. asked Mr. Keyhani to provide a general subtopic list of any subject matters on which he wanted a witness prepared to answer:

3

> Darius,
>
> So that we can prepare our witnesses for next week's depositions and ensure you get the information you need, please let us know in general terms if there are particular areas or issues you want to cover with the witnesses from topics 11, 13, and 14. For example, topic 13 covers "all technical and design features and all functional and operational elements of the Accused Devices" and is worded broadly enough to encompass all aspects of the Accused Devices.
>
> We want to make sure that the witness(es) are prepared on any specific aspects of the accused products on which you intend to conduct your examination. We are only asking for general topics, not specific questions. We believe this will help streamline the process for all involved. We are also happy to confer by phone if that would be helpful to you.
>
> Thanks,
> Mario

Ex. 3.

Unfortunately, Mr. Keyhani did not respond. And so defense counsel traveled to Taiwan and prepared the witnesses based, in part, on Mr. Keyhani's previous representations to the Court about wanting to ask generally about IR functionality, but without the benefit of any additional assistance from Salazar about which of the thousands of components he wanted answers. *See* Motions Hearing (Feb. 8, 2018) Tr. at 92:19-22, 93:14-18.

Salazar now complains that the witnesses were unprepared because they did not testify about a product called HTC Media Link. Dkt. 215 at 2-3. The HTC Media Link is not an accused product. *See* Ex. 4 (Media Link user guide) at 5 (describing HTC Media Link as an accessory that plugs into a user's TV). And HTC Corp. was not on notice that Salazar was interested in questioning the witnesses about that product, especially because Topic 13 is directed at the Accused Devices. Avoiding this situation is why HTC Corp. originally asked Mr. Keyhani to confer and share additional information before the deposition. Salazar's counsel had a full and fair opportunity to advise that he wanted a witness to testify about the unaccused HTC Media Link product, but he chose to ignore HTC Corp.'s attempt to identify unforeseen topics before the deposition. Salazar's complaint about HTC Media Link is thus of his own making.

**IV. HTC CORP. HAS NO CORPORATE KNOWLEDGE ABOUT THE INTERNAL WORKINGS OF THE PEEL APPLICATION, WHICH WAS PRESENT ON THE ACCUSED HTC ONE M9.**

Salazar's only other real complaint is that Mr. Wu did not testify about the third-party Peel Smart Remote app, which was present on the accused HTC One M9 phone. As Mr. Wu testified, HTC Corp. does not have knowledge of the internal workings of the Peel Smart Remote app. Ex. 1 at 58:5-15, 59:13-24. In fact, Mr. Wu testified that HTC Corp. only receives binary code (not readable by a human) for the Peel Smart Remote app. *Id.* at 58:13-59:13. Mr. Wu also testified that the binary code does not provide any insight into how the Peel Smart Remote app functioned. *Id.* at 59:14-19.

HTC Corp. was not required to manufacture corporate knowledge for the deposition. Salazar had every opportunity to discover the inner workings of the Peel Smart Remote app when he deposed a corporate representative of Peel. And Salazar could have subpoenaed documents from Peel, but he did not. In fact, it was HTC Corp. that subpoenaed and deposed Peel. Ex. 5 at 9:10-23. Mr. Keyhani attended that deposition (again by phone) and asked questions of Peel's director of engineering. During that deposition, Peel's witness confirmed the accuracy of Mr. Wu's testimony that is now disputed by Salazar. *See id.* at 14:11-15, 24:11-25:17, 29:13-21. Having failed to prosecute and prepare his case, Salazar's counsel now complains about his inability to get testimony from HTC Corp. that is beyond the company's knowledge.

To be clear, HTC Corp. provided ample testimony completely undermining the Motion's argument about Peel. Mr. Wu testified that HTC Corp. did not write any additional software to allow interconnectivity between the Peel software and the hardware components of the HTC One M9. Ex. 1 at 59:20-24. He testified that HTC Corp. did not write any software for the MAXQ614 chipset that performs IR transmissions. *Id.* at 62:16-63:3. The record plainly demonstrates that HTC Corp.'s knowledge of the IR functionality in the software of the Accused Products is limited

5

to the SenseTV app present in the accused HTC One M7 and One M8 phones. And Mr. Wu was fully prepared to testify about the SenseTV app. *Id.* at 46:5-6, 63:4-9.

Mr. Ho was similarly prepared to testify about the various SOCs (system-on-chip hardware components) found in the Accused Products. *Id.* at 56:5-10. He was also fully prepared to testify about the MAXQ614 SOC to the extent of HTC Corp.'s knowledge. *Id.* at 56:11-16. That particular SOC is hardware that controls IR functionality in the Accused Products. So Mr. Keyhani had a full opportunity to depose two witnesses with knowledge who were prepared to testify about the IR functionality of the Accused Products to the extent HTC Corp. has knowledge.

## V.     HTC CORP.'S OBJECTIONS WERE PROPER.

Salazar incorrectly argues that HTC Corp. (1) "attempted to justify its witnesses' lack of knowledge by improperly objecting to the scope of the 30(b)(6) topics during the deposition;" and (2) made "numerous impermissible speaking objections in violation of Local Rule CV-30 during the deposition in an attempt to coach its witnesses, including instructing Mr. Ho not to answer a question from Salazar's counsel." Dkt. 215 at 6. Both arguments are false.

First, counsel for HTC Corp. made a legal objection to topic 13 at the very end of Mr. Keyhani's examination because Mr. Keyhani wanted to argue (and badger the witness about) the scope of the topic. So defense counsel placed HTC Corp.'s legal, not evidentiary, objection on the record to preserve HTC Corp.'s objection to the topic as a whole. The objection did not coach any witness as the witnesses are not lawyers and speak Mandarin. More important, the objection was not only proper but required by Rule 30(c)(2).

Second, Salazar blatantly misrepresents the record. During Mr. Keyhani's examination, counsel for HTC Corp. objected 47 times. Of those 47 objections, 43 were "objection, form" or simply "objection." Two of the 47 objections were "outside the scope" objections. And two of the objections could be classified as speaking objections. One of those two is reproduced at pages

2-3 of the Motion, clearly showing defense counsel stating the aforementioned legal objection to the breadth of topic 13. In contrast, Mr. Keyhani recently made at least 30 speaking objections during the deposition of Salazar's expert on infringement. Dkt. 142 at 1-2.

In the same breath, Salazar contends that counsel for HTC Corp. instructed Mr. Ho to not answer a question from Mr. Keyhani. As the transcript makes clear, that assertion is false: counsel for HTC Corp. did not instruct the witness not to answer the question, but rather instructed the witness not to begin his answer until counsel finished stating the objection. After counsel stated the objection, Mr. Ho then answered the question. Salazar's unfortunate liberties with the factual record should not be countenanced.

## VI. NO SANCTIONS AGAINST HTC CORP. ARE JUSTIFIED.

As shown above, HTC Corp. complied with the Court's order to provide Rule 30(b)(6) testimony. The two witnesses presented were knowledgeable and fully prepared to testify about HTC Corp.'s relevant knowledge. It was counsel for Salazar—not the witnesses—who was unprepared.

Salazar's counsel here again tries to justify his request for sanctions with false and misleading statements. Salazar misrepresents to the Court that "Salazar and his counsel spent significant time and resources preparing for these depositions in Taiwan—including the costs of remote interpreters, videographers and court reporters." Dkt. 215 at 7. That statement is false and misleading for a number of reasons. First, Salazar did not send anyone to Taiwan—Mr. Keyhani took the deposition from his office in Buffalo, NY. Second, the court reporter was sitting with Mr. Keyhani in Buffalo. Third, his chosen interpreter was inexplicably in California. Fourth, there was no videographer anywhere. And fifth, Salazar's counsel had only four exhibits for the deposition, one of which was the deposition notice.

Given the full record on this Motion, Salazar is correct that the Rule 30(b)(6) deposition and the Motion are wasting the Court's time. And the waste has been caused by Salazar's lead counsel.

## VII.   THE DEPOSITION SHOULD BE TERMINATED WITH FEES AND COSTS AWARDED TO HTC CORP. UNDER RULE 30(D)(2)-(3).

Given the foregoing, HTC Corp. cross-moves under Rule 30(d)(2)-(3) to terminate the deposition and for sanctions against Salazar. To the extent necessary, HTC Corp. also seeks sanctions under the Court's inherent power to sanction "a party's deplorable conduct [that] is not effectively sanctionable pursuant to an existing rule or statute." *Toon v. Wackenhut Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001). In this case, sanctions are not only justified but warranted because Salazar has misrepresented both his need for discovery and the behavior of the parties.

As conducted by Mr. Keyhani, the Rule 30(b)(6) deposition made a mockery of the rules for conducting discovery in this Court. Mr. Keyhani's conduct suggests that he never intended to take a meaningful deposition of HTC Corp.'s corporate witnesses. His intent is demonstrated by his handling of the deposition. He noticed the deposition for Buffalo even though he knew the witnesses were appearing in Taiwan. As permitted by the Court, he took the deposition by telephone from his office in Buffalo. Flouting Rule 30(b)(4)-(5), Mr. Keyhani had the court reporter sitting with him in Buffalo instead of with the witnesses, which impeded the examination and prevented the reporter from even verifying the identity of the witnesses.[1] His chosen "official" translator was in California. The check translator retained by HTC Corp. was properly in Taipei alongside the witnesses and defense counsel. It appears neither translator had a real-time feed in

---

[1] The Motion, court reporter, and transcript repeatedly misidentify one of the witnesses, Mr. Chih Chung "Bryan" Wu, as "Tung Sha 'Brian' Wei." There was no Mr. Wei at the deposition.

8

order to display the questions being asked and answered. Mr. Keyhani made no advance arrangements for using exhibits at the deposition, choosing instead to fax the documents to defense counsel's hotel a few minutes before the deposition was to begin, for printing at HTC Corp.'s expense: (1) a new 30(b)(6) notice; (2) an HTC schematic (bates no. HTC016841); (3) an unproduced document containing screenshots of the Peel app; and (4) an unproduced document concerning the HTC Media Link. Mr. Keyhani then proceeded to ask questions of the two witnesses, alternating between them uninterrupted, but failing to ask the germane questions that defense counsel later asked on redirect. *See* Ex. 1 at 63:10-17. And then he filed the Motion with multiple regrettable false statements.

## VIII. CONCLUSION

It appears that Mr. Keyhani's goal throughout has been to declare the witnesses unfit, which he did at the first opportunity, filing the Motion. His conduct should not be condoned. Instead, for the reasons presented above, the deposition should be terminated and HTC Corp. should be awarded its fees incurred in responding to the Motion and its fees and costs incurred in preparing for, traveling to, and defending the deposition, under Rule 30(d)(2-3).

Dated: April 12, 2018

Respectfully submitted by,

*/s/ Fred I. Williams*
Fred I. Williams
State Bar No. 00794855
fwilliams@velaw.com
Mario A. Apreotesi
State Bar No. 24080772
mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: 512.542.8400
Fax: 512.542.8612

Todd E. Landis
State Bar No. 24030226
tlandis@velaw.com
Eric J. Klein
State Bar No. 24041258
eklein@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel: 214.220.7700
Fax: 214.220.7716

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: 903.934.8450
Fax: 903.934.9257

*Counsel for Defendant HTC Corporation*

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that all counsel of record who have deemed to have consented to electronic service are being served on April 12, 2018, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

                                        */s/ Fred I. Williams*_____
                                        Fred I. Williams