IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

In this patent case, Defendant HTC Corporation moves to exclude certain testimony of Justin Blok, Plaintiff's damages expert, based on his purported failures to apportion the value of the patented aspects of the accused instrumentalities and support certain underlying premises of his report. HTC's *Daubert* Motion to Exclude Testimony of Justin Blok [Dkt. # 159]. For the reasons that follow, however, the Court will **DENY** the motion.

## Discussion

**1.   Whether Blok properly apportioned the value of the "Accused IR Functionality."**

Salazar asserts that four HTC-branded smartphones infringe claims of U.S. Patent 5,802,467. Each asserted claim includes an infrared (IR) transceiver that allows a user to remotely control external devices, such as a television or DVR. *See, e.g.*, '467 Patent at 26:13–17 (reciting "an infra-red frequency transceiver coupled to [a] microprocessor for transmitting to . . . external devices and receiving from . . . said external devices").

The accused devices require software applications to implement the accused IR technology. Three of the accused devices included a preloaded version of HTC's "Sense TV" application. The fourth device included the Peel Smart Remote application supplied by third-party Peel Technologies, Inc.

Both of these applications include non-patented features, but HTC complains that Blok does not consider such non-patented features in his analysis. HTC's Motion [Dkt. # 159] at 4–5 (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884) and citing *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326–27 (Fed. Cir. 2014)). Blok based his reasonable-royalty analysis on a third-party, stand-alone device called the Pronto, which communicates with a smartphone running the free Peel Smart Remote that must first be loaded to the user's smartphone. HTC contends Blok relied on the false premise that the Pronto and Peel applications offer nothing more than the accused IR functionality, but the Peel app includes such non-patented features as an electronic program guide, a channel list, the ability to set reminders about favorite programs, and the like. Blok, says HTC, improperly considers the Pronto a technological and economic equivalent of the accused IR functionality, thus failing to consider the value of the non-patented features in the Peel application. *See generally* HTC's Motion [Dkt. # 159] at 6–9.

According to Salazar, however, Blok *did* apportion out the value associated with the non-patented features, but that value is zero. Salazar says Blok's analysis was based upon the stripped-down version of the two-way IR functionality provided by the Pronto unrelated to any additional features the Sense TV or Peel Smart Remote applications might

provide. Salazar's Resp. [Dkt. # 178] at 7–8.

The Court agrees with Salazar. "When . . . the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of those facts." *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003). Here, the parties present conflicting facts about the extent to which the Pronto includes non-patented features. Blok recognizes his obligation to consider such non-patented features, but concludes there is nothing to consider with respect to the Pronto device itself. *See* Blok Dep. (Jan. 24, 2018) [Dkt. # 178-4] at 46:9–48:8. Thus, based on the facts as Blok sees them, his methodology is correct. Although HTC is free to attack Blok's factual premises at trial, application of a correct methodology to disputed facts is not a reason to exclude an opinion as unreliable. Accordingly, this part of the motion should be denied.

2. **Whether Blok failed to support his underlying premise that the Pronto is a proper proxy for the value of "IR Functionality" in the accused devices.**

In a similar argument, HTC next contends the Pronto is not a proper proxy for the value of the accused IR functionality. HTC's Motion [Dkt. # 158] at 9–11. HTC also contends Blok improperly relied on unreported opinions of Salazar's technical expert, Roy Griffin, in concluding it was a proper proxy. *Id.* Salazar responds that Blok is entitled to rely on Griffin's technical expertise in evaluating the Pronto, and Griffin concluded all of the benefits provided by the basic IR capability of the Pronto are covered by the '467 Patent. Salazar's Resp. [Dkt. # 178] at 9.

The Court will deny this part of the motion for two reasons. First, an expert may

rely on inadmissible facts or data to form an opinion if they are the kinds of facts or data on which an expert in the field would reasonably rely. Fed. R. Evid. 703. Indeed, damages experts calculating a reasonable royalty routinely rely on facts or data from a party's technical expert. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) (noting "patent damages experts often rely on technical expertise outside of their field when . . . valuing the importance of the specific, infringing features in a complex device"). Thus, there is no basis for the Court to exclude Blok's opinion as unreliable under Rule 702 based simply on his reliance on his conversation with Griffin.

Second, Blok concludes the Pronto has no non-infringing capabilities. *See, e.g.*, Blok Dep. (Jan. 24, 2018) [Dkt. # 178-4] at 47:9–13 (noting the Pronto "doesn't have all these additional functionalities that [HTC's expert] is claiming should be apportioned out" because "[i]t is a basic TV remote"). Based on that underlying fact—which, of course, will be subject to the jury's scrutiny—HTC has not shown Blok's methodology is unreliable. *Compare, e.g.*, *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018) (noting a device that includes non-infringing features cannot be a proxy for the incremental value of the patented technology without further apportionment).

**3.      Whether Blok's 50-50 profit split is unreliable.**

HTC next attacks Blok's conclusion that a hypothetical negotiation between the parties would result a 50-50 split of the incremental profit attributable to the patented features. HTC's Motion [Dkt. # 159] at 11–12. Analogizing to *Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308 (Fed. Cir. 2014), HTC contends (1) Blok's analysis does not meet the

Federal Circuit's standards for permitting profit splitting, and (2) his conclusions are not sufficiently tied to the facts of this case. *Id.* Salazar responds that, unlike the expert in *Virnetx*, Blok did not begin his analysis with a conclusory assumption. Instead, says Salazar, Blok analyzed and applied the *Georgia-Pacific* factors to the facts of the case. Salazar's Resp. [Dkt. # 178] at 10–13. Thus, Blok's analysis is akin to that of *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283 (Fed. Cir. 2015). *Id.* at 12–13.

The Court agrees that Blok's report is closer to *Summit 6* than to *Virnetx*. In forming his opinion on an appropriate split, Block considered (1) there were no available, acceptable, non-infringing alternatives that would provide the same or similar benefits at the time of first infringement; (2) the competitiveness of the industry; (3) all of value of the accused IR functionality is attributable to the teachings of the asserted patent; and (4) Salazar would have had "significantly more bargaining" power than HTC. *See* Blok Rep. (Dec. 29, 2017) ¶ 121. From this basis, Blok concludes Salazar would have demanded more than one-half of the incremental value of the attributable profit. *Id.* Based on a review of his report, the Court finds Blok did *not* start with an arbitrary split and then adjust (or not adjust) that split based on his analysis. Thus, Blok's analysis is sufficiently tied to the facts of the case and should not be excluded.

**4.     Whether the Court should exclude opinions and testimony taken from interviews with Roy Griffin that are not in Griffin's expert report.**

HTC urges the Court to exclude Blok's opinions as based on opinions of Salazar's technical expert, Roy Griffin, that are not in Griffin's report. HTC's Motion [Dkt. # 159]

at 12–13; *see also id.* at 10. This, says HTC, circumvents the rule against allowing experts to testify beyond the scope of their expert reports. *Id.* Salazar responds that (1) under Fed. R. Evid. 703, Blok is entitled to rely on inadmissible evidence in forming his opinions, and (2) Griffin *did* disclose the opinions on which Blok relied. Salazar's Resp. [Dkt. # 178] 13–14.

Fed. R. Evid. 703 permits an expert to rely on inadmissible facts or data to form an opinion if they are the kinds of facts or data on which an expert in the field would reasonably rely. No doubt damages experts calculating a reasonable royalty rely on facts or data from a party's technical expert. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) (noting "patent damages experts often rely on technical expertise outside of their field when evaluating design around options or valuing the importance of the specific, infringing features in a complex device"). Thus, there is no basis for the Court to exclude Blok's opinion under Rule 702.

Citing *Apple Inc.*, HTC contends Blok's ability to rely on another expert does not extend to technical opinions beyond Blok's proficiency, HTC's Reply [Dkt. # 192] at 2 (citing Apple, Inc., 757 F.3d at 1323–25), but the Court disagrees with this conclusion for two reasons. First, HTC's contention does not comport with the same court's earlier statement that patent damages often rely on technical expertise outside of their field. Second, the portion of *Apple Inc.* cited by HTC simply stands for the proposition that one expert's testimony is no more (or less) reliable when relied on by another expert. Here, however, HTC does not challenge the reliability of the information conveyed to Blok by

Griffin—only that the information was not included in Griffin's report. Griffin's report limits the scope of Griffin's testimony, but not that of Blok's. Blok's report discloses the oral opinions he received from Griffin, and HTC had the opportunity to explore these at the depositions of both witnesses.

5. **Whether Blok's opinions disclosing his calculations and financial data should be excluded as irrelevant.**

Finally, HTC asks the Court to preclude Blok from testifying, on the basis of relevancy, about (a) his calculations regarding the prices of the accused devices; (b) his calculations of the total smartphone revenue of HTC; and (c) other financial data concerning costs of goods, margins, and the like. HTC's Motion [Dkt. # 159] at 13–14. HTC notes Blok's royalty calculation does not depend on HTC's revenues, that the entire market value is not an appropriate consideration, and that Blok's report doesn't even refer to three of his exhibits. *Id.* Salazar responds he has no intention of presenting this information to the jury and that this is more properly a motion *in limine* than a *Daubert* motion. Salazar's Resp. [Dkt. # 178] at 15.

The Court agrees this part of the motion is more appropriately considered a motion *in limine*. Accordingly, the Court will deny this part of the motion, but HTC may re-urge the motion at the pretrial conference (after conferring with opposing counsel) to the extent the subject matter is not already addressed by HTC's motions *in limine* or by agreement of the parties.

* * *

For the reasons set forth *supra*, the Court **DENIES** HTC's *Daubert* Motion to Exclude Testimony of Justin Blok [Dkt. # 159].

**SIGNED this 13th day of April, 2018.**

                                                ROY S. PAYNE
                                                UNITED STATES MAGISTRATE JUDGE