# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF JOE ANDREW SALAZAR'S SUR-REPLY
IN OPPOSITION TO HTC CORPORATION'S MOTION TO STRIKE
<u>THE DECLARATION OF ROY A. GRIFFIN III</u>**

Plaintiff Joe Andrew Salazar ("Salazar") files this sur-reply in opposition to HTC Corporation ("HTC")'s Motion to Strike the Declaration of Roy A. Griffin III ("Motion," Dkt. No. 194) and HTC's Reply in Support of its Motion to Strike ("Reply," Dkt. No. 221). For the reasons outlined below and in Plaintiff's Opposition to HTC's Motion ("Opposition," Dkt. No. 214), Salazar requests that the Court deny HTC's Motion.

In its Motion to Strike and related briefing, Defendant disputes three sentences that Salazar's expert, Mr. Griffin, included in paragraphs 6 and 7 of his declaration responding to Defendant's Motion for Summary Judgment and seeks to prevent a reasonable debate between the parties' experts that is the hallmark of a jury trial. Mr. Griffin timely prepared a thorough 112 page expert report that included 95 pages of claim element-by-claim element analysis supported by 546 footnotes. This analysis included his conclusion that the accused HTC One M7, M8, and M9 phones meet the claim language "a memory device coupled to said microprocessor configured to store a plurality of parameter sets." Because the term "configured to" had never been construed by the Court, HTC had never requested that the Court construe the term, nor had HTC ever proposed its own construction, Mr. Griffin applied the term's plain and ordinary meaning and concluded that the accused devices meet the claim language.

HTC subsequently filed a Motion for Summary Judgment, in which it impermissibly introduced a new and belated construction or interpretation of the plain and ordinary meaning of the term "configured to" that requires user activity. In response to HTC's inappropriate and unanticipated new interpretation, Mr. Griffin added three sentences in his declaration opining that the accused devices meet HTC's new construction of "configured to" and that his conclusion that all of the devices meet the claim language remains unchanged. HTC now moves to strike this testimony before trial in contravention of this Court's precedent. HTC's attempt to introduce a

new and untimely construction or interpretation and then exclude Plaintiff's expert's opinions responding to this construction or interpretation is improper and should be rejected. Likewise, the Court should reject HTC's attempt to strike paragraphs 9 and 18 of Mr. Griffin's declaration by using confusing new claim constructions, misrepresenting Mr. Griffin's testimony, and misrepresenting the source code evidence it produced to Salazar.

I.  ARGUMENT

   A.  **The disputed testimony in Mr. Griffin's declaration is an elaboration of opinions in his expert report**

HTC's contention that Mr. Griffin's opinions in ¶¶ 6-7, 9, and 18 of his declaration were disclosed for the first time in that declaration is without merit. As detailed in Salazar's Opposition, the three disputed sentences in Mr. Griffin's declaration merely elaborate on opinions already in his expert report, bolstering his existing theory and conclusion that the accused devices meet the claim language "a memory device coupled to said microprocessor configured to store a plurality of parameter sets." *See* Opp. at 4-5. In his detailed expert report, Mr. Griffin applied the plain and ordinary meaning of "configured to." HTC then argued in its motion for summary judgment that the "a memory device coupled to said microprocessor configured to store a plurality of parameter sets" element requires allocation of memory space and opined that this is not met unless user activity occurs. This interpretation or construction was never made by the Court or proposed by HTC, and no expert, including Mr. Griffin, could have reasonably foreseen it. And while Mr. Griffin disagrees with HTC's construction, his opinion in his declaration rebutted HTC's flawed premise that allocation of memory space requires user activity and explained how, as a technical matter, the accused devices meet even HTC's construction of this element without any user activity. Mr. Griffin permissibly included these opinions for the sole purpose of elaborating on his existing conclusion that the accused devices meet the "configured to" claim language—even in

2

light of HTC's new construction/interpretation—and to rebut HTC's assertion in its summary judgment motion that the accused devices do not meet its interpretation of "configured to." Accordingly, Mr. Griffin's testimony is proper and should not be stricken.

### B. Even if Mr. Griffin's testimony were not an elaboration on his earlier opinions, it would still be admissible

In its Reply, HTC ignores the Court's language in *Paltalk Holdings, Inc. v. Microsoft Corp.* stating that even if Mr. Griffin's testimony were not an elaboration, it would be permissible for him to include it in his report. In *Paltalk*, this Court held that even if the expert's report failed to address the issues defendant complained of, it would have been reasonable for him "to opine on what he believed to be a new claim construction position taken by the opposing party and such would explain any failure by [the expert] to include these opinions in his expert report." No. 2:06-CV-367-DF, 2009 WL 10677720, at *2 (E.D. Tex. Feb. 11, 2009).

Here, HTC in its Motion for Summary Judgment attempted to introduce a new construction of the term "configured to" that requires user activity. Mr. Griffin then responded with three sentences in his declaration opining that the accused devices meet HTC's new construction or interpretation, and that even with this new construction, his conclusion that the accused devices meet the claim language remained the same. Because Mr. Griffin subjectively believed that HTC had taken "a new claim construction position"—and Salazar maintains that HTC, in fact, *did* take a new position—any failure on Mr. Griffin's part to include these opinions in his expert report would be excusable under *PalTalk*. *See id.* HTC's contention that *PalTalk* is distinguishable "because the Griffin Report does not provide any opinions similar to those made for the first time in . . . the Griffin Declaration" selectively ignores the key language in the Court's opinion cited above. *See* Reply at 2. Accordingly, even if the Court were to find that Mr. Griffin's testimony was not an elaboration, the testimony would still be admissible.

## C. Mr. Griffin's opinions are fully supported

The Court should similarly reject HTC's assertion that Mr. Griffin's conclusions are unsupported. In its Reply, HTC attempts to create confusing new claim constructions that do not exist, misrepresents Mr. Griffin's testimony, and creates an imagined obligation on Plaintiff to show when and how "instructions" and "sandboxed file folders" configure memory devices. *See* Opp. at 3. However, it is the claim language, "a memory device coupled to said microprocessor configured to store a plurality of parameter sets," that controls. Mr. Griffin, in his expert report, concludes that the accused devices are "configured to store" and explains how the accused devices meet this claim language. *See* Griffin Rep. at 4, 7. And, in his declaration, he elaborates on the opinions in his report, concluding that the storing of API instructions and the installation of the HTC Sense TV application's storing of files and sandboxing of files meets the "configured to" claim language of the claims. *See* Griffin Decl., ¶¶ 6-7. That HTC disagrees with Mr. Griffin's conclusions does not make them unreliable or provide a basis for striking his testimony. Rather, whether the accused products meet the claim language is a fact question for the jury.

Furthermore, contrary to HTC's assertions, Mr. Griffin's conclusion that "all of the exemplarily components and source code in the HTC One M8 [] are substantially identical in the HTC One M9," and that the HTC One M9 therefore infringes the asserted claims for the same reason that the HTC One M8 does, is wholly supported. HTC's contention that "it would be impossible" for Mr. Griffin to provide evidentiary support for his conclusion without "analyz[ing] the Peel Smart Remote application nor inspect[ing] the One M9 device" is plainly untrue.[1] In forming his conclusion, Mr. Griffin relied on, *inter alia*, documents produced by HTC and

---

[1] HTC attempts to manufacture a distinction between the One M9 phone, which uses the Peel application with two-way IR, and the One M7 and One M8 phones, which use HTC Sense TV with two-way IR. While it is true that the One M9 uses a different application (and that HTC did not produce the Peel code), it is the SDK source code that interfaces between the phone and the application that is material. And here, the applications are basically identical and the interfacing code is the same for all three devices.

4

testimony by HTC's witnesses that the devices are substantially similar.[2] *See* Opp. at 8-9. Mr. Griffin further relied on the fact that when asked to produce source code for all of the accused devices, HTC provided only one set relevant to the IR transceiver functionality – the SDK code – in effect admitting that the source code of the accused devices is identical. Although HTC claims in its Reply that it provided Salazar with three different source code files for each of the accused devices, none of these files actually contained the relevant code. *See* Exhibit "1" Declaration of Christopher Byler, at ¶¶ 3-4. In fact, the only relevant source code provided by HTC was in the C++ file initially produced with a host of other documents – *not* in any of the file folders labeled with the accused product names that HTC references (Dkt. No. 222-1). *Id*. Based on this evidence and his expertise, Mr. Griffin reasonably determined that he did not have to physically inspect the One M9 to conclude that it was substantially similar to the One M8.

### D. HTC does not dispute Mr. Griffin's conclusion that the accused devices are substantially the same

Notably, Defendant makes no attempt to argue that Mr. Griffin's conclusion regarding the HTC One M9's functionality is incorrect. Nor does HTC put forth any evidence that would suggest that the functionality of the accused devices is not substantiality the same. Rather than refuting the substance of Mr. Griffin's opinions, HTC relies on meritless arguments that his testimony is untimely and unsupported. However, Mr. Griffin's opinions are permissible, fully supported, and should be considered by the jury at trial.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny in its entirety HTC's Motion to Strike the Declaration of Roy A. Griffin III.

---

[2] HTC's 30(b)(6) witness Ho Chia Chu acknowledged that the HTC One M9 uses the same IR circuitry as the One M7 and One M8, and Peel's corporate representative Sivasubramanian Muthukumarasamy explained that the functionalities are substantially similar across all accused devices. *See* Opp. at 8-9.

Dated: April 13, 2018

    Respectfully submitted,

    */s/ Andy Tindel w/ permission of Lead Attorney*

Dariush Keyhani, Lead Attorney
*Pro Hac Vice*
New Jersey State Bar No. 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
Email: dkeyhani@meredithkeyani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
Email: atindel@andytindel.com

J. Mark Mann
Texas State Bar No. 12926150
G. Blake Thompson
Texas State Bar No. 24042033
MT² LAW GROUP
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003
Email: mark@themannfirm.com
Email: blake@themannfirm.com

***Attorneys for Plaintiff Joe Andrew Salazar***

**CERTIFICATE OF SERVICE**

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 13th day of April, 2018.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

Andy Tindel