# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § § | |
| Plaintiff, | § § | |
| vs. | § § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| HTC CORPORATION, | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

## REPLY IN SUPPORT OF JOE ANDREW SALAZAR'S MOTION FOR SUMMARY JUDGMENT ON COMPLIANCE WITH MARKING REQUIREMENTS UNDER 35 U.S.C. § 287(a)

I.   **PRELIMINARY STATEMENT**

Plaintiff Joe Andrew Salazar ("Salazar") replies in support of his Motion for Partial Summary Judgment on Compliance with Marking Requirements Under 35 U.S.C. § 287(a) ("Motion for Summary Judgment," Dkt. No. 238) and in response to HTC Corporation ("HTC")'s Opposition ("Opposition," Dkt. No. 242). Because HTC has failed to establish the existence of any genuine dispute of material fact and instead relies on misrepresentations of the procedural history and mischaracterizations of the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote (collectively and/or individually, the "I3 Devices"), Salazar respectfully requests that the Court reject HTC's arguments and grant his Motion for Partial Summary Judgment.

II.  **ARGUMENT**

   A.   **The marking statute is not triggered because HTC has not put forth *any* evidence to establish that the I3 devices practice any claims of the '467 Patent**

At no time during this litigation has HTC presented *any* evidence that the I3 devices—in whole or in part[1]—are covered by the '467 Patent. For this reason alone, summary judgment on compliance with marking requirements is appropriate as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *VirnetX Inc. v. Apple, Inc.*, No. 6:12-CV-855, 2014 WL 12597800, at *2 (E.D. Tex. Aug. 8, 2014); *see also Tex. Dig. Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) **(*explaining that the marking statute is only triggered when articles that practice a patent are actually sold into the marketplace*,** and does not limit damages where a patent holder

---

[1] As detailed in section II. B., *infra*, Plaintiff rejects HTC's attempt to dissect the I3 devices—which are sold and operate as integrated units—into separate, isolated "products." Nevertheless, Plaintiff, arguendo, addresses HTC's artificial and unsupported distinctions.

does not actually sell products practicing the relevant patent in the marketplace) (emphasis added).

In its Opposition, instead of putting forth actual evidence that the I3 devices practice the claimed inventions—e.g., testimony from its own expert, Dr. Andrew Wolfe, opining that this is the case—HTC makes the unsupported conclusory assertions that "Only the I3 Handsets practice the claimed inventions and therefore qualify as 'patented articles' under 35 U.S.C. § 287(a)" and "Salazar sold the I3 Packaged Products containing a 'patented article' (the I3 Handsets) and an unpatented article (the charging base)." *See* Dkt. No. 242 at 5-6.  These assertions are not supported by the opinion of Dr. Wolfe, and Dr. Wolfe proffers no opinion on whether the I3 devices as a whole practice the claims of the '467 Patent.  Dr. Wolfe, however, does offer an opinion with respect to the base of the I3 devices, conceding that it is not a patented article.  *Id.*  Dr. Wolfe's decision to not rebut Salazar's expert opinion and instead remain silent with respect to whether the I3 devices as a whole, the handset, or any other components (alone or in combination) are patented articles despite having studied the I3 devices and offering an opinion regarding the base of the devices is a tacit admission that the I3 devices do not practice any of the claims of the '467 Patent.  Therefore, HTC has not presented any facts that would allow a jury to conclude that the I3 devices (or any component within) practice any claim of the '467 Patent as required to trigger the marking statute.

HTC's attempt to manufacture a fact dispute by attacking the testimony of Salazar's technical expert, Roy A. Griffin III is also without merit.  First, contrary to HTC's assertions, Mr. Griffin's testimony does not contradict Salazar's own admissions.  After HTC filed its Amended Answer and Counterclaims to Salazar's Second Amended

Complaint ("Amended Answer," Dkt. No. 180) on March 7, 2018, Salazar was for the time put on notice of any allegations pertaining to HTC's claim that he failed to mark the I3 devices. In response to HTC's conclusory allegation that the devices were not marked, Salazar filed a responsive pleading (Dkt. No. 200) that included an amended allegation which stated that the I3 devices "do not practice the asserted claims of the '467 patent because they do not meet all of their claim elements including at least 'an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols,'" and even if they did practice the asserted claims, they are marked. Dkt. No. 200, ¶ 23. In support of Salazar's responsive pleading, Mr. Griffin carefully reviewed the identified products and concluded that they were not covered by the '467 Patent because they did not meet at least one specific claim element. Dkt. Nos. 238-3, 239. Mr. Griffin also submitted a supplemental expert report with a sworn declaration addressing this issue (Dkt. Nos. 238-3, 239). Although in Salazar's complaints and responses to interrogatories he identified the I3 devices as being marked by the patent number,[2] Salazar's responsive pleading and Mr. Griffin's supplemental expert report were not contradictions but, rather, amended any previous statements made by Salazar. *See Proctor & Gamble Def. Corp. v. Bean*, 146 F.2d 598, 600 (5th Cir. 1945) (stating that

---

[2] Salazar's Amended interrogatory response referenced by HTC, *see* Pl. 2nd Am. Resp. to Def. Interrog. # 9, is subject to Plaintiff's objection that the interrogatory calls for a legal conclusion. Salazar had not taken the position as to whether the I3 devices practiced the claims of his patent as a legal matter except as a lay person he had the products manufactured marked with the patent number as he believed that was the proper thing to do at the time. Furthermore, Salazar's response states only that the products were marked with the patent number, <u>not that it was covered by the patent—which is entirely consistent with Plaintiff's position in his responsive pleading and supplemental expert report.</u>

an amended answer has the effect of superseding the original answer); *see also Borel v. U.S. Cas. Co.,* 233 F.2d 385, 387 (5th Cir. 1956) (stating that "[a] superseded pleading is of course not a conclusive admission of the statements made therein").

Second, contrary to HTC's arguments, Mr. Griffin's testimony is neither unsupported nor conclusory. In the excerpt of the supplemental expert report cited by HTC as insufficient, Mr. Griffin states that he properly based his opinion on samples of the three I3 devices that he obtained and "carefully studied," *see* Dkt. 239, ¶ 57, directly contradicting HTC's contention that Mr. Griffin "does not provide any basis or support for his opinion" nor "include[s] materials on which [he] based his opinion." Opp. at 10; *see also* Dkt. Nos. 238-3, 239, ¶¶ 11-15.

HTC's failure to present any evidence that the I3 devices are covered by the '467 Patent is fatal to its opposition of Salazar's Partial Motion for Summary Judgment. Accordingly, the Court should grant summary judgment that § 287(a) is inapplicable to the present case as a matter of law.

### B. No genuine issue of material fact exists as to whether Salazar complied with the requirements of § 287(a)

Because the I3 devices are not patented articles under § 287(a), the issue of whether they are properly marked is moot. However, even assuming arguendo that the devices fall under the marking statute, no genuine issue of material fact exists as to whether Salazar complied with the requirements of § 287(a).

#### 1. It is undisputed that Salazar marked the I3 devices

Where a patented invention consists of several components sold and used together, marking any one of the components can suffice to meet the marking requirement. 4 ANNOTATED PATENT DIGEST § 30:152 (2018); *MGM Well Servs., Inc. v. Mega Lift Sys.,*

*LLC*, 505 F. Supp. 2d 359, 375-76 (S.D. Tex. 2007) ("When the patented device involves multiple components, it is not necessary that each component be marked."); *Douglas Press v. Arrow Int'l, Inc.*, 1997 WL 441329, at *6 (N.D. Ill. July 30, 1997) (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994) (stating that patent holder could satisfy marking requirement by marking either the component or the completed product). In *Douglas Press*, the plaintiff's patents disclosed a "multi-component product consisting of a master game card and individual playing cards." 1997 WL 441329, at *5. The product was marketed with the playing cards and the master game card together. *Id.* The plaintiff "consistently and continuously marked the master game cards" with the correct patent numbers but did not mark the playing cards or the packaging. *Id.* Regardless, the court held that the practice satisfied the marking requirement. *Id.* at *7. Likewise, here, because the I3 phones consist of components—the handset and base, among others—that are sold together, intended to be used together, and cannot function for their intended purpose absent integration, the devices are sufficiently marked under § 287(a).

In its Opposition, HTC mischaracterizes the I3 devices by arbitrarily separating them into two separate products: the "handset" and the "charging base."[3] *See* Opp. at 1. However, in reality, the handset and base component are not separate products but, rather, integrated components making up the I3 phones. *See* Declaration of Frances H. Stephenson at 2-4, Exhibits A-C (April 25, 2018). First, the handsets and base components are not sold as separate products and cannot be used in combination with different products. Second,

---

[3] While HTC refers to the base of the I3 device as a "charging base," implying that the component's predominant or sole function is to charge the phone, this is a mischaracterization, as the base is the only component that connects to a landline, allowing the I3 devices to function as a phone.

the handsets and base are not intended to be used as separate products. And, third, the handsets cannot function outside of integration with their unique base stations, because the handsets have no electrical power independently (and require power from a cord attached to the base), and the handsets cannot communicate with the landline—a requirement for operation as a phone—without their base component.[4]

Thus, the cases cited by HTC, which involve a patented component that was part of a broader unpatented product or where the patented component could stand alone/had its own function, are inapposite. *See Juno Mfg., LLC v. Nora Lighting, Inc.*, No. CV 14-06546-RGK (PJWx), 2015 WL 11438613, at *4-5 (C.D. Cal. Aug. 13, 2015) (analyzing bar hanger for use in a recessed light fixture comprised of unpatented components); *Lichtenstein v. Phipps*, 168 F. 61, 62 (2d Cir. 1909) (analyzing hatband where notice was affixed to lining on inside of hat and "[t]here was nothing to show whether the hat itself, the design of the hat, the lining, or the design of the band was patented"). Unlike the components in these cases, the I3 handsets cannot function independently of the particular base with which it is paired. That is, while a bar hanger could conceivably function with a number of light fixtures and a hatband could conceivably function on a number of different types of hats, here, the handsets must be paired with their specific base to make up the integrated functional I3 device—otherwise they cease to function as a phone. The handset and its base are therefore integrated components of one product, and, unlike the products in *Juno* and *Lichtenstein*, affixing a mark to one component provides sufficient notice of infringement as to the product as a whole.[5]

---

[4] The base component of the I3 devices provides the only means of connecting with the telephone line.

[5] It is also worth noting that, unlike the bar hanger in *Juno* and the hatband in *Lichtenstein*, the handset in the instant case is *not* a patented article and HTC fails to provide any evidence to support

7

Thus, because the I3 phones are products with integrated components that are sold and used together, it is undisputed that the products were properly marked. Indeed, HTC in its Opposition admits that all of the I3 devices are marked on their bases, as is the packaging of the My1Remote. *See, e.g.*, Opp. at 2, 5-8. Accordingly, no genuine dispute of material facts exists as to whether Salazar marked the I3 devices.[6]

### 2. HTC's assertion that the handsets practice the '467 Patent is conclusory and unsupported

HTC contends that "Only the I3 Handsets practice the claimed inventions and therefore qualify as 'patented articles' under 35 U.S.C. § 287(a). As such, the I3 Handsets should have been marked."[7] Opp. at 5. This statement is conclusory and unsupported and relies on the false premise that if there are two components, one of which does not practice the patent, then the second component necessarily does. However, the I3 devices are

---

this proposition. To the extent HTC relies on Salazar's interrogatory responses, the responses speak only to a product as a whole and not to the "handset." HTC has no support for identifying the handset as a patented article separate and distinct from the whole I3 device.

[6] HTC also contends that marking of the packaging of the My1Remote was insufficient because "[p]ackage marking is only permissible if the size of the product, practical considerations (e.g. the cost of marking), or industry norms would prevent marking the article itself" and because "the specific character of the My1Remote handset allowed the patented article itself to be marked." Opp. at 4, 6-9. However, courts in the Fifth Circuit have rejected the "mechanistic" standard advocated by HTC in favor of "a more flexible, functionalist approach":

> [T]he brightline physical-possibility test advocated by Defendants and a handful of district court opinions is not the correct standard. To the contrary, the Federal Circuit has made clear that courts must apply a much more flexible test that asks whether the method of marking effectuates the statutory purpose of § 287, namely, placing the public on notice that the product is the subject of a patent.

*Denneroll Holdings Pty Ltd. v. Chirodesign Grp., LLC*, No. 4:15-CV-740, 2016 WL 705207, at *8 (S.D. Tex. Feb. 23, 2016).

[7] The only allegation HTC makes relating to whether the I3 devices or components practice the claims of the '467 Patent relate to the handsets.

comprised of many parts, and HTC does not explain why the handset is the patented article and not, for example, the phone's buttons, screen, antenna, or charging cord.  Accordingly, HTC's argument that the I3 handsets should have been marked because they are "patented articles" is without merit.

> 3. **HTC's argument that Salazar did not and cannot prove substantially consistent, continuous marking of substantially all I3 Devices sold lacks merit**

Salazar has proven, by a preponderance of the evidence, that the marking of I3 products was substantially consistent and continuous.  Salazar has presented a marked sample of each I3 device (Dkt. No. 238-4, ¶¶ 2-4) while HTC has put forth no evidence to suggest that these samples are not representative of the other I3 devices sold.  Moreover, in contrast to the cases cited by HTC, Salazar's statement that he has personal knowledge that substantially all the I3 products were continuously marked is corroborated by both photos of the products and an audit, wherein Salazar's counsel ordered and received Hughes Remote Phone from an online vendor, and the product was marked identically to the I3 samples, *See* Exhibit D (Amazon.com invoice), Exhibit E (photographs of purchased phone), Declaration of Anya S. Engel, at ¶¶ 2-4.  HTC, meanwhile, has put forth *no* evidence to even suggest that the I3 Devices were not consistently or continuously marked while incorrectly asserting that it is Salazar's burden to seek out "substantially all I3 Devices" sold in the United States.  HTC has therefore failed to establish that a genuine dispute of material fact exists as to this issue.  *See Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) ("Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.").

### III. CONCLUSION

For the foregoing reasons, Plaintiff Joe Andrew Salazar respectfully requests that the Court grant his Salazar's Partial Motion for Summary Judgment on Compliance with Marking Requirements Under 35 U.S.C. § 287(a).

Dated: April 25, 2018

                                    Respectfully submitted,

*/Andy Tindel w/ permission of Lead Attorney/*

Dariush Keyhani, Lead Attorney
*Pro Hac Vice*
New Jersey State Bar No. 044062002
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
Email: dkeyhani@meredithkeyhani.com

Andy Tindel
Texas State Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
Email: atindel@andytindel.com

J. Mark Mann
Texas State Bar No. 12926150
G. Blake Thompson
Texas State Bar No. 24042033
MT² LAW GROUP
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Facsimile:   (903) 657-6003
Email: mark@themannfirm.com
Email: blake@themannfirm.com

*Attorneys for Plaintiff Joe Andrew Salazar*

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 25th day of April, 2018.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission.

_____
Andy Tindel