# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:16-CV-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Defendant HTC Corporation moves to exclude certain testimony of Oded Gottesman, Plaintiff's invalidity expert, based on his purportedly incorrect application of law. HTC's Motion to Exclude [Dkt. # 157]. Specifically, HTC contends Gottesman's opinions concerning three claim terms should be excluded based on his improper analysis. The Court will **GRANT** the motion **IN PART**.

**1.     Telephone Device / Normal Portable Telephone**

Gottesman repeatedly opines, in reference to the preambles[1] of the asserted claims, that "Goldstein does not disclose a 'communications' system in the form of a telephonic device as disclosed and claimed [by] the '467 Patent or any form of 'normal portable

---

[1] The parties agree the phrase "communications, command, control and sensing system" in the preambles are substantive limitations. *See* Salazar's Proposed Constructions of Disputed Terms [Dkt. # 73-2] at PageID # 686; HTC's Proposed Constructions & Identification of Evidence [Dkt. # 73-3] at 1.

telephone' as opined by Wolfe." *See, e.g.*, Gottesman Rebuttal Rep. [Dkt. # 157-2] ¶¶ 16, 53, 71. HTC contends this improperly imports limitations into the claims. Def.'s Motion [Dkt. # 157] at 2–3. Salazar responds that HTC's expert, Dr. Andrew Wolfe, characterizes Goldstein as teaching a "normal portable phone" and Gottesman simply rebuts that characterization. Pl.'s Opp'n [Dkt. # 175] at 3–4.

The question is whether Gottesman's report (1) concerns his opinion based on his expertise about the meaning of "communications system," which is permissible, or (2) construes the term to have a different meaning based on the '467 Patent's intrinsic record, which is *not* permissible (since it would be claim construction reserved for the Court). Here, Gottesman did the latter by, for example, opining on the meaning of the term based on the specification:

> I believe the telephonic device is a term that is explained in the specifications. So when I read the claim and try to understand what -- what it means and I read a prior art and try to understand whether that is disclosing the claim, *I have to understand what the person of ordinary skill in the art would understand the claim to mean and to look at the specification*, understand that.
>
> *And based on the specification that referred to telephonic device*, my understanding is that the communications, command and control in the sensing device in Claim 1 refers to a type of telephonic device, and my understanding was that a normal portable telephone does not have that capability.

Gottesman Dep. (Feb. 19, 2018) [Dkt. # 175-3] at 19:8–21 (emphasis added).

> It is my understanding [that "communications system" requires this claim to have a telephonic device]. It's not merely reading

> it. It is my understanding *based on reading the claim and reading the specifications* that the preamble referred to a telephonic device or a form of telephonic device. The term "telephony" or "telephonic device" appears in the specification when it describe embodiments that are consistent with that claim.

*Id.* at 20:5–12 (emphasis added). In other words, Gottesman has interpreted "communications system"—based on his review of the specification, and not on its plain meaning within the art—to require a telephonic device. Such an interpretation is impermissible claim construction, and the Court will therefore grant this part of Defendant's motion.

**2. Sensing System**

With reference to Claim 1's preamble, Gottesman opines "[t]he touchscreen, keypad, microphone, and/or opto-detector disclosed in Goldstein is not a disclosure or teaching of a sensor coupled to a microprocessor for detecting and measuring physical phenomena, physical indications, physical phenomena corresponding to a user, or a physical phenomena measure in response to a user's skin contact as claimed in claims 23, 29–32." *See, e.g.*, Gottesman Rebuttal Rep. [Dkt. # 157-2] ¶¶ 36, 53, 71. He makes similar contentions regarding two other references, Thompson and Simon. *Id.* ¶¶ 158–59, 176–77, 198–99, 221–22, 241–42. HTC argues this imports these limitations from dependent claims into Claim 1. Def.'s Motion [Dkt. # 157] at 3. Salazar contends Gottesman simply rebuts Wolfe's characterization of the "sensing system." Pl.'s Opp'n [Dkt. # 175] at 5–7.

The Court will grant this part of the motion because Gottesman construes the claim

language, which is evident from his deposition. For example, when questioned about why he thought Claim 1 required a microprocessor, Gottesman testified:

> I looked at the claim. I looked at other claims, and I looked at the specification to understand, and I looked at Goldstein.

Gottesman Dep. (Feb. 19, 2018) [Dkt. # 175-3] at 33:23–34:5. When asked whether Claim 1 requires "detecting and measuring physical phenomena," he testified

> although they do not appear in the claim, when you read the patent, the specification, and understand what this phrase is about, a person of ordinary skill in the art would understand that sensing system would relate to that.

*Id.* at 35:12–22. When asked whether a person of ordinary skill would understand "sensing system" to relate to detecting and measuring physical phenomena, he testified

> I believe that that's some of what -- that's an embodiment that *can be understood from the specification* that in the context of the patent and the claim that that's what sensing system would be about.

*Id.* at 36:4–8 (emphasis added). These excerpts show Gottesman was not relying on his own expertise in explaining the plain and ordinary meaning of the term, but rather relying on the patent's intrinsic record to narrow the plain meaning.

### 3. Parameters / Command Code Sets

Last, HTC complains about Gottesman's opinion that "Goldstein does not teach any compression of command code sets or compressed parameter storage." Def.'s Motion [Dkt. # 157] at 3–4. HTC objects to use of "compression," and contends the claim language

simply requires that the memory space required to store the parameters be smaller than that required to store the command code sets, regardless of whether the command code sets are compressed. *Id.* at 4. Salazar responds that Gottesman describes how a person of ordinary skill would understand the '467 Patent, and that Gottesman's use of the term "compression" is simply shorthand for the broad category of what the limitation requires. Pl.'s Opp'n [Dkt. # 175] at 7–9.

> Defendant's motion specifically concerns Claim 1 and Claim 34. Claim 1 recites
>
> [1b] a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets[.]

'467 Patent at 26:1–6. Claim 34 recites

> [34b] a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "l's" and "0's" as specified by a command code set[.]

*Id.* at 30:15–20. The Court construed part of these limitations, but did not address whether they require "compression." *See generally* Cl. Constr. Op. & Order [Dkt. # 108] at 22–30.

With respect to Claim 1, precluding Gottesman from referencing "compression" would go too far. The word appears twice in the patent, bookending a lengthy discussion of the only specifically described encoding technique. *See* '467 Patent at 8:16, 17:32. Thus, "compression" is not so foreign to the patent to warrant exclusion from a conversation about the technology. Moreover, Gottesman's report ties his use of "compression" to Claim

1's "memory space" language. Gottesman Rebuttal Rep. [Dkt. # 157-2] ¶ 15. He also acknowledges the claim language does not *require* "compression." *See* Gottesman Dep. (Feb. 19, 2018) [Dkt. # 175-3] at 53:22–23 (testifying "the language of the claim itself is not requiring compression"). Given Gottesman's clear statements on the term, HTC can address Gottesman's use of the term during cross-examination.

Claim 34 does not include the "memory space" limitation of Claim 1, but when rebutting Wolfe's opinions concerning Claim 34, Gottesman incorporates his "memory space" arguments. *See, e.g.*, Gottesman Rep. [Dkt. # 157-2] ¶¶ 52 (referring to ¶¶ 39–40), 70 (referring to ¶¶ 56–57), 92 (referring to ¶¶ 75–76). Wolfe's invalidity charts, however, do the same. *See, e.g.*, Wolfe Rep., Ex. A at 62 ("[o]pinions and evidence to support this claim element are identified with respect to Claim element 1[b] above."); *id*. at 8 (discussing, with respect to limitation [1b], why Goldstein teaches the memory space limitation). Given that, it would be unfair to exclude Gottesman's imprecision with respect to this limitation when he is rebutting an equally imprecise position. The Court will therefore deny this part of HTC's motion.

* * *

The Court **GRANTS** HTC's Motion to Exclude [Dkt. # 157] **IN PART**. Specifically, the Court **ORDERS** that Salazar may not elicit testimony from Gottesman that meeting the "communications, command, control and sensing system" limitation (1) requires the asserted prior art to disclose a "telephonic device," or (2) requires "a sensor coupled to the said microprocessor for detecting and measuring physical phenomena."

Otherwise, the Court **DENIES** the motion.

**SIGNED this 27th day of April, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE