# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | | |
|---|---|---|---|
| JOE ANDREW SALAZAR, | § | | |
| | § | | |
| Plaintiff, | § | | |
| | § | | |
| v. | § | No. | 2:16-CV-01096-JRG-RSP |
| | § | | |
| HTC CORPORATION, | § | | |
| | § | | |
| Defendant. | § | | |

## MEMORANDUM OPINION

In this patent case, the Court now considers Plaintiff Joe Salazar's Motion for Partial Summary Judgment on Compliance With Marking Requirements [Dkt. # 238]. After further consideration of the parties' arguments during the pretrial conference, controlling case law, and the procedural history of this case, the Court will **VACATE** its earlier decision to grant Salazar leave to file the motion and **DENY** the motion as untimely.

## I.    BACKGROUND

Salazar accuses HTC Corporation of infringing U.S. Patent 5,802,467 by making and selling various models of smartphones. Second Am. Compl. [Dkt. # 44] ¶ 7. The '467 Patent relates to a system for two-way communication with appliances, such as intercoms, televisions, sound systems, and the like. *See, e.g.*, '467 Patent fig.1b. According to the patent, prior-art devices communicated with such appliances only using one-way communication, and usually with only one of an infrared (IR) signal or a radio frequency

(RF) signal. *Id.* at 1:18–50. Relative to the prior art, the '467 Patent considered full two-way communication directly with an appliance using IR or RF links to be significantly advantageous. *Id.* at 1:51–2:11.

Salazar's operative pleading, filed June 15, 2017, alleges

> [a]fter the '467 Patent issued in 1998, beginning in 1999, Salazar manufactured and sold products that embody the inventions disclosed and claimed in the '467 Patent. These products were marked with U.S. Patent No. 5,802,467 in accordance with and in compliance with the Marking Statute, 35 U.S.C. § 287.

Pl.'s Second Am. Compl. [Dkt. # 44] ¶ 13; *see also* Pl.'s First Am. Compl. [Dkt. # 17] ¶ 11 (same language). During discovery, Salazar identified the products at issue in a verified interrogatory response: the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote (collectively, "the I3 devices"[1]). Pl.'s Second Am. Resps. to Def.'s First Set of Interrogs. [Dkt. # 242-3] at 11.

The deadline for dispositive motions ran on February 12, 2018. Sixth Am. Docket Control Order [Dkt. # 145] at 2. On March 7, 2018, Defendant answered Salazar's Second Amended Complaint and alleged, under the heading "Affirmative and Other Defenses":

> Salazar's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287. Salazar alleges that the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote devices practiced the asserted claims of the '467 patent. Because I3 failed to consistently and continuously mark substantially all of the Model Hughes Remote Phone devices with the '467 patent number from 1999 to 2001, Salazar is precluded from recovering pre-

---

[1] Innovative Intelcom Industries, or I3, was the entity that sold the devices. Salazar was the president of I3 during the time these devices were sold. Salazar Decl. (Apr. 18, 2018) [Dkt. # 238-2] ¶ 2.

> suit damages. Because I3 also failed to consistently and continuously mark substantially all of the 650D My One Remote devices with the '467 patent number from 2001 to 2003, Salazar is precluded from recovering pre-suit damages. Because I3 also failed to consistently and continuously mark substantially all of the My1Remote devices with the '467 patent number from 2003 to 2005, Salazar is precluded from recovering pre-suit damages.

Def.'s Am. Answer & Counterclaims [Dkt. # 180] ¶ 31. Salazar then "answered" this "defense" by changing his position and alleging the I3 devices do *not*, in fact, meet all of the limitations of the asserted claims. Pl.'s Answer & Reply to Def.'s Am. Answer & Counterclaims [Dkt. # 200] at 23. Alternatively, Salazar claims the I3 devices "were consistently and continuously (although mistakenly) marked with the '467 patent number." *Id.*

At an April 16, 2018 pretrial conference, the parties disputed whether this marking issue should go the jury. Salazar explained the I3 devices were mistakenly marked, and only recently did he dissect the I3 devices and conclude they didn't embody any asserted claims. Salazar contended (1) the I3 devices "unequivocally" do not meet the IR limitation of the asserted claims, (2) this issue would only confuse the jury, (3) Defendant raised the issue after the deadline for dispositive motions, and (4) Defendant never identified the products as required under *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350 (Fed. Cir. 2017). *See* H'rg Tr. (Apr. 16, 2018) [Dkt. # 235] at 7:21–12:8.

In response, Defendant's counsel indicated the marking issue had not been thoroughly explored. In fact, he had not even seen the I3 products or had an opportunity to inspect Salazar's marking evidence. Defendant simply asked an interrogatory about all

products that practiced the invention and based his "defense" on Salazar's verified response. *See id.* at 12:12–14:20.

In deciding whether to allow an expedited motion for summary judgment on this issue, the Court noted

> I know that it's late, but on the other hand, it sounds like this defense was injected late, and I'm -- if you had something that you were going to present, I'd consider it now on the question of whether or not to allow the motion. But what I'm hearing is that at this point, you don't have anything other than a possible critique on the sufficiency of the Plaintiff's evidence.

*Id.* at 14:21–15:5. Defendant agreed with that proposition, *id.* at 15:6–8, after which the Court granted Salazar leave to expeditiously file the motion now before the Court.

## II. APPLICABLE LAW

The patentee, who best knows whether his articles (or his licensees' articles) have been marked, has the burden of pleading and proving compliance with the marking requirement of 35 U.S.C. § 287. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (citing *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *Dunlap v. Schofield*, 152 U.S. 244, 248 (1894)). Compliance with § 287 is a question of fact. *Id.* (citing *Maxwell*, 86 F.3d at 1111).

Section 287 is a limitation on damages rather than an affirmative defense. *Id.* (citing *Motorola, Inc. v. United States*, 729 F.2d 765, 770 (Fed. Cir. 1984)). Still, an alleged infringer must put the patentee on notice about specific unmarked products which the alleged infringer believes practice the patent and were sold by the patentee or his

authorized licensees. *Id.* at 1368. Otherwise, a patentee's "universe of products for which it would have to establish compliance would be unbounded." *Id.*

**III. DISCUSSION**

*Arctic Cat* held that an accused infringer who challenges a patentee's compliance with the marking statute based on *unmarked* products covered by the claims must identify those products to invoke § 287. *Arctic Cat*, 876 F.3d at 1366. In resolving a split among district courts on the issue, the Court so held because "permitting infringers to allege failure to mark without identifying any products could lead to a large scale fishing expedition and gamesmanship." *Id.*; *see also id.* at 1367–1368 (discussing the "split among the district courts regarding which party must initially identify the products which it believes the patentee failed to mark").

*Arctic Cat* did not, however, concern products that the plaintiff agreed were covered by the asserted claims. Rather, the defendant claimed the products at issue embodied the patent, and the plaintiff claimed they did not. *See Arctic Cat*, 876 F.3d at 1367 (noting it was undisputed the plaintiff's licensee did not mark any of its products with the patent number). In other words, the *Arctic Cat* parties disputed whether the products were *required* to be marked, not whether they *were* marked. *Id.*

Here, there was no such dispute—at least not as of the February 2018 dispositive-motions deadline. To the contrary, Salazar had both (1) pled there were properly marked products embodying the claims, and (2) provided verified interrogatory responses identifying the products by name. *Arctic Cat* does not impose an obligation on an alleged

infringer, such as Defendant, to simply parrot back an identification of products the patentee claims are properly marked. And because Defendant had no such obligation, Salazar had the burden of pleading and proving compliance with § 287 as to the I3 devices at the time of the dispositive-motions deadline, and should have moved for summary judgment then.[2]

Lest the parties think the Court has simply taken the easy way out rather than resolve the motion on the merits, the Court notes the timing of Defendant's motion raises some significant issues. For one, Defendant has had no opportunity (to the Court's knowledge) to examine Salazar's expert on his supplemental report, which simply states he looked at the devices and concluded they don't satisfy all of the claim limitations. Griffin Supp. Rep. [Dkt. # 239-1] at 16 (¶ 57). Nor has Defendant had an opportunity (to the Court's knowledge) to examine Salazar on his declaration, which states

> I have first hand knowledge regarding the marking of my patent number on all products manufactured and sold by I3 including the Model Hughes Remote Phone, 650D My One Remote, and My1Remote devices. Each device sold had a manufacturer sticker affixed to the device itself bearing the U.S. patent number 5,802,467.

Salazar Decl. (Apr. 18, 2018) [Dkt. # 238-2] ¶ 2. What is the "first hand knowledge"? Who did the affixing? What procedures were in place to make sure every I3 device had a sticker

---

[2] If anything, Salazar's position change about the I3 devices after the dispositive-motions deadline would entitle Defendant to additional time for investigating the I3 devices to determine if they were, in fact, covered by the asserted claims and to comply with its burden under *Arctic Cat*.

affixed? The Court can understand why Defendant might want to investigate both declarations further.

In the end, this is a problem created by Salazar—not Defendant. At the very least, Salazar should have confirmed whether the I3 devices satisfied the claim limitations earlier. He could have then withdrawn his allegation that the I3 devices embody the asserted claims and put the burden on Defendant under *Arctic Cat* to contend otherwise while discovery was open. Additionally, Salazar could have timely moved for summary judgment on whether the devices were "substantially consistently and continuously marked," regardless of whether they embody the claims or not. He did neither.

The Court should not be forced into a rushed decision on this issue on less-than-fully-developed record and without Defendant having had the opportunity to examine Salazar's declarants. Thus, based on its closer reading of *Arctic Cat* and the procedural history of this case, the Court **VACATES** its April 16, 2018, bench ruling granting leave to move for summary judgment and **DENIES** Salazar's motion as untimely.

**SIGNED this 1st day of May, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE