## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

JOE ANDREW SALAZAR,

        Plaintiff,

v.

HTC CORPORATION,

        Defendant.

Civil Action No. 2:16-cv-01096-JRG-RSP

JURY TRIAL DEMANDED
**PATENT CASE**

## DEFENDANT HTC CORPORATION'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Fred I. Williams
TX Bar No. 00794855
Email: fwilliams@velaw.com
Mario A. Apreotesi
TX Bar No. 24080772
Email: mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel: 512.542.8400
Fax: 512.542.8612

Harry Lee Gillam, Jr.
State Bar No. 07921800
Email: gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas   75670
Tel: 903.934.8450
Fax: 903.934.9257

Todd E. Landis
TX Bar No. 24030226
Email: tlandis@velaw.com
Eric J. Klein
TX Bar No. 24041258
Email: eklein@velaw.com
Jeffrey R. Swigart
TX Bar No. 24102553
Email: jswigart@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716

Parker D. Hancock
TX Bar No. 24108256
Email: phancock@velaw.com
VINSON & ELKINS LLP
1001 Fannin St., Suite 2500
Houston, Texas 77002
Tel: 713.758.2153
Fax: 713.615.5140

ATTORNEYS FOR DEFENDANT
HTC CORPORATION

## TABLE OF CONTENTS

I.    PROPOSED FINDINGS OF FACT ................................................................. 1

    A.    The '467 Patent ................................................................. 1

    B.    The Goldstein Reference ................................................................. 1

    C.    Goldstein Anticipates Claims 1-7, 29-30, and 34. ................................. 2

        1.    Claim 1 ................................................................. 2

        2.    Claim 2 ................................................................. 6

        3.    Claim 3 ................................................................. 8

        4.    Claim 4 ................................................................. 9

        5.    Claim 5 ................................................................. 9

        6.    Claim 6 ................................................................. 10

        7.    Claim 7 ................................................................. 11

        8.    Claim 29 ................................................................. 12

        9.    Claim 30 ................................................................. 13

        10.   Claim 34 ................................................................. 13

    D.    Goldstein In View Of The Knowledge Of A Person Of Ordinary Skill In The Art Renders Obvious Claims 27 And 28. ..................................... 14

        1.    Level of ordinary skill in the art. ..................................... 14

        2.    Claim 27 ................................................................. 15

        3.    Claim 28 ................................................................. 16

        4.    Objective considerations of nonobviousness ........................... 16

II.   PROPOSED CONCLUSIONS OF LAW ...................................................... 17

    A.    Legal Standard ................................................................. 17

    B.    Goldstein Is Prior Art To The '467 Patent. ........................................ 20

    C.    Goldstein Anticipates Claims 1-7, 29-30, And 34. ............................... 20

    D.    The Court Concludes That Goldstein In View Of The Knowledge Of A POSITA Renders Claims 27 And 28 Obvious. ..................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
  876 F.3d 1350 (Fed. Cir. 2017) ................................................................................. 19

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
  776 F.2d 281 (Fed. Cir. 1985) ................................................................................... 18

*Blue Calypso, LLC v. Groupon, Inc.*,
  815 F.3d 1331 (Fed. Cir. 2016) ................................................................................. 19

*Cable Elec. Prods. Inc. v. Genmark, Inc.*,
  770 F.2d 1015 (Fed. Cir. 1985) ................................................................................. 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356 (Fed. Cir. 2018) ................................................................................. 17

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
  851 F.2d 1387 (Fed. Cir. 1988) ................................................................................. 20

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ....................................................................................................... 19

*Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*,
  392 F.3d 1317 (Fed. Cir. 2004) ................................................................................. 20

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
  864 F.2d 757 (Fed. Cir. 1998) ................................................................................... 18

*Pfizer, Inc. v. Apotex, Inc.*,
  480 F.3d 1348 (Fed. Cir. 2007) ........................................................................... 17, 18

*Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*,
  528 F.3d 1365 (Fed. Cir. 2008) ................................................................................. 18

*Summit 6, LLC v. Samsung Elecs. Co., Ltd.*,
  802 F.3d 1283 (Fed. Cir. 2015) ................................................................................. 17

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012) ................................................................................. 19

*Velander v. Garner*,
  348 F.3d 1359 (Fed. Cir. 2003) ................................................................................. 18

**Statutes**

35 U.S.C. § 102(a) ............................................................................................... 18, 20

35 U.S.C. § 102(e) ..................................................................................................... 20

35 U.S.C. § 102(e)(2) ................................................................................................. 18

35 U.S.C. § 103 .......................................................................................................... 19

**Rules**

Fed. R. Civ. P. 52 .................................................................................................................... 1

Under Federal Rule of Civil Procedure 52 and the Court's Order dated March 7, 2019 (Dkt. 299), Defendant HTC Corporation ("HTC") submits these proposed Findings of Fact and Conclusions of Law regarding the validity of U.S. Patent No. 5,802,467 ("the '467 Patent").  As shown at trial and below, claims 1-7, 27-30, and 34 ("the Asserted Claims") of the '467 Patent are invalid.  In particular, HTC respectfully submits that the Court should find Claims 1-7, 29-30, and 34 are anticipated by U.S. Patent No. 5,410,326 to Goldstein ("Goldstein"), and that Claims 27-28 are obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art.

## I.     PROPOSED FINDINGS OF FACT

### A.     The '467 Patent

1.     On September 28, 1995, Joe Andrew Salazar and Luis Molero-Castro filed U.S. Patent Application No. 535,801, which issued on September 1, 1998, as the '467 Patent asserted in this case.  DX001 at 1.

2.     Plaintiff did not present testimony or corroborating evidence at trial that the Asserted Claims are entitled to an invention date earlier than September 28, 1995.

### B.     The Goldstein Reference

3.     On December 4, 1992, Steven W. Goldstein filed U.S. Patent Application No. 984,120, which issued on April 25, 1995, as U.S. Patent No. 5,410,326.  DX005 at 1; *see also* Dkt. 281 at 13:3-6.

4.     The Goldstein reference was not reviewed by the Patent Office during the prosecution of the '467 patent.  Dkt. 281 at 13:7-10.

5.     The Goldstein reference discloses "a high-end programmable remote control that is designed to work with a cable box.  It has two-way infra-red communications. It has two-way radio communications. It connects to a telephone line for making calls. And it is -- has a learning

1

function and is programmable and uses a -- a specific format for storing the data once it's been

programmed into the remote control that allows it to take limited space." *Id.* at 13:17-14:1.

> **C.     Goldstein Anticipates Claims 1-7, 29-30, and 34.**

> 1.    Claim 1

6.    Claim 1 recites the following limitations:

> 1 [preamble]. A communications, command, control and sensing system for communicating with a plurality of external devices comprising:
>
> [a] a microprocessor for generating a plurality of control signals used to operate said system, said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices;
>
> [b] a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets;
>
> [c] a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, said microprocessor generating a communication protocol in response to said user selections; and
>
> [d] an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols.

DX001 at 25:57-26:17 (claim limitation short names added).

7.    Goldstein satisfies the preamble of Claim 1. *See* Dkt. 281 at 15:20-22 (Dr. Wolfe

testifying that Goldstein satisfies the preamble).  Specifically, Goldstein discloses an infra-red

device that can communicate by sending infra-red commands to external devices; control external

devices by commanding them to perform certain functions (e.g., power on or volume down); and

sense voice, touch, and light phenomena. *Id.* at 15:23-16:3 (Dr. Wolfe explaining that Goldstein

describes "an infra-red device that can communicate by sending command -- infra-red commands to external devices.  It can command those devices to do things like turn on or lower the volume. It can control them.  And it has sensing capability, voice sensing, touch sensing, light sensing."); 16:10-23 (Dr. Wolfe citing Figure 1 and stating that Goldstein's specification "explains that this particular remote control can communicate with these devices by sending IR and FM signals, that it can control them, like turning them on and off, that it can send commands, like volume up and volume down. And, again, the three sensing capabilities that I had talked about, that it can sense light from the TV, that it can sense sounds, and that it can sense touch.").

8.     Dr. Wolfe, HTC's expert on invalidity, testified that Goldstein teaches the preamble of Claim 1, citing to Figure 1 and the accompanying text of Goldstein.  *Id.* at 16:10-24.

9.     Although Dr. Gottesman, Plaintiff's expert on invalidity, disputed that Goldstein discloses the preamble of Claim 1, he did not provide any reasoning or evidence in support of his conclusory statement on that issue.  *See* Dkt. 282 at 20:13-18.  The entirety of Dr. Gottesman's testimony for the preamble of Claim 1 was this sentence:  "In my opinion, Goldstein does not disclose the preamble, a communications, command, control and sensing system for communicating with a plurality of external devices."  *Id.*  That conclusory statement is unsupported in the record.  *See id.*

10.     Goldstein satisfies the "microprocessor" limitation (or "element a") of Claim 1.  *See* Dkt. 281 at 17:13-15 (Dr. Wolfe testifying that Goldstein satisfies the microprocessor limitation). Goldstein discloses a microprocessor (MPU 89) that works together with the Glue Logic (95).  *Id.* at 17:18-25; DX005 at 11 (Fig. 10 of Goldstein).  Goldstein describes that the MPU generates "the stored parameters for learned signals.  It also reads parameters from the memory and uses those to

generate the command code information that's been used to generate and implement protocols." Dkt. 281 at 18:24-19:3 (citing Goldstein at 12:34-38).

11.     Plaintiff, through Dr. Gottesman, agreed with Dr. Wolfe that Goldstein discloses the microprocessor limitation.  Dkt. 282 at 20:19-21:6 ("I can agree with [Dr. Wolfe] on this claim element [(element a of Claim 1)] that it is disclosed in Goldstein.").

12.     Goldstein satisfies the "memory device" limitation (or "element b") of Claim 1. *See* Dkt. 281 at 21:10-15 (Dr. Wolfe testifying that Goldstein satisfies the memory device limitation); *see also id.* at 80:25-82:8 (Dr. Wolfe citing Goldstein at 13:15-35 as satisfying the memory device limitation).  Goldstein discloses a memory device as "32K RAM" (element 90) in Figure 10.  *Id.* at 19:24-20:2 (Dr. Wolfe citing Fig. 10 of Goldstein).  Goldstein describes that "each infra-red code is retrieved from the Random Access Memory 90 and that the IR sequences from the codes -- it says the glue logic will supply the IR sequences from the codes which are stored in the RAM 90 upon the command of the user."  *Id.* at 20:3-11 (Dr. Wolfe citing Goldstein at 5:23-35).  Goldstein also describes that "these codes describe carrier frequencies, pulse widths, and pulse durations to be generated to the glue logic for producing infra-red pulses from the infra-red diode 97."  *Id.* at 20:12-15 (Dr. Wolfe citing Goldstein at 5:23-35).  In addition, Goldstein discloses some particularized memory set aside for the command codes because it provides that the codes for some external devices are preprogrammed into the device.  *Id.* at 20:16-22.  Lastly, Goldstein discloses to a person of skill in the art that the stored parameters (e.g., carrier frequencies, pulse widths, and pulse durations) can be used directly or by the GLUE Logic to recreate the command code sets.  *Id.* at 21:3-9.  Dr. Wolfe explained that "[i]f you're generating the codes from carrier frequencies, pulse widths, and pulse duration, then it must be smaller than

4

having every single pulse described, which is the – the alternative that -- that is disclosed in the Salazar patent." *Id.* at 85:23-86:4.

13.     In response, Plaintiff disputed that Goldstein discloses the memory device limitation of Claim 1.  Dkt. 282 at 21:15-22:2.  Specifically, Dr. Gottesman opined that Goldstein does not disclose three components of the memory device limitation.  *Id.*  But Dr. Gottesman supported that opinion with only the wholly conclusory statement that "there is no such disclosure in Goldstein" for each component of the memory device limitation, without any supporting reasoning or evidence.  *Id.* at 22:3-14.

14.     Goldstein satisfies the "user interface" limitation (or "element c") of Claim 1.  *See* Dkt. 281 at 23:24-24:3 (Dr. Wolfe testifying that Goldstein satisfies the user interface limitation). Goldstein discloses a device with "buttons that you can push to send commands." *Id.* at 22:4-14 (Dr. Wolfe citing Fig. 1 of Goldstein).  It also discloses a "touchscreen display 10, which is a combination of a display and a touchscreen," that "encodes each position on the screen as a selection, which means when you touch part of the screen, it knows where you touched it." *Id.* at 22:15-24 (Dr. Wolfe citing Goldstein at 12:48-53).  In other words, Goldstein teaches that "every time you touch a button on the screen, that's going to be a command.  And some of those commands are then later described as sending out IR codes." *Id.* at 23:2-5; *see also id.* at 23:8-13 (Dr. Wolfe discussing Figs. 2A and 2B of Goldstein as disclosing remote control buttons); 23:16-23 (Dr. Wolfe citing Goldstein at 10:54-63 as disclosing that when remote control buttons are touched "the microprocessor will issue the appropriate infra-red command out to the device").

15.     Plaintiff did not dispute that Goldstein discloses the user interface limitation.  Dkt. 282 at 30:2-19.

16.     Goldstein satisfies the "infra-red frequency transceiver" limitation (or "element d") of Claim 1.  *See* Dkt. 281 at 25:22-26:1 (Dr. Wolfe testifying that Goldstein satisfies the infra-red frequency transceiver limitation).  Goldstein discloses an infra-red frequency transceiver that is "split into two pieces.  There's an infra-red transmitter and an infra-red receiver.  The infra-red transmitter is Element 29, and -- and the receiver is Element 27." *Id.* at 24:16-21 (Dr. Wolfe citing Fig. 10 of Goldstein).  Goldstein describes that "remote control commands are transmitted to the control devices of Figure 1 via the infra-red output port 29." *Id.* at 24:25-25:7 (Dr. Wolfe citing Goldstein at 7:44-55).  Goldstein also describes that the "device can be programmed through a bi-directional communications link.  And it says that one of the bi-directional communications links is through the IR receiver 27." *Id.* at 25:11-21 (Dr. Wolfe citing Goldstein at 13:47-57).

17.     Plaintiff did not dispute that Goldstein discloses the infra-red frequency transceiver limitation.  Dkt. 282 at 30:22-25.

### 2.     Claim 2

18.     Claim 2 recites the following limitations:

> 2 [preamble]. The communication, command, control and sensing system of claim 1 further comprising:
>
> [a] a radio frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said devices, radio frequency signals at variable frequencies within a predetermined frequency range and in accordance with said communication protocols; and
>
> [b] a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals.

DX001 at 26:18-34 (claim limitation short names added).

6

19.     Goldstein satisfies the preamble of Claim 2 because it anticipates Claim 1.  *See* Dkt. 281 at 26:16-22; *see also infra* Findings of Facts ¶¶ 7-17.

20.     Goldstein satisfies the "radio frequency transceiver" limitation (or "element a") of Claim 2.  *See* Dkt. 281 at 27:3-8 (Dr. Wolfe testifying that Goldstein satisfies the radio frequency transceiver limitation).  Goldstein discloses a radio frequency transceiver that is split into a FM transmitter 85 and FM receiver 87 in Figure 10.  *Id.* at 27:10-14 (Dr. Wolfe citing Fig. 10 of Goldstein).  Goldstein also discloses an FM bi-directional communications link 30 that operates with radio frequency signals at variable frequencies within a predetermined frequency range.  *Id.* at 28:1-22 (Dr. Wolfe citing Goldstein at 7:42-55).  Dr. Wolfe explained that FM "stands for frequency modulation, and it works by changing the frequency of the radio signal either to represent data or to represent some other kind of information."  *Id.* at 28:12-22.

21.     Plaintiff did not dispute that Goldstein discloses the radio frequency transceiver limitation.  *See* Dkt. 282 at 24:8-11 (Dr. Gottesman opining that claim 2 is not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

22.     Goldstein satisfies the "selector" limitation (or "element b") of Claim 2.  *See* Dkt. 281 at 29:13-17 (Dr. Wolfe testifying that Goldstein satisfies the selector limitation).  Goldstein discloses GLUE Logic 95 that "decides, for example, whether or not a command goes out on the LED or on the FM radio."  *Id.* at 30:1-9 (Dr. Wolfe citing Fig. 10 of Goldstein).  Goldstein describes that "you can program your device either through the bidirectional communication link, which is referring to the radio there, or through an IR link connected to the base station."  *Id.* at 30:10-18 (Dr. Wolfe citing Goldstein at 13:47-57).  Dr. Wolfe explained that Goldstein describes "the ability to communicate between a set-top box, for example, and the handset using either the FM transmitter and receiver or the infra-red transmitter and receiver."  *Id.* at 66:2-21 (Dr. Wolfe

citing Goldstein at 12:23-33 and 13:47-57).   Dr. Wolfe further explained that "one who understands these types of drawings will see that it is the glue logic that selects whether or not the data from the microprocessor and the memory are communicated through the FM communication mechanisms or the infra-red communication mechanisms because it intervenes between them." *Id.* at 66:22-67:4.

23.   Plaintiff did not dispute that Goldstein discloses the selector limitation.  *See* Dkt. 282 at 24:8-11 (Dr. Gottesman opining that claim 2 is not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

3.   Claim 3

24.   Claim 3 recites the following limitations:

> 3 [preamble]. The communications command, control and sensing system of claim 2 wherein said user interface further comprises:
>
> a touch sensitive device generating a plurality of signals in response to actuation and a display device for displaying messages generated by said microprocessor.

DX001 at 26:35-40.

25.   Goldstein satisfies the preamble of Claim 3 because it anticipates Claim 2.  *See* Dkt. 281 at 31:8-10; *see also infra* Findings of Facts ¶¶ 19-23.

26.   Goldstein satisfies the additional limitation of Claim 3.  *See* Dkt. 281 at 32:4-6 (Dr. Wolfe testifying that Goldstein satisfies the additional limitations of Claims 3 and 4). Goldstein describes a device that "has a display, it puts icons, these little square pictures up on the display; and when you touch them, it detects your touch, and it effects some action."  *Id.* at 32:9-18 (Dr. Wolfe citing Figs. 1-3 and accompanying text of Goldstein).

27.     Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 3.  *See* Dkt. 282 at 24:12-14 (Dr. Gottesman opining that claim 3 is not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

4.     Claim 4

28.     Claim 4 recites the following limitation:

> 4. The communications command, control and sensing system of claim 3, wherein said microprocessor generates user selectable graphical icons for display on said display device.

DX001 at 26:41-44.

29.     Goldstein satisfies the preamble of Claim 4 because it anticipates Claim 3.  *See* Dkt. 281 at 32:19-24; *see also infra* Findings of Facts ¶¶ 25-27.

30.     Goldstein satisfies the additional limitation of Claim 4.  *See* Dkt. 281 at 32:4-6 (Dr. Wolfe testifying that Goldstein satisfies the additional limitations of Claims 3 and 4). Goldstein describes a device that "has a display, it puts icons, these little square pictures up on the display; and when you touch them, it detects your touch, and it effects some action."  *Id.* at 32:9-18 (Dr. Wolfe citing Figs. 1-3 and accompanying text of Goldstein).

31.     Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 4.  *See* Dkt. 282 at 24:15-20 (Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

5.     Claim 5

32.     Claim 5 recites the following limitation:

> 5. The communications, command, control and sensing system of claim 4, wherein said touch sensitive device is a touch screen having a plurality of replaceable icon sets, wherein each set is configured to be displayed on said touch screen so as to designate a desired set of functions to each one of said icon sets.

DX001 at 26:45-50.

9

33.     Goldstein satisfies the preamble of Claim 5 because it anticipates Claim 4.  *See* Dkt. 281 at 33:8-12; *see also infra* Findings of Facts ¶¶ 29-31.

34.     Goldstein satisfies the additional limitation of Claim 5.  *See* Dkt. 281 at 34:6-11 (Dr. Wolfe testifying that Goldstein satisfies the additional limitation of Claim 5).  Goldstein describes that its device includes "different icon sets that can be put on the base of the phone, each one representing different buttons."  *Id.* at 34:2-5 (Dr. Wolfe citing Figs. 2A and 2B of Goldstein).

35.     Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 5.  *See* Dkt. 282 at 24:15-20 (Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

6.     Claim 6

36.     Claim 6 recites the following limitation:

> 6. The communications, command, control and sensing system of claim 1, further comprising a sound activated device coupled to said microprocessor, said sound activated device used to recognize sound signals including sound commands corresponding to executable logical commands, said sound activated device generating signals in response to recognized sound signals for further processing by said microprocessor.

DX001 at 26:51-58.

37.     Goldstein satisfies the preamble of Claim 6 because it anticipates Claim 1.  *See* Dkt. 281 at 26:16-22; *see also infra* Findings of Facts ¶¶ 7-17.

38.     Goldstein satisfies the additional limitation of Claim 6.  *See* Dkt. 281 at 35:23-36:7 (Dr. Wolfe testifying that Goldstein satisfies the additional limitation of Claim 6).  Goldstein discloses a microphone and speaker.  *Id.* at 35:3-7 (Dr. Wolfe citing Fig. 10 of Goldstein). Dr. Wolfe explained that "inside the glue logic, because of the way that those are hooked up, we would understand that those are analog devices, they're connected to digital devices. The way one does that is with analog to digital converter, which is the -- the coupling device."  *Id.* at 35:3-13.

Goldstein also discloses that "you can control a device using voice commands.  And also, that -- that the voice response is digitized which means there must be this kind of coupling device. It also says that you can provide a voice message through microphone 28." *Id.* at 35:16-22 (Dr. Wolfe citing Goldstein at 30:54-68).

39.     Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 6.  *See* Dkt. 282 at 24:15-20 (Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 is not anticipated by Goldstein).

7.     Claim 7

40.     Claim 7 recites the following limitation:

> 7. The communications command, control and sensing system of claim 6, further comprising a sound and data coupling device adapted to receive sound as data signals.

DX001 at 26:59-61.

41.     Goldstein satisfies the preamble of Claim 7 because it anticipates Claim 6.  *See* Dkt. 281 at 36:2-7; *see also infra* Findings of Facts ¶¶ 37-39.

42.     Goldstein satisfies the additional limitation of Claim 7.  *See* Dkt. 281 at 35:23-36:11 (Dr. Wolfe testifying that Goldstein satisfies the additional limitation of Claim 7).  Goldstein discloses a microphone and speaker.  *Id.* at 35:3-7 (Dr. Wolfe citing Fig. 10 of Goldstein). Dr. Wolfe explained that "inside the glue logic, because of the way that those are hooked up, we would understand that those are analog devices, they're connected to digital devices. The way one does that is with analog to digital converter, which is the -- the coupling device." *Id.* at 35:3-13. Goldstein also discloses that "you can control a device using voice commands.  And also, that -- that the voice response is digitized which means there must be this kind of coupling device. It also says that you can provide a voice message through microphone 28." *Id.* at 35:16-22 (Dr. Wolfe citing Goldstein at 30:54-68).

43.     Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 7.  *See* Dkt. 282 at 24:15-20 (Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 was not anticipated by Goldstein).

8.     Claim 29

44.     Claim 29 recites the following limitation:

> 29. The communications, command, control and sensing system of claim 1, further comprising a sensor coupled to said microprocessor for detecting and measuring physical phenomena corresponding to said user.

DX001 at 29:24-27.

45.     Goldstein satisfies the preamble of Claim 29 because it anticipates Claim 1.  *See* Dkt. 281 at 26:16-22; *see also infra* Findings of Facts ¶¶ 7-17.

46.     Goldstein satisfies the additional limitation of Claim 29.  *See* Dkt. 281 at 41:7-15 (Dr. Wolfe testifying that Goldstein satisfies the additional limitation of Claim 29).  Goldstein discloses "at least two sensors that are taught that meet these limitations, the touch sensor and the sound sensor." *Id.* at 41:14-21.  Dr. Wolfe explained that "[o]ne is shown as touchpad 10, along with the conductive capacitive receiver 92, and the other one is microphone 28." *Id.* at 41:22-42:3 (Dr. Wolfe citing Fig. 10 of Goldstein).  Dr. Wolfe also explained that the conductive capacitive receiver 92 means "means a conductive or capacitive receiver the way it's written there.  Those are the two most common forms of low cost touchscreens on portable devices in the early 1990s." *Id.* at 42:6-11.  He further explained that "[t]he reason that it is touch sensitive is because it measures the conductance or capacitance in order to determine where you're touching." *Id.* at 52:4-19 (Dr. Wolfe citing Goldstein at 7:23-32).  In other words, the touchscreen disclosed in Goldstein "measures the position of your finger." *Id.* at 52:20-24.

47.     Dr. Gottesman did not dispute that the Goldstein reference discloses a touch sensitive screen that the user would have used in order to tap on icons.  Dkt. 282 at 33:22-34:4.

Dr. Gottesman also agreed that "when the user tapped on those icons, there would have been a response from the device." *Id.* at 34:5-7.   Dr. Gottesman further agreed that "when someone handles the remote control device [of Goldstein], that the receiver will respond." *Id.* at 34:8-21 (Dr. Gottesman referring to Goldstein at 12:54-61).

9.   Claim 30

48.   Claim 30 recites the following limitation:

30. The communications, command, control and sensing system of claim 29 wherein said sensor measures said user's physical indications.

DX001 at 29:28-30.

49.   Goldstein satisfies the preamble of Claim 30 because it anticipates Claim 29.  *See* Dkt. 281 at 42:17-22; *see also infra* Findings of Facts ¶¶ 45-47.

50.   Goldstein satisfies the additional limitation of Claim 30.  *See* Dkt. 281 at 42:25-43:13 (Dr. Wolfe testifying that Goldstein satisfies the additional limitation of Claim 30). Dr. Wolfe explained that the touchscreen disclosed in Goldstein "measures the position of your finger." *Id.* at 52:20-24.   Regarding the additional limitation of Claim 30, Dr. Wolfe explained that "touching something is a physical indication.  And I think technically speaking to something is a physical indication, as well.  You're moving your vocal cords." *Id.* at 42:25-43:7.

51.   Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 30.  *See* Dkt. 282 at 19:4-20:2 (Dr. Gottesman opining that claim 30 is not invalid based on his opinion that claim 29 was not anticipated by Goldstein).

10.   Claim 34

52.   Claim 34 recites the following limitations:

34. A communications, command, control and sensing system for communicating with a plurality of external devices comprising:

a microprocessor for generating a plurality of control signals used to operate said system, said microprocessor creating a plurality of reprogrammable communication protocols for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices;

a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set;

a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, said microprocessor generating a communication protocol in response to said user selections; and

an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols.

DX001 at 30:4-34.

53.    Goldstein anticipates Claim 34.  *See* Dkt. 281 at 43:17-25.  Dr. Wolfe testified that "the additional words [of Claim 34] are also taught by the same material that we previously discussed [for Claim 1]."  *Id.* at 44:1-5; *see also infra* Findings of Facts ¶¶ 7-17.

54.    Plaintiff disputed that Goldstein satisfies the limitations of Claim 34 for the same conclusory and unsupported reasons as identified for Claim 1.  *See* Dkt. 282 at 25:3-15.

**D.    Goldstein In View Of The Knowledge Of A Person Of Ordinary Skill In The Art Renders Obvious Claims 27 And 28.**

1.    Level of ordinary skill in the art.

55.    "The parties have agreed that the level of ordinary skill in this case is a person who at the time the '467 patent was filed would have had a Bachelor's degree in electrical engineering or computer science or an equivalent field and approximately two years of experience in working with electronic devices that employ infra-red and/or radio frequency communications or an

14

equivalent combination of education and experience."   Dkt. 282 at 29:13-20 (final jury instructions).

             2.    <u>Claim 27</u>

56.    Claim 27 recites the following limitations:

> 27. The communications, command, control and sensing system of claim 1 wherein one of said parameter sets stored corresponding to one of said command code sets is accessible for use so as to create other command code sets.

DX001 at 29:14-17.

57.    Goldstein satisfies the preamble of Claim 27 because it anticipates Claim 1.  *See* Dkt. 281 at 26:16-22; *see also infra* Findings of Facts ¶¶ 7-17.

58.    The additional limitation of Claim 27 is rendered obvious by Goldstein in view of the knowledge of one of skill in the art.  Dkt. 281 at 38:8-17.  Goldstein discloses that "you store command codes in these parameter sets and that you can build them by learning codes."  *Id.* at 37:17-19.  Goldstein also discloses that "[s]ome of the ways that you could add codes to the device, [include] by having your retailer do it or by downloading them from the phone that's connected to the device."  *Id.* at 37:25-38:7 (Dr. Wolfe citing Goldstein at 15:10-19); *see also id.* at 58:17-59:19 (Dr. Wolfe citing Goldstein at 3:29-44 and 14:56-15:19 as "describ[ing] the process in which you can add additional remote control codes to the parameter sets that – that you have").  From these disclosures, "a person of ordinary skill would really understand that it's really obvious that once you've learned three codes, if you want to add a fourth code, you start with the three that you already had and you just add one more."  *Id.* at 37:20-24.

59.    Plaintiff did not dispute that Goldstein in view of the knowledge of a person of ordinary skill renders obvious the additional limitation of Claim 27.  *See* Dkt. 282 at 24:15-20

(Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 was not anticipated by Goldstein).

       3.    <u>Claim 28</u>

60.    Claim 28 recites the following limitations:

> 28. The communications, command, control and sensing system of claim 27, wherein said microprocessor is configured to concurrently generate more than one command code sets so as to allow said user interface to control more than one corresponding external devices among said plurality of external devices.

DX001 at 29:18-23.

61.    Goldstein in view of the knowledge of one ordinary skill in the art satisfies the preamble of Claim 28 because it renders obvious Claim 27.  *See* Dkt. 281 at 38:13-23; *see also infra* Findings of Facts ¶¶ 57-59.

62.    The additional limitation of Claim 28 is disclosed by Goldstein.  Dkt. 281 at 39:12-40:2.  Goldstein discloses that "it can work with more than one external device at a time." *Id.* at 40:3-7 (Dr. Wolfe citing Fig. 1 of Goldstein).  Specifically, Goldstein discloses that "[i]t controls a plurality of devices 6, 7, 8, and 9." *Id.* at 40:8-14 (Dr. Wolfe citing Goldstein at 7:4-15).

63.    Plaintiff did not dispute that Goldstein discloses the additional limitation of Claim 28.  *See* Dkt. 282 at 24:15-20 (Dr. Gottesman opining that claims 4-7 and 27-28 are not invalid based solely on his opinion that claim 1 was not anticipated by Goldstein).

       4.    <u>Objective considerations of nonobviousness</u>

64.    Based on the expert reports of Mr. Blok (Plaintiff's expert on damages) and Mr. Griffin (Plaintiff's expert on infringement), Dr. Gottesman provided wholly conclusory testimony that "there is a nexus between practicing the invention and the commercial success of the HTC product practicing the invention."  Dkt. 282 at 9-17.

65.     The Court entered final judgment that HTC has not infringed claims 1-7, 27-30, and 34 of the '467 Patent through the use, sale, or offer for sale in the United States, or the import into the United States, of the HTC One M7, One M8, and One M9 products.  Dkt. 284.

## II.     PROPOSED CONCLUSIONS OF LAW

Having considered the parties' arguments and having made the foregoing findings of fact, the Court makes the following conclusions of law:

### A.     Legal Standard

1.     "A party challenging the validity of a patent must establish invalidity by clear and convincing evidence." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015).  While a party challenging the validity of a patent bears "the initial burden of going forward with evidence to support its invalidity allegation," once that evidence has been presented, the "burden of going forward shifts to the patentee to present contrary evidence and argument." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

2.     "[I]f evidence is presented establishing a prima facie case of invalidity, the opponent of invalidity must come forward with evidence to counter the prima facie challenge to the presumption of section 282." *Cable Elec. Prods. Inc. v. Genmark, Inc.*, 770 F.2d 1015, 1022 (Fed. Cir. 1985).  "[E]ven though a patentee never *must* submit evidence to support a conclusion by a judge or jury that a patent remains valid, once a challenger introduces evidence that might lead to a conclusion of invalidity—what we call a prima facie case—the patentee would be well advised to introduce evidence sufficient to rebut that of the challenger." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007) (citation and internal quotation marks omitted) (emphasis in original).  If the record shows that the challenger adduced facts regarding the invalidity of the challenged patent, which were unrebutted by the patentee and accepted by the district court as the fact finder, then "[t]he district court cannot be said to have erred by not

17

discussing those unrebutted facts." *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1380 (Fed. Cir. 2008).  "The trial court has the responsibility to determine whether the challenger has met its burden by clear and convincing evidence by considering the totality of the evidence, including any rebuttal evidence presented by the patentee." *Pfizer*, 480 F.3d at 1360.

3.      The fact finder may "accord little weight to broad conclusory statements that it determine[s] were unsupported by corroborating references.  It is within the discretion of the trier of fact to give each item of evidence such weight as it feels appropriate." *Velander v. Garner*, 348 F.3d 1359, 1371 (Fed. Cir. 2003); *see also Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 787-88 (Fed. Cir. 1998) ("Determining the weight and credibility of the evidence is the special province of the trier of fact. The trier of fact must not only identify the prior art, its scope and content, but it must also weigh all the evidence, impose the viewpoint of the person of ordinary skill, and determine if the burden of proof has been met.") (citation omitted).  "Lack of factual support for expert opinion going to factual determinations, however, may render the testimony of little probative value in a validity determination." *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 294 (Fed. Cir. 1985).

4.      A patent claim is invalid for anticipation under 35 U.S.C. § 102(a) if "the invention was … patented or described in a printed publication in this … country, before the invention thereof by the applicant for patent."  35 U.S.C. § 102(a).  In addition, a patent claim is invalid for anticipation under § 102(e)(2) if "the invention was described in … a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent."  35 U.S.C. § 102(e)(2).

5.      A prior art reference anticipates if it "discloses each and every element of the claimed invention arranged or combined in the same way as in the claim."  *Blue Calypso, LLC v.*

*Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (internal quotation marks, alterations, and citation omitted).  "However, a reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination."  *Id.* (internal quotation marks, alterations, and citation omitted).

6.     A patent is obvious and invalid if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103.  In *Graham v. John Deere Co.*, the Supreme Court set the framework for the obviousness inquiry:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

383 U.S. 1, 17–18 (1966).  "The Graham factors—(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness—are questions of fact reviewed for substantial evidence."  *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017).

7.     "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness."  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012).  "A nexus must be established between the merits of the claimed invention and evidence of commercial

success before that evidence may become relevant to the issue of obviousness." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). "The term 'nexus' is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness. The burden of proof as to this connection or nexus resides with the patentee." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

**B.     Goldstein Is Prior Art To The '467 Patent.**

8.     Because Goldstein issued as a patent on April 25, 1995, before the '467 patent's filing date of September 28, 1995, and because Salazar has failed to establish conception and reduction to practice of the claimed inventions prior to April 25, 1995, the Court concludes that Goldstein is prior art to the '467 Patent under either § 102(a) or (e). *See* Findings of Fact at ¶¶ 1-3.

**C.     Goldstein Anticipates Claims 1-7, 29-30, And 34.**

9.     Based on the findings of fact and applicable legal standards above, the Court finds that Goldstein anticipates Claims 1-7, 29-30, and 34 of the '467 Patent.

10.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 1 arranged or combined in the same way as in Claim 1. Findings of Fact at ¶¶ 7-17. As a result, Goldstein anticipates Claim 1.

11.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 2 arranged or combined in the same way as in Claim 2. Findings of Fact at ¶¶ 19-23. As a result, Goldstein anticipates Claim 2.

12.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 3 arranged or combined in the same way as in Claim 3.  Findings of Fact at ¶¶ 25-27.  As a result, Goldstein anticipates Claim 3.

13.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 4 arranged or combined in the same way as in Claim 4.  Findings of Fact at ¶¶ 29-31.  As a result, Goldstein anticipates Claim 4.

14.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 5 arranged or combined in the same way as in Claim 5.  Findings of Fact at ¶¶ 33-35.  As a result, Goldstein anticipates Claim 5.

15.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 6 arranged or combined in the same way as in Claim 6.  Findings of Fact at ¶¶ 37-39.  As a result, Goldstein anticipates Claim 6.

16.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 7 arranged or combined in the same way as in Claim 7.  Findings of Fact at ¶¶ 41-43.  As a result, Goldstein anticipates Claim 7.

17.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 29 arranged or combined in the same way as in Claim 29.  Findings of Fact at ¶¶ 45-47.  As a result, Goldstein anticipates Claim 29.

18.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 30 arranged or combined in the same way as in Claim 30.  Findings of Fact at ¶¶ 49-51.  As a result, Goldstein anticipates Claim 30.

19.     HTC established by clear and convincing evidence that Goldstein discloses each and every limitation of Claim 34 arranged or combined in the same way as in Claim 34.  Findings

of Fact at ¶¶ 53-54; *see also* Findings of Fact at ¶¶ 7-17.  As a result, Goldstein anticipates Claim 34.

**D.      The Court Concludes That Goldstein In View Of The Knowledge Of A POSITA Renders Claims 27 And 28 Obvious.**

20.      The Court concludes that the level of ordinary skill in this case is a person who at the time the '467 patent was filed would have had a Bachelor's degree in electrical engineering or computer science or an equivalent field and approximately two years of experience in working with electronic devices that employ infra-red and/or radio frequency communications or an equivalent combination of education and experience.  *See* Dkt. 282 at 29:13-20.

21.      Given the jury's verdict that the accused HTC products do not infringe Claims 1-7, 27-30, and 34 of the '467 Patent, the Court concludes that Plaintiff has failed to prove a legally and factually sufficient connection between the commercial success of the accused HTC products and the patented invention.

22.      Based on the findings of fact and applicable legal standards above, the Court finds that Goldstein in view of the knowledge of a POSITA renders Claims 27 and 28 of the '467 Patent obvious.

23.      HTC established by clear and convincing evidence that Goldstein in view of the knowledge of a POSITA renders obvious the additional limitation of Claim 27.  Findings of Fact at ¶¶ 57-59; *see also* Findings of Fact at ¶¶ 7-17 (establishing anticipation of Claim 1 by Goldstein). As a result, the Court concludes that Goldstein in view of the knowledge of a POSITA renders Claim 27 obvious.

24.      HTC established by clear and convincing evidence that Goldstein discloses the additional limitation of Claim 28.  Findings of Fact at ¶¶ 61-63; *see also* Findings of Fact at ¶¶ 7-17 (establishing anticipation of Claim 1 by Goldstein), ¶¶ 57-59 (establishing that Goldstein in

view of the knowledge of a POSITA renders obvious the additional limitation of Claim 27).  As a result, the Court concludes that Goldstein in view of the knowledge of a POSITA renders Claim 28 obvious.

Dated: March 18, 2019

Respectfully submitted by,

*/s/ Fred I. Williams*
Fred I. Williams
State Bar No. 00794855
fwilliams@velaw.com
Mario A. Apreotesi
State Bar No. 24080772
mapreotesi@velaw.com
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746
Tel:  512.542.8400
Fax: 512.542.8612

Todd E. Landis
State Bar No. 24030226
tlandis@velaw.com
Eric J. Klein
State Bar No. 24041258
eklein@velaw.com
Jeffery Swigart
State Bar No. 24102553
jswigart@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Tel:  214.220.7700
Fax: 214.220.7716

Parker D. Hancock
State Bar No. 24108256
phancock@velaw.com
VINSON & ELKINS LLP
1001 Fannin St., Suite 2500
Houston, Texas 77002
Tel: 713.758.2153
Fax: 713.615.5140

Harry Lee Gillam, Jr.
State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas   75670
Tel:  903.934.8450
Fax: 903.934.9257

*Counsel for Defendant HTC Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served on March 18, 2019, with a copy of the foregoing document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3).

*/s/ Fred I. Williams*
Fred I. Williams