**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**JOE ANDREW SALAZAR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS**
**OF LAW ON THE ISSUE OF THE VALIDITY OF U.S. PATENT NO. 5,802,467**

# TABLE OF CONTENTS

I.   PROPOSED FINDINGS OF FACT ................................................................1

    A.   The Patent-in-Suit. ...........................................................................1

    B.   Procedural History ...........................................................................1

    C.   Background of Dr. Gottesman ..........................................................4

    D.   Trial Testimony Relating to the Validity of the Asserted Claims ...........5

Claims 1 and 2.........................................................................................5

Claims 3-7 ...............................................................................................9

Claims 27 and 28 .....................................................................................9

Claims 29 and 30 ...................................................................................11

Claim 34.................................................................................................13

II.  PLAINTIFF'S CONCLUSIONS OF LAW ................................................15

    A.   HTC CORP. HAS NOT OVERCOME THE PRESUMPTION OF VALIDITY..15

        1.   Anticipation. .........................................................................17

            a.   Substantive law on anticipation. ..................................17

            b.   HTC Corp. has not proven by clear and convincing evidence that claims 1-7, 29-30, and 34 are anticipated by the Goldstein reference ..........................................................18

               i.   Claim 1...............................................18

               ii.  Claim 2...............................................19

               iii. Claim 3...............................................20

               iv.  Claim 4...............................................20

               v.   Claim 5...............................................20

               vi.  Claim 6...............................................21

       vii.    Claim 7 .................................................................................21

       viii.   Claim 29 ...............................................................................22

       ix.     Claim 30 ...............................................................................23

       x.      Claim 34 ...............................................................................24

   2.    Obviousness ....................................................................................24

     a.    Substantive law on obviousness. ..................................................24

     b.    HTC Corp. has not proven by clear and convincing evidence that claim 27 and 28 are obvious in light of Goldstein and the knowledge of a POSITA ...............................................................................26

       i.      Claim 27 ...............................................................................26

       ii.     Claim 28 ...............................................................................27

III.   CONCLUSION ...............................................................................................27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 4803941
   (E.D. Tex. Oct. 16, 2017)...................................................................................................25

*Contentguard Holdings, Inc. v. Google, Inc.*, No. 2:13-CV-1112-JRG, 2016 WL 7665900
   (E.D. Tex. July 8, 2016)...............................................................................................16, 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) ................16

*Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223 (Fed. Cir. 2015) ....................15

*E.I. du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 657 F. App'x 1004
   (Fed. Cir. 2016).................................................................................................................26

*Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731 (Fed. Cir. 2013) .........................................25

*Graham v. John Deere Co.,* 383 U.S. 1 (1966) ............................................................................25

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063
   (Fed. Cir. 2012)...........................................................................................................15, 25

*In re Gleave*, 560 F.3d 1331 (Fed. Cir. 2009)..................................................................... *passim*

*Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853 (Fed. Cir. 2015).................................................25

*KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398 (2007).....................................................................25

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011) ................................................................15

*Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488
   (E.D. Tex. July 16, 2015)...................................................................................22, 23, 26

*Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967 (Fed. Cir. 2010). ......................................17

*Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339 (Fed. Cir. 2018)............................................15

*Procter & Gamble Co. v. Teva Pharms. USA, Inc.,* 566 F.3d 989 (Fed. Cir. 2009) ....................25

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F.3d 1344 (Fed. Cir. 2001)...................15

*Sanitec Indus. v. Micro-Waste Corp.*, No. CIV.A. H-04-3066, 2006 WL 3455000
   (S.D. Tex. Nov. 28, 2006)...............................................................................................15

i

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372 (Fed. Cir. 2009) .............................16

**Statutes**

35 U.S.C. § 102(b) ...........................................................................................................17

35 U.S.C. § 103(a) .......................................................................................................25, 26

35 U.S.C. § 282...............................................................................................................15

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| JOE ANDREW SALAZAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 2:16-cv-01096-JRG-RSP |
| | § | |
| HTC CORPORATION, | § | |
| | § | |
| Defendant. | § | |

**JOE ANDREW SALAZAR'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE ISSUE OF THE VALIDITY OF U.S. PATENT NO. 5,802,467**

Plaintiff Joe Andrew Salazar ("Salazar"), respectfully files these Proposed Findings of Fact and Conclusions of Law regarding Defendant HTC Corporation ("HTC Corp.")'s invalidity counterclaims of claims 1-7, 27-30, and 34 of U.S. Patent No. 5,802,467.

**I.      PROPOSED FINDINGS OF FACT[1]**

  **A.      The Patent-in-Suit**

1.      U.S. Patent No. 5,802,467 (the "'467 patent" or "Salazar patent"), titled "Wireless and wired communications, command, control and sensing system for sound and/or data transmission and reception," issued on September 1, 1998.  PX-001.

2.      Salazar is the owner of all rights, title, and interest in and to the '467 patent and its claims.

  **B.      Procedural History**

---

[1] Salazar asks that where a finding of fact is appropriately deemed a conclusion of law, or vice-versa, or where a finding or conclusion under one heading is more appropriately placed under another heading, the Court do so.

3.      On October 5, 2016, Plaintiff Joe Andrew Salazar sued HTC Corp. for infringement of various claims of the '467 patent.   HTC Corp. asserted counterclaims against Salazar for declaratory judgment of noninfringement and invalidity of the asserted claims of the '467 patent. *See* Dkt. Nos. 1, 17, 170, and 180.

4.      The Court held a jury trial on May 7 through May 11, 2018, where the parties presented evidence on the issues of infringement and validity.   Both issues were fully submitted to and tried by a jury.   Dkt. 299 at 5.

5.      At trial, HTC presented a single prior art reference, U.S. Patent No. 5,410,326 titled "Programmable remote control device for interacting with a plurality of remotely controlled devices" (Goldstein, DX005), claiming that claims 1-7, 29-30, and 34 of the '467 patent were anticipated in view of Goldstein, and that claims 27-28 were obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art.   Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15-45:10.

6.      Both parties presented evidence through expert witnesses on the issue of patent validity.   *See generally* Dkt. No. 280, 05/09/2018 AM Hr'g Tr.; Dkt. No. 281, 05/09/2018 PM Hr'g Tr.; Dkt. No. 282, 05/10/2018 Hr'g Tr.   Relevant to the patent invalidity issue before the Court, at trial, the Court heard testimony from the following expert witnesses:

- Andrew Wolfe, Ph.D. was offered by HTC Corp. and recognized by the Court as an expert witness. Dkt. No. 280, 05/09/2018 AM Hr'g Tr. at 87:21-88:7. Dr. Wolfe teaches part-time at Santa Clara University and is a board member of a company in the video game space. *Id.* at 82:14-20, 86:8-9. Dr. Wolfe received his Ph.D. in computer engineering (*id.* at 84:17-18) and teaches classes in computer design,

practical electronics, introductory electronics labs, and mechatronics (*id.* at 86:10-15).

- Oded Gottesman, Ph.D. was tendered by Salazar and recognized by the Court as an expert witness. Dkt. No. 282, 05/10/2018 Hr'g Tr. at 9:6-13. Dr. Gottesman is the cofounder and CTO of a company involved in research and development of hardware and software for organizations such as the Department of Defense, National Security Agency, and NATO. *Id.* at 7:15-8:1. His Ph.D. dissertation related to signal compression (*id.* at 7:4-10), and he is a named inventor on four U.S. and international patents relating to signal compression and telecommunication transmission of various signals over telecommunications networks (*id.* at 8:17-25).

7.     Both parties cross-examined the other party's expert witness. Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 45:22-96:6; Dkt. No. 282, 05/10/2018 Hr'g Tr., at 28:1-35:1.

8.     At trial, Dr. Wolfe opined that all of the asserted claims were anticipated or obvious in light of Goldstein and the knowledge of a POSITA. Dr. Gottesman offered rebuttal testimony challenging Dr. Wolfe's testimony and opining that HTC Corp. did not overcome the presumption of validity by clear and convincing evidence and that the validity of the asserted claims should be maintained. *See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15-45:9; Dkt. No. 282, 05/10/2018 Hr'g Tr. at 5:3-27:25.

9.     The jury found the asserted claims of the '467 patent not infringed by HTC Corp., and HTC Corp. withdrew its invalidity counterclaim after submitting it to the jury but before being decided by the jury, thus waiving its right to have a jury decide that issue. Dkt. No. 283, 05/11/2018 Hr'g Tr., at 87:12-88:16; Dkt. No. 299 at 5.

3

10.    Following the trial, HTC Corp. filed a motion to dismiss its invalidity counterclaim without prejudice or in the alternative a motion to dismiss pursuant to Fed. R. Civ. Pro. 50(b).  Dkt. No. 290.

11.    Salazar opposed HTC Corp.'s motion, arguing that HTC Corp.'s removal of the issue from the jury constituted a dismissal with prejudice.  Dkt. No. 292.

12.    The Court denied HTC Corp.'s motion in its entirety and ordered each party to separately submit proposed findings of fact and conclusions of law addressing the validity of the '467 Patent.  Dkt. No. 299 at 5-6.

### C.    Background of Dr. Gottesman

13.    Dr. Gottesman earned a Bachelor's degree in electrical and computer engineering in 1988 and a Master's degree in electrical and computer engineering in 1992.  He earned a doctorate in electrical engineering in 2000 from the University of California, Santa Barbara and subsequently pursued a postdoctoral research also at the University of California, Santa Barbara. Dkt. No. 282, 05/10/2018 Hr'g Tr., at 6:23-7:3.

14.    Dr. Gottesman's Ph.D. dissertation related to signal compression.  *Id.* at 7:4-10.

15.    Dr. Gottesman is a cofounder and CTO of Compandent, Inc.  Compandent, Inc. was involved in research and development of hardware and software for organizations such as the Department of Defense, National Security Agency, DARPA, the Defense Advanced Research Projects Agency, Microsoft Corporation, and NATO.  *Id.* at 7:15-21.  As CTO of Compandent, Inc., Dr. Gottesman conducts software and hardware research and development.  *Id.* at 7:22-8:1.

16.    Dr. Gottesman has been engaged as a technical expert in patent litigation in approximately 30 cases (*id.* at 8:2-6), and is a named inventor on four U.S. patents and international

4

patents relating to signal compression and telecommunication transmission of various signals over telecommunication networks (*id.* at 8:17-25).

17.    Dr. Gottesman has received awards for his work from the Israeli parliament and the international Institute of Electrical and Electronics Engineers (IEEE).  *Id.* at 8:8-16.

**D.    Trial Testimony Relating to the Validity of the Asserted Claims**

18.    At trial, HTC Corp. alleged that claims 1-7, 29-30, and 34 of the '467 patent were anticipated in view Goldstein, and that Claims 27-28 were obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15-45:10.

19.    Plaintiff's counsel cross-examined Dr. Wolfe with respect to several of the limitations he claimed were found in the Goldstein remote control device reference.  *See id.* at 46:25-24, 47:16-22, 48:8-12, 49:2-50:11, 52:9-58:7, 61:17-66:6, 67:5-25.

20.    Plaintiff's rebuttal expert, Dr. Gottesman, opined that HTC Corp. did not overcome the presumption of validity by clear and convincing evidence with respect to each patent claim asserted in this case and that the validity of each claim should be sustained.  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 9:6-27:21.

**Claims 1 and 2**

21.    Claim 1 of the '467 patent consists of five claim elements, including the preamble. The parties agree that the "communications, command, control and sensing system" in the preamble are substantive limitations.  *See* '467 patent, claim 1; *see also* Salazar's Proposed Constructions of Disputed Terms [Dkt. # 73-2] at 686; HTC's Proposed Constructions & Identification of Evidence [Dkt. # 73-3] at 1.

22.    At trial, Salazar opposed HTC Corp.'s assertion that the following two limitations were taught by Goldstein:

- A communications, command, control and sensing system for communicating with a plurality of external devices comprising: (preamble); and

- a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets; (at trial and here, referred to as the "memory device limitation").

23.    In its Claim Construction Opinion and Order (Dkt. No. 108 at 30), the Court construed the preamble to have its plain and ordinary meaning and the memory device limitation of claim 1 to mean "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets."

24.    The Goldstein reference does not include the phrase "command code" or "command code sets." *See generally* '326 patent; Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 61:17-20.

25.    The Goldstein reference does not include the phrase "parameters" or "parameter sets." *See generally* '326 patent.

26.    The Goldstein reference does not include the term "recreate." *See generally* '326 patent.

27.    The Goldstein reference is not directed towards solving the memory space problems of the Salazar patent. *See generally* '326 patent; '467 patent. Goldstein does not disclose or teach the conservation of memory space, memory storage efficiency, compression, or any concerns with memory space limitations. *See id.*

28.     Dr. Wolfe relied on references to "glue logic" to teach many of the limitations of the asserted claims of the '467 patent including selector, recreation of command code sets, and parameter sets.  *See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 46:25-24, 47:16-22, 48:8-12, 49:2-50:11, 52:9-58:7, 61:17-66:6, 67:5-25.

29.     The Goldstein patent does not define the term "general logic interface (glue) logic." *See generally* '326 patent.

30.     Dr. Wolfe describes the term "glue logic" as taught by Goldstein as "a fancy way of saying other stuff."  *See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 18:1-5.

31.     Dr. Wolfe did not demonstrate how his references to glue logic in Goldstein teach "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets."  05/09/2018 PM Hr'g Tr., at 20:5-21:9, 46:25-24, 47:16-22, 48:8-12, 49:2-50:11, 52:9-58:7, 61:17-66:6, 67:5-25.

32.     Dr. Gottesman testified that Salazar's invention is a communication, command, control and sensing system that has three main features.  "One is a two-way infra-red communications, IR.  The other one is a two-way radio frequency communications.  And the third is some clever way of generating command sets from parameter sets so you don't need to store all the command sets.  And by using that clever idea, you save memory in the device -- the system." *See* Dkt. No. 282, 05/10/2018 Hr'g Tr., at 11:5-15.

33.     Relying on the USPTO's Election Restriction, Dr. Gottesman found that the USPTO distinguished a communication, command, control and sensing system (the '467 patent's

field of invention) from a remote control device (Goldstein's classification).  *See* Dkt. No. 282, 05/10/2018 Hr'g Tr., at 12:13-13:13; PX-004; '326 patent [51].

34.     The USPTO's Notice of Allowability states that "Though remote control systems with the capability of communicating with a plurality of external devices with different communication protocols and command codes are well known in the art…a communications, command, control and sensing system, as defined by Applicant's independent claims, with the additional capability to recreate an external devices command code set from a set of parameters for the external device and thus, reduce the required memory space to store command code sets to that of the parameter set alone **has not been observed in the prior art**."  *See* Dkt. No. 282, 05/10/2018 Hr'g Tr., at 13:13-15:1; PX-003 at 4 ¶ 4 (emphasis in original).

35.     In his expert opinion, Dr. Gottesman concluded that Goldstein does not teach what the examiner described in the USPTO Notice of Allowability as the novel and nonobvious aspect of the Salazar patent.  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 11:5-15; 14:6-24; 21:9-21.

36.     Dr. Gottesman testified that Goldstein does not teach three aspects of the memory device limitation: (1) retrieval of parameter sets by said microprocessor, (2) the capability to recreate a desired command code set, or (3) the idea such that the memory space required to store said parameter is smaller than the memory space required to store said command code sets.  *Id.* at 22:5-14.

37.     Claim 2 depends from claim 1 and adds additional limitations, including:

- **a selector** controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals.

8

*See* '467 patent, claim 2.

38.     In its Claim Construction Opinion and Order (Dkt. No. 108), the Court construed "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as desired, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals" to mean "a selector controlled by said microprocessor for enabling said radio frequency transceiver and said infra-red frequency transceiver to transmit a desired command code set generated by said microprocessor via either radio frequency signals and infra-red signals as selected by a user, and to receive a signal from any one of said external devices via either radio frequency signals and infra-red signals."

39.     The Goldstein reference does not include the term "selector."  *See generally* '326 patent; 67:5-25.

40.     Dr. Wolfe relied on his reference to "glue logic" to teach the selector limitation of claim 2.  *See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 30:1-3; 67:5-25.

**Claims 3-7**

41.     Claims 3-7 depend from claim 1.  *See* '467 patent, claims 3-7.

42.     Dr. Gottesman testified that the presumption of validity of claims 3-7 should be maintained.  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 24:12-20.

**Claims 27 and 28**

43.     Claim 27 depends from claim 1 and adds the additional limitation: "wherein one of said parameter sets stored corresponding to one of said command code sets is accessible for use so as to create other command code sets."

9

44.    Claim 28 depends from claim 27 and adds the additional limitation: "wherein said microprocessor is configured to concurrently generate more than one command code sets so as to allow said user interface to control more than one corresponding external devices among said plurality of external devices."

45.    In its Claim Construction Opinion and Order (Dkt. No. 108), the Court construed "parameter sets" to have its plain and ordinary meaning.  The Court construed "command code set that defines the signals that are employed to communicate with each one of said external devices" to have its plain and ordinary meaning.

46.    The Goldstein reference does not include the phrase "command code" or "command code sets."  *See generally* '326 patent; Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 61:17-20.

47.    The Goldstein reference does not include the phrase "parameters" or "parameter sets."  *See generally* '326 patent.

48.    The Goldstein reference does not include the phrase "accessible for use."  *See generally* '326 patent.

49.    The Goldstein reference does not include the phrase "create" in relation to "command code sets" or codes generally.  *See generally* '326 patent.

50.    Dr. Wolfe admits that claims 27 and 28 are not anticipated by the Goldstein reference.  *See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 15:1-5, 37:3-12.

51.    Dr. Wolfe relies on the understanding of a POSITA to establish the additional limitation of claim 27.  *Id.* at 36:24-37:15.

52.    Dr. Gottesman testified that the presumption of validity of claims 27 and 28 should be maintained.  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 26:3-27:21.

**Claims 29 and 30**

53.     Claim 29 depends from claim 1 and adds the limitation "**a sensor** coupled to said microprocessor **for detecting and measuring physical phenomena corresponding to said user**." '467 patent, claim 29 (emphasis added).

54.     Claim 30 depends from claim 29 and adds the limitation "wherein said sensor measures said user's physical indications." '467 patent, claim 30.

55.     The Goldstein reference does not include the term "sensor." *See generally* '326 patent.

56.     The Goldstein reference does not include the terms "phenomena" or "physical phenomena." *See generally* '326 patent.

57.     The Goldstein reference does not include the terms "indications" or "physical indications." *See generally* '326 patent.

58.     The Goldstein reference does not include the term "measure" or "measurement" in the context of a touchpad 10, conductive capacitive receiver 92, or microphone 28 or physical phenomena or physical indications. *See generally* '326 patent.

59.     At trial, Dr. Wolfe testified that a "touch sensor" and "sound sensor" in Goldstein teach the limitations of claim 29.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 41:2-42:22 ("One is shown as touchpad 10, along with the conductive capacitive receiver 92, and the other one is microphone 28.").  The terms "touch sensor" and "sound sensor" do not appear in Goldstein.  *See generally* '326 patent.

60.     At trial, Dr. Wolfe conceded that "detecting" and "measuring" physical phenomena are distinct limitations, and the sensor of claim 29 must do both.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 49:2-13.

11

61.     There is a dispute of fact between Dr. Wolfe and Dr. Gottesman as to whether the components identified by Dr. Wolfe detect and measure physical phenomena, as required by claim 29.  *Compare* Dkt. No. 282, 05/10/2018 Hr'g Tr., at 16:11-18:23 *with* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 41:2-42:22.

62.     During his direct examination, Dr. Wolfe did not provide testimony on how each one of the purported sensors he identifies both detects and measures physical phenomena corresponding to said user, as required by claim 29.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:1-45:3.  Dr. Wolfe does not state whether the purported sensor touchpad 10 both detects and measures physical phenomena corresponding to said user, whether the purported conductive capacitive receiver 92 both detects and measures physical phenomena corresponding to said user, or whether the purported microphone 28 sensor both detects and measures physical phenomena corresponding to said user.  *Id*.

63.     Dr. Wolfe's testimony is ambiguous with respect to what time frame the touch screens addresses refer to. Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:1-45:3, 21:15-21, 42:6-16, 54:5-8.

64.     On cross-examination, on defining "measuring," Dr. Wolfe testified that the light switch in the courtroom measures "the electric flow through the switch" and conceded that he would not be surprised that another expert would disagree with his opinion.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 53:19-55:1.

65.     Dr. Gottesman testified that none of the components identified as sensors with respect to claims 29 and 30 by Dr. Wolfe (touchpad 10, conductive capacitive receiver 92, or microphone 28) disclose the limitations of these claims.  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 18:12-17.

66.     Dr. Gottesman testified that "a touch sensitive device, at the time of the invention, operated like an array of switches, and it didn't perform and didn't measure any physical phenomena." *Id.* at 16:19-17:24.

67.     Dr. Gottesman testified that capacitance receiver 92 is a receiver and is not a sensor measuring and detecting any physical phenomena. *Id.* at 17:25-18:5.

68.     Dr. Gottesman rejected Dr. Wolfe's opinion that flipping a light switch on or off measures physical phenomena, explaining that "[i]t's just a passive device.  You press it, and it closes the circuit."  Dkt. No. 282, 05/10/2018 Hr'g Tr., at 16:16-17:11.

69.     Dr. Gottesman testified that the microphone Dr. Wolfe asserted is a sensor "as disclosed in Goldstein, is a device that's used to generate voice data for communication…there is no disclosure of using a microphone as sensor or measuring any physical phenomena." *Id.* at 18:6-11.

70.     Dr. Wolfe does not distinguish between the claim elements "physical indication" and "physical phenomena" and testified that both claim elements are met by "touching something." Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 41:2-43:13, 52:20-24.  Dr. Wolfe fails to delineate the distinction between these two claim elements and does not provide testimony on how "touching something" meets these two claim elements.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 41:2-43:13, 52:20-24.

**Claim 34**

71.     Claim 34 is an independent claim.  The memory device limitation of claim 34 requires:

- a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate based on said parameter sets a desired set of pulse signals

13

corresponding to logical "1's" and "0's" as specified by a command code set;

72      Claim 34 has the same preamble as claim 1.  *See* '467 patent, claims 1 and 34.

73.     In its Claim Construction Opinion and Order (Dkt. No. 108), the Court construed the memory device limitation of claim 34 to mean "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, based on said parameter sets a desired set of pulse signals corresponding to logical "1's" and "0's" as specified by a command code set."

74.     The Goldstein reference does not include a disclosure of logical "1's and 0's."  *See generally* '326 patent.

75.     The Goldstein reference does not contain the terms "1's" and "0's."  *See generally* '326 patent.

76.     Dr. Wolfe proffered no additional analysis for claim 34 but rather relied on his analysis of claim 1.  Dr. Wolfe does not explain why he provides no additional analysis with respect to the memory device limitation of claim 34 despite differing claim language.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 43:15-44:5.

77.     Dr. Wolfe did not explain where the "pulse signals corresponding to logical "1's" and "0's" as specified by a command code set" language in claim 34, which does not appear in claim 1, is disclosed by Goldstein.  Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 43:15-44:5.

78.     As Dr. Wolfe provided no additional opinion regarding this element, Dr. Gottesman rejected Dr. Wolfe's opinion that claim 34 was anticipated by Goldstein and concluded that the presumption of validity should be maintained.  *See* Dkt. No. 282, 05/10/2018 Hr'g Tr., at 24:23-25:21.

14

## II.     PLAINTIFF'S CONCLUSIONS OF LAW

### A.     HTC CORP. HAS NOT OVERCOME THE PRESUMPTION OF VALIDITY

1.      The Patent-in-Suit and each asserted claim is presumed valid.  35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-14 (2011).  HTC Corp. has not overcome this presumption by clear and convincing evidence, as required.

2.      It is well-established that "[p]atents are presumed valid," and that, at trial, the burden falls on the party challenging validity to "prove that the claims are invalid by clear and convincing evidence."  *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018) (citing *Microsoft Corp. v. I4I Ltd.*, 564 U.S. 91, 95 (2011)); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) ("This burden—of establishing invalidity of issued patent claims—has always been on the party challenging validity."); *see also* 35 U.S.C. § 282.

3.      "[A] party challenging validity must prove by clear and convincing evidence all issues relating to invalidity."  *Sanitec Indus. v. Micro-Waste Corp.*, No. CIV.A. H-04-3066, 2006 WL 3455000, at *25 (S.D. Tex. Nov. 28, 2006) (citing *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001) ("The presumption of validity, 35 U.S.C. § 282 (1994), requires those challenging validity to introduce clear and convincing evidence on all issues relating to the status of a particular reference as prior art.")).

4.      The burden remains on the party asserting invalidity at all times and does not shift to the patentee at some point to prove validity.  *See, e.g., In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1078 (Fed. Cir. 2012); *Dow Chem.*, 809 F.3d at 1227.

15

5.      The party asserting a defense of invalidity has "the initial burden of going forward with evidence to support its invalidity allegation.'" *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018) (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009)).  The outcome of an alleged infringer's invalidity defense at trial depends on whether the alleged infringer 'has carried its burden of persuasion to prove by clear and convincing evidence that the patent is invalid.'" *Id.* (quoting *Titan Tire*, 566 F.3d at 1377).

6.      The presumption of validity of a patent can be maintained even where the patentee does not present its own expert on validity.  A trier of fact is entitled to evaluate a defendant's expert and determine that the defendant failed to clearly and convincingly establish that the asserted claims were anticipated by the prior art (or obvious in light of prior art) raised by a defendant on that basis alone.  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

7.      For example, in *Core Wireless*, the Federal Circuit held that a jury acted properly where it evaluated the testimony of the defendant's invalidity expert and determined, based on that testimony and the plaintiff's cross-examination alone, that the defendant had "failed to overcome the presumption of validity accorded to the [patents-in-suit] by clear and convincing evidence." 880 F.3d at 1364.  This was so even though the plaintiff elected not to call any expert at all to testify in rebuttal to the defendant's expert.  *Id.*

8.      This Court has held that an expert's conclusory statements "do not rise to the level of sufficiency that is necessary to meet [the] burden of 'clear and convincing evidence.'" *Contentguard Holdings, Inc. v. Google, Inc.*, No. 2:13-CV-1112-JRG, 2016 WL 7665900, at *7 (E.D. Tex. July 8, 2016) (rejecting defendant's invalidity defense and explaining that expert reports

16

that were conclusory and unsupported by any extrinsic evidence establishing the understanding of a person of ordinary skill in the art did not constitute clear and convincing evidence).

### 1.      Anticipation

#### a.      Substantive law on anticipation

9.      "Under 35 U.S.C. § 102(b), a patent is invalid as anticipated if "the invention was patented or described in a printed publication in this or a foreign country . . . . more than one year prior to the date of the application for patent in the United States." *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 974 (Fed. Cir. 2010).

10.      "Although § 102 refers to 'the invention' generally, the anticipation inquiry proceeds on a claim-by-claim basis." *Id.*

11.      A reference is anticipatory under § 102(b) when it satisfies particular requirements:

a.      "First, the reference must disclose each and every element of the claimed invention, whether it does so explicitly or inherently." *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009). "While those elements must be arranged or combined in the same way as in the claim, the reference need not satisfy an *ipsissimis verbis* test. *Id.* (citations and internal quotation marks omitted).

b.      "Second, the reference must enable one of ordinary skill in the art to make the invention without undue experimentation." *Id.* (citations and internal quotation marks omitted).

c.      If "the reference discloses all of the claim limitations and enables the subject matter that falls within the scope of the claims at issue, the reference anticipates." *Id.* (citations and internal quotation marks omitted).

17

12.     "[A]nticipation is a question of fact, including whether an element is inherent in the prior art." *Id. at* 1334-35.

> **b.     HTC Corp. has not proven by clear and convincing evidence that claims 1-7, 29-30, and 34 are anticipated by the Goldstein reference**
>
> **i.     Claim 1**

13.     As noted above, for the Court to find claim 1 anticipated by Goldstein, HTC Corp. would need to have proven that each and every claim limitation is present in Goldstein by clear and convincing evidence.

14.     Goldstein does not disclose the preamble or memory device limitation.  *See* Proposed Findings of Fact (PFF), ¶¶ 19, 21-36.

15.     HTC Corp. was unable to demonstrate that Goldstein was no more than a remote control device, which is distinct from the "communication, command, control, and sensing system" as disclosed and claimed in the '467 patent as evidenced by the USPTO election/restriction.  *See* PFF, ¶¶ 19, 33-35.

16.     HTC Corp. was also unable to demonstrate that Goldstein addressed the memory space problem central to the '467 patent.  *See* PFF, ¶¶ 19, 27, 34-36.

17.      The USPTO's Notice of Allowability clarified why the USPTO deemed the Salazar claims as not anticipated or obvious in light of the prior art.  The USPTO distinguished a remote control device from a "communication, command, control and sensing system" and found that the prior art did not teach such a system with the additional capability to recreate an external devices command code set from a set of parameters for the external device and thus, reduce the required memory space to store command code sets to that of the parameter set alone.  Defendant has not been able to demonstrate that Goldstein teaches what the USPTO deemed the '467 patent claims' novelty and nonobviousness over the prior art.  *See* PFF, ¶¶ 34-35.

18

18.     Indeed, HTC Corp. was unable to demonstrate the presence of the claim elements of claim 1 identified above in Goldstein by a preponderance of evidence, let alone by clear and convincing evidence.  *See* PFF, ¶¶ 19, 21-36.

19.     Dr. Wolfe's reliance on glue logic to meet these claim elements was conclusory and not credible.  *See* PFF, ¶¶ 19, 28-31.

20.     Dr. Gottesman testified that the presumption of validity of claim 1 should be maintained.  *See* PFF, ¶¶ 20, 32-36.

21.     Goldstein does not disclose each and every limitation of claim 1.  *See In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009).

22.     Accordingly, HTC Corp. has not met its burden of proving claim 1 of the '467 patent is invalid by clear and convincing evidence.

### ii.     Claim 2

23.     As claim 2 depends from claim 1, claim 2 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334; *supra*, Conclusions of Law, ¶¶ 13-22.

24.     Further, with respect to claim 2's selector limitation, Dr. Wolfe's position that "somewhere inside that glue logic there's a selector element" is not credible and must be discounted.  Dr. Wolfe's conclusory opinions with respect to the undefined glue logic, including relying on glue logic to satisfy many claim elements not described in the specification or claims of the '467 patent, are not reliable.  *See* PFF, ¶¶ 19, 28-31, 39-40.

25.     Dr. Gottesman testified that the presumption of validity of claim 2 should be maintained.  *See* PFF, ¶ 20.

26.     Accordingly, HTC Corp. has not met its burden of proving claim 2 of the '467 patent is invalid by clear and convincing evidence.

### iii.     Claim 3

27.     As claim 3 depends from claim 1, claim 3 is not anticipated by Goldstein, because each and every limitation of claim 1 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334.  *Supra*, Conclusions of Law, ¶¶ 13-22.

28.     Dr. Gottesman testified that the presumption of validity of claim 3 should be maintained.  *See* PFF, ¶ 20.

29.     Accordingly, HTC Corp. has not met its burden of proving claim 3 of the '467 patent is invalid by clear and convincing evidence.

### iv.     Claim 4

30.     As claim 4 depends from claim 1, claim 4 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334.  *Supra*, Conclusions of Law, ¶¶ 13-22.

31.     Dr. Gottesman testified that the presumption of validity of claim 4 should be maintained.  *See* PFF, ¶ 20.

32.     Accordingly, HTC Corp. has not met its burden of proving claim 4 of the '467 patent is invalid by clear and convincing evidence.

### v.     Claim 5

33.     As claim 5 depends from claim 1, claim 5 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334.  *Supra*, Conclusions of Law, ¶¶ 13-22.

34. Dr. Gottesman testified that the presumption of validity of claim 5 should be maintained. *See* PFF, ¶ 20.

35. Accordingly, HTC Corp. has not met its burden of proving claim 5 of the '467 patent is invalid by clear and convincing evidence.

### vi.    Claim 6

36. As claim 6 depends from claim 1, claim 6 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above. *In re Gleave*, 560 F.3d at 1334. *Supra*, Conclusions of Law, ¶¶ 13-22.

37. Dr. Gottesman testified that the presumption of validity of claim 6 should be maintained. *See* PFF, ¶ 20.

38. Accordingly, HTC Corp. has not met its burden of proving claim 6 of the '467 patent is invalid by clear and convincing evidence.

### vii.    Claim 7

39. As claim 7 depends from claim 1, claim 7 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above. *In re Gleave*, 560 F.3d at 1334. *Supra*, Conclusions of Law, ¶¶ 13-22.

40. Dr. Gottesman testified that the presumption of validity of claim 7 should be maintained. *See* PFF, ¶ 20.

41. Accordingly, HTC Corp. has not met its burden of proving claim 7 of the '467 patent is invalid by clear and convincing evidence.

### viii.    Claim 29

42.     As claim 29 depends from claim 1, claim 29 is not anticipated by Goldstein because each and every limitation of claim 1 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334.  *Supra*, Conclusions of Law, ¶¶ 13-22.

43.     Additionally, Defendant's expert was unable to demonstrate that Goldstein teaches a sensor that both detects and measures physical phenomena corresponding to said user, as required by claim 29.  Defendant's expert did not provide testimony on how any one of the three alleged sensors (touchpad 10, conductive capacitive receiver 92, and microphone 28) he identifies **both** detect and measure physical phenomena corresponding to said user, as required by claim 29.  *See* PFF, ¶¶ 54-70.

44.     Even if Dr. Wolfe's opinion is that the touchpad 10, conductive capacitive receiver 92, and the microphone 28, considered together, meet this claim element (which they do not), that opinion is insufficient to demonstrate that Goldstein teaches a singular sensor that both detects and measures physical phenomena corresponding to said user.  *See* PFF, ¶¶ 59-62.

45.     Further, in light of the cross-examination of Dr. Wolfe and testimony of Dr. Gottesman, Dr. Wolfe's opinions with respect to the term "measuring" (e.g. that flipping a light switch on or off measures physical phenomena) are unreasonable and should be rejected.  *See* PFF, ¶¶ 64, 68.

46.     Also, Dr. Wolfe's testimony is ambiguous as to whether his analysis considered a touchscreen at the time of the invention or a modern touchscreen.  *See* PFF, ¶¶ 63.

47.     Dr. Wolfe's conclusory/vague opinions are insufficient to invalidate claim 29.  *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *4 (E.D. Tex. July 16, 2015).

48.     Dr. Gottesman testified that the presumption of validity of claim 29 should be maintained.  *See* PFF, ¶¶ 20.

49.     Accordingly, HTC Corp. has not met its burden of proving claim 29 of the '467 patent is invalid by clear and convincing evidence.

### ix.     Claim 30

50.     As claim 30 depends from claim 29 (which depends from claim 1), claim 30 is not anticipated by Goldstein because each and every limitation of claim 1 or claim 29 is not taught by Goldstein, as explained above.  *In re Gleave*, 560 F.3d at 1334.  *Supra*, Conclusions of Law, ¶¶ 13-22, 42-49.

51.     Additionally, Defendant's expert fails to demonstrate how Goldstein teaches the additional limitation of this claim.  Dr. Wolfe does not demonstrate how the alleged sensors he claims satisfy claim 29 also measure said user's physical indications.  *See* PFF ¶¶ 57, 70.

52.      Further, Dr. Wolfe does not distinguish "physical phenomena corresponding to said user" (of claim 29) from "said user's physical indications."  As claim 30 requires both, Dr. Wolfe cannot rely on touch as both physical phenomena corresponding to said user and said user's physical indications.  Dr. Wolfe's opinion equating these two different claim elements as relating to one and the same features is inconsistent with the doctrine of claim differentiation.   In his unsupported generalization, Dr. Wolfe fails to delineate the distinction between these two claim elements and how the disclosure in the Goldstein reference meets each of these distinct claim elements.  *See* PFF ¶ 70.

53.     These conclusory/vague opinions do not constitute clear and convincing evidence and are insufficient to invalidate claim 30.  *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-

244, 2015 WL 11089488, at *4 (E.D. Tex. July 16, 2015).  Accordingly, Dr. Wolfe has not shown by clear and convincing evidence that Goldstein teaches each and every element of claim 30.

54.     Dr. Gottesman testified that the presumption of validity of claim 30 should be maintained.  *See* PFF, ¶ 20.

55.     Accordingly, HTC Corp. has not met its burden of proving claim 30 of the '467 patent is invalid by clear and convincing evidence.

**x.     Claim 34**

56.     For the reasons stated with respect to claim 1, the claim elements recited in the preamble and memory device limitation of claim 34 are not met.  *Supra*, Conclusions of Law, ¶¶ 13-22.

57.     Dr. Wolfe proffered no additional analysis for claim 34 but rather relied on his analysis of claim 1.  Dr. Wolfe does not explain why he provides no additional analysis with respect to the memory device limitation of claim 34 despite differing claim language.  *See* PFF, ¶¶ 71-77.

58.     Additionally,   Dr. Wolfe did not explain where the "pulse signals corresponding to logical "1's" and "0's" as specified by a command code set" language in claim 34, which does not appear in claim 1, is disclosed by Goldstein.  *See* PFF, ¶¶ 71-78.

59.     Dr. Gottesman rejected Dr. Wolfe's opinion that claim 34 was anticipated by Goldstein and concluded that the presumption of validity should be maintained.  *See* PFF, ¶¶ 78.

60.     Accordingly, HTC Corp. has not met its burden of proving claim 34 of the '467 patent is invalid by clear and convincing evidence.

**2.     Obviousness**

**a.     Substantive law on obviousness**

61.     A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Insite Vision Inc. v. Sandoz, Inc.*, 783 F.3d 853, 858 (Fed. Cir. 2015) (quoting 35 U.S.C. § 103(a) (2006)).

62.     "[T]he party seeking invalidation bears the ultimate burden of proving obviousness." *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL 4803941, at *17 (E.D. Tex. Oct. 16, 2017) (citing *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013)).

63.     "Obviousness is a question of law based on underlying factual findings: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness." *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068– 69 (Fed. Cir. 2012) (citing *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966)).

64.     "Generally, a party seeking to invalidate a patent as obvious must 'demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *Id.* (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.,* 566 F.3d 989, 994 (Fed. Cir. 2009)).

65.     The Supreme Court has cautioned "that, while an analysis of any teaching, suggestion, or motivation to combine known elements is useful to an obviousness analysis, the overall obviousness inquiry must be expansive and flexible." *Id.* (citing *KSR Int'l Co. v. Teleflex, Inc.,* 550 U.S. 398, 415, 419 (2007)).

66.     "A patent claim is invalid as obvious if an alleged infringer proves that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art." *E.I. du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 657 F. App'x 1004, 1012 (Fed. Cir. 2016) (citing 35 U.S.C. § 103(a) (2006)).

67.     Conclusory and/or vague expert opinions are not sufficient to establish a successful obviousness defense. *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *4 (E.D. Tex. July 16, 2015).

      **b.**      **HTC Corp. has not proven by clear and convincing evidence that claims 27 and 28 are obvious in light of Goldstein and the knowledge of a POSITA**

            **i.**      **Claim 27**

68.     As claim 27 depends from claim 1, claim 27 is not obvious in light of the Goldstein reference because each and every limitation of claim 1 is not taught by Goldstein, as explained above and HTC Corp. has not alleged any other reference teaches the limitations of claim 1. *Supra*, Conclusions of Law, ¶¶ 13-22.

69.     Additionally, Dr. Wolfe admits that claim 27 is not anticipated by the Goldstein reference, and Dr. Wolfe relies on the understanding of a POSITA to establish the additional limitation of claim 27.  Dr. Wolfe does not provide compelling testimony that a POSITA would have had independent knowledge as to this additional claim element in claim 27. *See* PFF, ¶¶ 43, 45-52.

70.     Dr. Gottesman testified that the presumption of validity of claim 27 should be maintained. *See* PFF, ¶¶ 20, 52.

71.     Accordingly, HTC Corp. has not met its burden of proving claim 27 of the '467 patent is invalid by clear and convincing evidence.

### ii.     Claim 28

72.     As claim 28 depends from claim 27, claim 28 is not obvious in light of the Goldstein reference because for the reasons explained above.  *Supra*, Conclusions of Law, ¶¶ 13-22, 68-71.

73.     Dr. Wolfe does not provide compelling testimony that Goldstein teaches the additional claim element of claim 28.  *See* PFF, ¶¶ 44, 50-52.

74.     Dr. Gottesman testified that the presumption of validity of claim 28 should be maintained.  *See* PFF, ¶¶ 20, 52.

75.     Accordingly, HTC Corp. has not met its burden of proving claim 28 of the '467 patent is invalid by clear and convincing evidence.

## III.     CONCLUSION

In this case, HTC Corp. has failed to carry its burden of proving any of the asserted claims of the '467 patent are invalid by clear and convincing evidence.  Accordingly, Salazar respectfully requests that the Court enter judgment in favor of Salazar.


Dated: March 18, 2019                    Respectfully submitted,

/s/ Dariush Keyhani_____
Dariush Keyhani, Lead Attorney
New Jersey State Bar No. 044062002
Admitted *pro hac vice*
MEREDITH & KEYANI, PLLC
125 Park Avenue, 25th Floor
New York, NY 10017
(212) 760-0098 Telephone
(212) 202-3819 Facsimile
dkeyhani@meredithkeyhani.com

Andy Tindel
Texas State Bar No. 20054500

MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile:  (903) 596-0909
Email: atindel@andytindel.com

**Attorneys for Plaintiff Joe Andrew Salazar**

## CERTIFICATE OF SERVICE

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per E. Dist. Tex. Loc. Ct. R. CV-5(a)(3) on this the 18th day of March, 2019.  Any other known counsel of record will be served with a copy of this document by email and/or facsimile transmission

Andy Tindel

28