IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, § § § *Plaintiff*, § § v. § § HTC CORPORATION, § § § *Defendant*. § § | CIVIL ACTION NO. 2:16-CV-01096-JRG |

### ORDER AND OPINION REGARDING VALIDITY SUPPORTED BY FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an infringement case arising under the patent laws of the United States. The Court held a jury trial in this case from May 7, 2018 to May 11, 2018. (Dkt. Nos. 265, 266, 267, 268, 275.) On May 11, 2018, the jury found that the asserted claims were infringed. (Dkt. No. 272 (Jury Verdict).) The findings of fact and conclusions of law set forth below address the sole remaining issue, to-wit: validity of U.S. Patent No. 5,802,467 (the "'467 Patent" or "Patent-In-Suit"). (*See generally* Dkt. No. 299.)

Based on the following findings and conclusions, the Court holds that Claims 1–7, 27–28, 29–30, and 34 of the '467 Patent are not invalid in view of the asserted Goldstein reference.

### I. FINDINGS OF FACT ("FF")

####   A.   The Patent-At-Issue: U.S. Patent No. 5,802,467

**[FF1]**   U.S. Patent No. 5,802,467 is titled "Wireless and wired communications, command, control and sensing system for sound and/or data transmission and reception," and it

issued on September 1, 1998. (PX001.) The named inventors of the '467 Patent are Joe Andrew Salazar and Luis Molero-Castro. (*Id.*)

**[FF2]** The '467 Patent was filed on September 28, 1995, claiming no priority to any patent or application. (PX001.) Accordingly, the priority date of the '467 Patent is September 28, 1995.

**[FF3]** Salazar is the owner of all rights, title, and interest in and to the '467 Patent and its claims. Defendant HTC Corp. did not challenge ownership of the '467 Patent.

**[FF4]** The '467 Patent expired on September 28, 2015. (Dkt. No. 219 (The Parties' Statement of Uncontested Facts).)

### B. Procedural History

**[FF5]** On October 5, 2016, Plaintiff Joe Andrew Salazar ("Plaintiff" or "Salazar") sued HTC Corp. ("Defendant" or "HTC") for infringement of Claims 1–7, 27–28, 29–30, and 34 (the "Asserted Claims") of the '467 Patent. HTC asserted counterclaims against Salazar for declaratory judgment of noninfringement and invalidity of the Asserted Claims of the '467 Patent. (*See* Dkt. Nos. 1, 17, 170, and 180.)

**[FF6]** The Court held a jury trial from May 7 through May 11, 2018, where the parties presented evidence on the issues of infringement and validity. Both issues were fully submitted to and tried by a jury. (Dkt. No. 299 at 5.)

**[FF7]** At trial, HTC presented a single prior art reference, U.S. Patent No. 5,410,326 titled "Programmable remote control device for interacting with a plurality of remotely controlled devices" ("Goldstein" or the "Goldstein Reference") (DX005), claiming that Claims 1–7, 29–30, and 34 of the '467 Patent were anticipated in view of Goldstein, and that Claims 27–28 were

2

obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15–45:10.)

[FF8]  Both parties presented evidence through expert witnesses on the issue of patent invalidity. (*See generally* Dkt. No. 280, 05/09/2018 AM Hr'g Tr.; Dkt. No. 281, 05/09/2018 PM Hr'g Tr.; Dkt. No. 282, 05/10/2018 Hr'g Tr.) At trial, the Court heard testimony from two expert witnesses regarding invalidity—Dr. Andrew Wolfe and Dr. Oded Gottesman.

[FF9]  Andrew Wolfe, Ph.D. was offered by HTC and recognized by the Court as an expert witness. (Dkt. No. 280, 05/09/2018 AM Hr'g Tr. at 87:21–88:7.) Dr. Wolfe teaches part-time at Santa Clara University and is a board member of a company in the video game space. (*Id.* at 82:14–20, 86:8–9.) Dr. Wolfe received his Ph.D. in computer engineering from Carnegie-Mellon and teaches classes in computer design, practical electronics, introductory electronics labs, and mechatronics. (*Id.* at 84:17–18, 86:10–5.)

[FF10]  Oded Gottesman, Ph.D. was tendered by Salazar and recognized by the Court as an expert witness. (Dkt. No. 282, 05/10/2018 Hr'g Tr. at 9:6–13.) Dr. Gottesman is the co-founder and CTO of a company involved in research and development of hardware and software for organizations such as the Department of Defense, National Security Agency, and NATO. (*Id.* at 7:15–8:1.) Dr. Gottesman earned a Bachelor's degree in electrical and computer engineering in 1988 and a Master's degree in electrical and computer engineering in 1992. He earned a doctorate in electrical engineering in 2000 from the University of California, Santa Barbara and subsequently pursued postdoctoral research, also at the University of California, Santa Barbara. (Dkt. No. 282, 05/10/2018 Hr'g Tr., at 6:23-7:3). His Ph.D. dissertation related to signal compression, and he is a named inventor on four U.S. and international patents relating to signal compression and

telecommunication transmission of various signals over telecommunications networks. (*Id.* at 7:4–10, 8:17–25.)

[FF11]   Both parties cross-examined the other party's expert witness. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 45:22–96:6; Dkt. No. 282, 05/10/2018 Hr'g Tr., at 28:1–35:1.)

[FF12]   At trial, Dr. Wolfe opined that all of the Asserted Claims were anticipated or obvious in light of Goldstein and the knowledge of a POSITA. Dr. Gottesman offered rebuttal testimony challenging Dr. Wolfe's testimony and opining that HTC did not overcome the presumption of validity by clear and convincing evidence and that the validity of the asserted claims should be maintained. (*See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15–45:9; Dkt. No. 282, 05/10/2018 Hr'g Tr. at 5:3–27:25.)

[FF13]   The jury found the asserted claims of the '467 Patent not infringed by HTC, and HTC withdrew its invalidity counterclaim after submitting it to the jury but before being decided by the jury, thus waiving its right to have a jury decide that issue. (Dkt. No. 283, 05/11/2018 Hr'g Tr., at 87:12–88:16; Dkt. No. 299 at 5.)

[FF14]   Following the trial, HTC filed a motion to dismiss its invalidity counterclaim without prejudice or in the alternative a motion to dismiss pursuant to Fed. R. Civ. Pro. 50(b). (*See generally* Dkt. No. 290.)

[FF15]   Salazar opposed HTC's motion, arguing that HTC's removal of the issue from the jury constituted a dismissal with prejudice. (*See generally* Dkt. No. 292.)

[FF16]   The Court denied HTC's motion in its entirety and ordered each party to separately submit proposed findings of fact and conclusions of law addressing the validity of the '467 Patent. (Dkt. No. 299 at 5–6.)

### C. The Goldstein Reference

**[FF17]** On December 4, 1992, Steven W. Goldstein filed U.S. Patent Application No. 984,120, which issued on April 25, 1995, as U.S. Patent No. 5,410,326. (DX005 at 1; *see also* Dkt. No. 281 at 13:3–6.)

**[FF18]** The face of the '467 Patent does not indicate that the Goldstein Reference was considered by the Patent Office. (PX001.)

**[FF19]** At trial, Dr. Wolfe testified that the Goldstein Reference discloses "a high-end programmable remote control that is designed to work with a cable box. It has two-way infra-red communications. It has two-way radio communications. It connects to a telephone line for making calls. And it is -- has a learning function and is programmable and uses a -- a specific format for storing the data once it's been programmed into the remote control that allows it to take limited space." (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 13:17-14:1.)

### D. Invalidity of the Asserted Claims

**[FF20]** At trial, HTC alleged that Claims 1–7, 29–30, and 34 of the '467 Patent were anticipated in view Goldstein, and that Claims 27–28 were obvious in view of Goldstein and the knowledge of a person of ordinary skill in the art. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 12:15–45:10.)

**[FF21]** Plaintiff's counsel cross-examined Dr. Wolfe with respect to several of the limitations he claimed were found in the Goldstein Reference. (*See id.* at 46:25–24, 47:16–22, 48:8–12, 49:2–50:11, 52:9–58:7, 61:17–66:6, 67:5–25.)

**[FF22]** Plaintiff's rebuttal expert, Dr. Gottesman, opined that HTC did not overcome the presumption of validity by clear and convincing evidence with respect to each patent claim

asserted in this case and that the validity of each claim should be sustained. (Dkt. No. 282, 05/10/2018 Hr'g Tr., at 9:17–27:21.)

### 1. Claims 1 and 2

**[FF23]** Claim 1 of the '467 Patent consists of five claim elements, including the preamble. The parties agree that the "communications, command, control and sensing system" in the preamble is a substantive limitation. (*See* '467 Patent at Claim 1; *see also* Dkt. No. 73-2 at 686 (Salazar's Proposed Constructions of Disputed Terms); Dkt. No. 73-3 at 1 (HTC's Proposed Constructions & Identification of Evidence).)

**[FF24]** Claim 1 recites the following limitations:

> [preamble]. A communications, command, control and sensing system for communicating with a plurality of external devices comprising:
>
> [a] a microprocessor for generating a plurality of control signals used to operate said system, said microprocessor creating a plurality of reprogrammable communication protocols, for transmission to said external devices wherein each communication protocol includes a command code set that defines the signals that are employed to communicate with each one of said external devices;[1]
>
> [b] a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets;
>
> [c] a user interface coupled to said microprocessor for sending a plurality of signals corresponding to user selections to said microprocessor and displaying a plurality of menu selections available for the user's choice, said microprocessor generating a communication protocol in response to said user selections; and
>
> [d] an infra-red frequency transceiver coupled to said microprocessor for transmitting to said external devices and receiving from said external devices, infra-red frequency signals in accordance with said communications protocols.

---

[1] This limitation of Claim 1 is referred to herein as the "memory device limitation."

6

'467 Patent at 25:57–26:17 (claim limitation short names added).

**[FF25]** At trial, Salazar opposed HTC's assertion that the preamble limitation (preamble above) and memory device limitation were taught by Goldstein. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 15:20–16:3, 16:10–23.)

**[FF26]** The Court construed the preamble to have its plain and ordinary meaning and the memory device limitation of Claim 1 to mean "a memory device coupled to said microprocessor configured to store a plurality of parameter sets retrieved by said microprocessor so as to recreate, by the microprocessor, a desired command code set, such that the memory space required to store said parameters is smaller than the memory space required to store said command code sets." (Dkt. No. 108 at 9, 30.)

**[FF27]** The Goldstein reference does not include the phrase "command code" or "command code sets." (*See generally* DX005; Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 61:17–20.) The Goldstein reference also does not include the phrase "parameters" or "parameter sets," or "recreate." (*Id.*).

          a.     <u>Preamble</u>

**[FF28]** At trial, HTC's technical expert Dr. Wolfe testified that Goldstein satisfied the preamble because it discloses an infra-red device that can communicate by sending infra-red commands to external devices; control external devices by commanding them to perform certain functions; and has sensing capability such as voice sensing, touch sensing, and light sensing. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 15:20–16:3, 16:10–23.) Dr. Wolfe cited to Figure 1 and the accompanying text of Goldstein. (*Id.* at 16:10–24.)

          b.     <u>Memory Device Limitation</u>

**[FF29]** At trial, Dr. Wolfe testified that Goldstein satisfied the memory device limitation. (Dkt. No. 281, 05/09/2019 PM Hr'g Tr. at 20:23–21:15; 80:25–82:8.) For example, Dr.

Wolfe testified that Goldstein discloses a memory device as "32K RAM" (element 90) in Figure 10. (*Id.* at 19:24-20:2 (Dr. Wolfe citing Fig. 10 of Goldstein).) Goldstein describes that "each infra-red code is retrieved from the Random Access Memory 90 and that the IR sequences from the codes -- it says the glue logic will supply the IR sequences from the codes which are stored in the RAM 90 upon the command of the user." *Id.* at 20:3-11 (Dr. Wolfe citing Goldstein at 5:23-35). Goldstein also describes that "these codes describe carrier frequencies, pulse widths, and pulse durations to be generated to the glue logic for producing infra-red pulses from the infra-red diode 97." *Id.* at 20:12-15 (Dr. Wolfe citing Goldstein at 5:23-35). In addition, Goldstein discloses some particularized memory set aside for the command codes because it provides that the codes for some external devices are preprogrammed into the device. *Id.* at 20:16-22. Lastly, Dr. Wolfe testified that Goldstein discloses to a person of skill in the art that the stored parameters (e.g., carrier frequencies, pulse widths, and pulse durations) can be used directly or by the glue logic to recreate the command code sets. *Id.* at 21:3-9. Dr. Wolfe explained that "[i]f you're generating the codes from carrier frequencies, pulse widths, and pulse duration, then it must be smaller than having every single pulse described, which is the – the alternative that – that is disclosed in the Salazar patent." *Id.* at 85:23-86:4.

**[FF30]** Dr. Wolfe relied on references "general logic interface (glue) logic" to teach the "recreation of command code sets" and "parameter sets" of Claim 1. (*See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 46:25–47:24, 47:16–48:2, 48:8–12, 49:2–50:11, 52:9–58:7, 61:17–66:6, 67:5–25.) Dr. Wolfe describes the term "glue logic" as taught by Goldstein as "a fancy way of saying other stuff. It's – it's – it's all the things that are needed to connect the various boxes together and make them work together and make them compatible." (*See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 18:1-5.)

**[FF31]** The Goldstein reference does not define the term "general logic interface (glue) logic." (*See generally* '326 patent.)

**[FF32]** Dr. Gottesman testified in rebuttal that Goldstein does not teach three aspects of the memory device limitation: (1) retrieval of parameter sets by said microprocessor, (2) the capability to recreate a desired command code set, or (3) the idea such that the "memory space required to store said parameter is smaller than the memory space required to store said command code sets." (*Id.* at 22:5-14.)

**[FF33]** HTC has not alleged that any other reference teaches the limitations of Claim 1.

### 2. Claims 2–7

**[FF34]** Claim 2 depends from Claim 1. Claim 3 depends from Claim 2, which depends from Claim 1. Claim 4 depends from Claim 3, which indirectly depends from Claim 1. Claim 4 depends from Claim 4, which indirectly depends from Claim 1. Claim 6 depends from Claim 1. Claim 7 depends from Claim 6, which depends from Claim 1. Therefore, each of Claims 2–7 depends directly or indirectly from Claim 1. (*See* '467 Patent, Claims 2–7.)

**[FF35]** Dr. Gottesman testified that the presumption of validity of Claims 2–7 should be maintained. (Dkt. No. 282, 05/10/2018 Hr'g Tr., at 24:12-20.)

### 3. Claims 27 and 28

**[FF36]** Claim 27 depends from Claim 1 and adds the additional limitation: "wherein one of said parameter sets stored corresponding to one of said command code sets is accessible for use so as to create other command code sets." ('467 Patent, Claim 27.)

**[FF37]** Claim 28 depends from Claim 27 and adds the additional limitation: "wherein said microprocessor is configured to concurrently generate more than one command code sets so

as to allow said user interface to control more than one corresponding external devices among said plurality of external devices." ('467 Patent, Claim 28.)

**[FF38]** Dr. Wolfe admits that Claims 27 and 28 are not anticipated by the Goldstein reference. (*See* Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 15:1-5, 37:3-12.)

**[FF39]** Dr. Wolfe relies on the understanding of a POSITA to establish the additional limitation of Claim 27. (*Id.* at 36:24-37:15.)

**[FF40]** Dr. Gottesman testified that the presumption of validity of Claims 27 and 28 should be maintained. (Dkt. No. 282, 05/10/2018 Hr'g Tr., at 26:3-27:21.)

### 4. Claims 29 and 30

**[FF41]** Claim 29 depends from Claim 1 and adds the limitation "a sensor coupled to said microprocessor for detecting and measuring physical phenomena corresponding to said user." ('467 Patent, Claim 29.)

**[FF42]** Claim 30 depends from Claim 29 and adds the limitation "wherein said sensor measures said user's physical indications." ('467 Patent, Claim 30.)

### 5. Claim 34

**[FF43]** Claim 34 is an independent claim which contains many of the same limitations as Claim 1, including the memory device limitation. ('467 Patent, Claim 34.)

**[FF44]** Dr. Wolfe proffered no additional analysis for Claim 34 but rather relied on his analysis of Claim 1. (Dkt. No. 281, 05/09/2018 PM Hr'g Tr., at 43:15–44:5.)

## II. CONCLUSIONS OF LAW

### A. Legal Standard

#### 1. Federal Rule of Civil Procedure 52

**[CL1]** "If a party has been fully heard on an issue . . . the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). Such a judgment "must be supported by findings of fact and conclusions of law." *Id.*

**[CL2]** The purpose of these findings is to "afford[] . . . a clear understanding of the ground or basis of the decision of the trial court." *S. S. Silberblatt, Inc. v. U.S. for Use & Benefit of Lambert Corp.*, 353 F.2d 545, 549 (5th Cir. 1965) (internal quotation marks omitted); *see also Schlesinger v. Herzog*, 2 F.3d 135, 139 (5th Cir. 1993) (explaining that trial courts need not "recite every piece of evidence" or "sort through the testimony of . . . dozen[s] [of] witnesses").

**[CL3]** In making a particular finding, the district court "does not . . . draw any inferences in favor of the non-moving party and . . . [instead] make[s] a determination in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 964 n.1 (5th Cir. 2016) (internal quotation marks omitted). However, a district court still must arrive at each of its factual determinations based on the applicable burden of proof. *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992) (reversing the district court because it applied the preponderance of the evidence standard rather than the clear and convincing standard in making its factual determinations under Rule 52).

#### 2. Burden of Proof

**[CL4]** The '467 Patent and each asserted claim is presumed valid. 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-14 (2011).

11

**[CL5]** At trial, the party challenging validity must "prove that the claims are invalid by clear and convincing evidence." *Polara Eng'g Inc v. Campbell Co.*, 894 F.3d 1339, 1348 (Fed. Cir. 2018) (citing *I4I Ltd.*, 564 U.S. at 95); *Dow Chem. Co. v. Nova Chems. Corp. (Canada)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015) ("This burden—of establishing invalidity of issued patent claims—has always been on the party challenging validity.").

**[CL6]** The presumption of validity of a patent can be maintained even where the patentee does not present its own expert on validity. A trier of fact is entitled to evaluate a defendant's expert and determine that the defendant failed to clearly and convincingly establish that the asserted claims were anticipated by the prior art (or obvious in light of prior art) raised by a defendant on that basis alone. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).

**[CL7]** An expert's conclusory statements "do not rise to the level of sufficiency that is necessary to meet [the] burden of 'clear and convincing evidence.'" *Contentguard Holdings, Inc. v. Google, Inc.*, No. 2:13-CV-1112-JRG, 2016 WL 7665900, at *7 (E.D. Tex. July 8, 2016) (rejecting defendant's invalidity defense and explaining that expert reports that were conclusory and unsupported by any extrinsic evidence establishing the understanding of a person of ordinary skill in the art did not constitute clear and convincing evidence).

      **3.**    **<u>Anticipation</u>**

           a.    <u>Substantive Law on Anticipation</u>

**[CL8]** A patent claim is invalid for anticipation under 35 U.S.C. § 102(a) if "the invention was … patented or described in a printed publication in this … country, before the invention thereof by the applicant for patent." 35 U.S.C. § 102(a). In addition, a patent claim is invalid for anticipation under § 102(e)(2) if "the invention was described in … a patent granted on

an application for patent by another filed in the United States before the invention by the applicant for patent." 35 U.S.C. § 102(e)(2).

**[CL9]** A prior art reference anticipates if it "discloses each and every element of the claimed invention arranged or combined in the same way as in the claim." *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (internal quotation marks, alterations, and citations omitted). "However, a reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination." *Id.*

**[CL10]** "[A]nticipation is a question of fact, including whether an element is inherent in the prior art." *Id.* at 1334–35.

**[CL11]** A reference which does not anticipate an independent claim also does not anticipate a claim depending from that independent claim. *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1296 (Fed. Cir. 2002).

> b. <u>HTC Has not proven by clear and convincing evidence that Claims 1–7, 29–30, and 34 are anticipated by Goldstein</u>

### A.   Claim 1

**[CL12]** As noted above, for the Court to find Claim 1 is anticipated by Goldstein, HTC would need to have proven that each and every claim limitation is present in Goldstein and such proof must be by clear and convincing evidence.

**[CL13]** Based on the record before the Court, the Court is not persuaded by clear and convincing evidence that Goldstein teaches or suggests the memory device limitation of Claim 1 of the '467 Patent. Specifically, HTC has not shown by clear and convincing evidence that the "general logic interface (glue) logic" of Goldstein teaches the "recreation of command code sets" and "parameter sets" of Claim 1.

**[CL14]** Accordingly, HTC has not met its burden of proving Claim 1 of the '467 Patent is invalid by clear and convincing evidence.

### B. Claims 2–7

**[CL15]** As Claims 2–7 depend directly or indirectly from Claim 1, Claims 2–7 are not anticipated by Goldstein because each and every limitation of Claim 1 is not taught by Goldstein, as explained above. *Trintec Indus., Inc.*, 295 F.3d at 1296; *supra*, Findings of Fact, ¶ 34, Conclusions of Law, ¶¶ 12–14.

**[CL16]** Accordingly, HTC has not met its burden of proving Claims 2–7 of the '467 Patent are invalid by clear and convincing evidence.

### C. Claim 29

**[CL17]** As Claim 29 depends from Claim 1, Claim 29 is not anticipated by Goldstein because each and every limitation of Claim 29 is not taught by Goldstein, as explained above. *Trintec Indus., Inc.*, 295 F.3d at 1296; *supra*, Conclusions of Law, ¶¶ 12–14.

**[CL18]** Accordingly, HTC has not met its burden of proving Claim 29 of the '467 Patent is invalid by clear and convincing evidence.

### D. Claim 30

**[CL19]** As Claim 30 depends from Claim 29, which depends from Claim 1, Claim 30 is not anticipated by Goldstein because each and every limitation of Claim 1 is not taught by Goldstein, as explained above. *Trintec Indus., Inc.*, 295 F.3d at 1296; *supra*, Conclusions of Law, ¶¶ 12–14.

**[CL20]** Accordingly, HTC has not met its burden of proving Claim 30 of the '467 Patent is invalid by clear and convincing evidence.

### E. Claim 34

**[CL21]**   For the reasons stated with respect to Claim 1, HTC has not shown by clear and convincing evidence that Goldstein teaches or suggests the memory device limitation—also recited in Claim 34.  (*Supra*, Conclusions of Law, ¶¶ 12–14.)

**[CL22]**   Accordingly, HTC has not met its burden of proving Claim 34 of the '467 Patent is invalid by clear and convincing evidence.

### 4.   Obviousness

#### a.   Substantive Law on Obviousness

**[CL23]**   A patent is obvious and invalid if "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. In *Graham v. John Deere Co.*, the Supreme Court set the framework for the obviousness inquiry:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

383 U.S. 1, 17–18 (1966). "The *Graham* factors—(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective considerations of nonobviousness—are questions of fact reviewed for substantial evidence." *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017).

**[CL24]**   "[T]he party seeking invalidation bears the ultimate burden of proving obviousness." *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-CV-1455-WCB, 2017 WL

4803941, at *17 (E.D. Tex. Oct. 16, 2017) (citing *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013)).

**[CL25]** "Generally, a party seeking to invalidate a patent as obvious must 'demonstrate by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'" *Id.* (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.,* 566 F.3d 989, 994 (Fed. Cir. 2009)).

**[CL26]** "A patent claim is invalid as obvious if an alleged infringer proves that the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the art." *E.I. du Pont De Nemours & Co. v. MacDermid Printing Sols., L.L.C.*, 657 F. App'x 1004, 1012 (Fed. Cir. 2016) (citing 35 U.S.C. § 103(a) (2006)).

**[CL27]** Conclusory and/or vague expert opinions are not sufficient to establish a successful obviousness defense. *Nobelbiz, Inc. v. Glob. Connect, L.L.C.*, No. 6:12-CV-244, 2015 WL 11089488, at *4 (E.D. Tex. July 16, 2015).

**[CL28]** "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012). "A nexus must be established between the merits of the claimed invention and evidence of commercial success before that evidence may become relevant to the issue of obviousness." *Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). "The term 'nexus' is often used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the

16

determination of nonobviousness. The burden of proof as to this connection or nexus resides with the patentee." *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

**[CL29]** Dependent claims, with added limitations, are generally not obvious when their parent claims are not. *Mylan Pharms. Inc. v. Rsch. Corp. Techs., Inc.*, 914 F.3d 1366, 1376 (Fed. Cir. 2019).

    b. <u>HTC Has not proven by clear and convincing evidence that Claims 27 and 28 are obvious in light of Goldstein and the knowledge of a POSITA</u>

    A. <u>Claim 27</u>

**[CL30]** Claim 27, which depends from Claim 1, is not obvious in light of the Goldstein reference because HTC has not shown that each and every limitation of Claim 1 is taught or suggested by Goldstein, as explained above. *Mylan Pharms. Inc.*, 914 F.3d at 1376; *supra*, Conclusions of Law, ¶¶ 12–14.

**[CL31]** HTC has not alleged that any other reference teaches the limitations of Claim 1. (*Supra*, Findings of Fact, ¶¶ 7, 34.)

**[CL32]** Accordingly, HTC has not met its burden of proving Claim 27 of the '467 Patent is invalid by clear and convincing evidence.

    B. <u>Claim 28</u>

**[CL33]** Claim 28, which depends from Claim 27, is not obvious in light of the Goldstein Reference because HTC has not shown that each and every limitation of Claim 1 is taught or suggested by Goldstein, as explained above. *Mylan Pharms. Inc.*, 914 F.3d at 1376; *supra*, Conclusions of Law, ¶¶ 12–14.

**[CL34]**   Accordingly, HTC has not met its burden of proving Claim 28 of the '467 Patent is invalid by clear and convincing evidence.

### III.   CONCLUSION

For the reasons set forth above, the Court concludes that HTC has not shown that the Asserted Claims are invalid based on the Goldstein Reference under 35 U.S.C. §§ 102–103. As such, the presumption of validity as to such claims remains intact and unrebutted.

**So ORDERED and SIGNED this 28th day of July, 2021.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE